**Hearing Date:  May 16, 2012 at 10:00 a.m.**
**Objection Date:  May 9, 2012**

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica, Boulevard, 11th Floor
Los Angeles, California 90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
James I. Stang, Esq. (admitted *pro hac vice*)

-and-

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
Ilan D. Scharf, Esq.

Counsel for the Official Committee of
Unsecured Creditors of The Christian Brothers'
Institute and The Christian Brothers of Ireland, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHRISTIAN BROTHERS' INSTITUTE, *et al.*, | Case No. 11-22820 (RDD) |
| Debtors. | (Jointly administered) |

**NOTICE OF HEARING ON MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR AUTHORITY TO ASSERT,
LITIGATE AND SETTLE CLAIMS ON BEHALF OF
BANKRUPTCY ESTATE RELATING TO FRAUDULENT
<u>CONVEYANCE TO ALL HALLOWS INSTITUTE</u>**

**PLEASE TAKE NOTICE** that a hearing (the "<u>Hearing</u>") on *Motion of the*

*Official Committee of Unsecured Creditors for Authority to Assert, Litigate and Settle Claims on*

*Behalf of Bankruptcy Estate Relating to Fraudulent Conveyance to All Hallows Institute* (the

"<u>Motion</u>") filed herewith by The Official Committee of Unsecured Creditors (the "<u>Committee</u>")

of The Christian Brothers Institute ("<u>CBI</u>") and The Christian Brothers of Ireland, Inc. ("<u>CBOI</u>"

and, collectively with CBI, the "Debtors"), will be held before the Honorable Robert D. Drain, at the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), 300 Quarropas Street White Plains, NY 10601-4140, Room No. 118 on **May 16, 2012 at 10:00 a.m.**

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), and shall be served in accordance with General Order M-399 and any further Order of the Bankruptcy Court upon the undersigned, with a copy delivered to Chambers, so as to be received no later than **May 9, 2012.** Only those responses made in writing and timely filed and received will be considered at the Hearing. Any such response must state with specificity the reason or reasons why the relief requested in the Motion should not be granted**.**

Dated: New York, New York          Pachulski Stang Ziehl & Jones LLP
      May 1, 2012


          */s/ Ilan D. Scharf*
          Ilan D. Scharf, Esq.
          780 Third Avenue, 36th Floor
          New York, NY  10017-2024
          Telephone:  (212) 561-7700
          Facsimile:   (212) 561-7777

          -and-

          James I. Stang, Esq. (admitted *pro hac vice*)
          10100 Santa Monica Blvd., Suite 1100
          Los Angeles, California 90067-4100
          Telephone:  (310) 277-6910
          Facsimile:   (310) 201-0760

          Counsel for the Official Committee of
          Unsecured Creditors of The Christian Brothers'
          Institute and The Christian Brothers of Ireland, Inc.


DOCS_NY:27184.1 14012-002

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760


- and -

PACHULSKI STANG ZIEHL & JONES LLP
Alan J. Kornfeld, Esq.
Ilan D. Scharf, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Attorneys for Official Committee of Unsecured Creditors of The Christian Brothers'
Institute and The Christian Brothers of Ireland, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE CHRISTIAN BROTHERS' INSTITUTE, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-22820 (RDD)<br><br>(Jointly Administered) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AUTHORITY TO ASSERT, LITIGATE AND SETTLE CLAIMS ON
BEHALF OF BANKRUPTCY ESTATE RELATING TO FRAUDULENT
<u>CONVEYANCE TO ALL HALLOWS INSTITUTE</u>**

DOCS_LA:252631.7 14012-002

### I. **PRELIMINARY STATEMENT**

1.       On April 13, 1990, by a transfer deed dated March 9, 1990, The Christian

Brothers' Institute ("CBI") transferred certain real property and improvements associated with a

high school commonly known as All Hallows High School (the "All Hallows Transfer") to All

Hallows Institute ("AHI"), a corporation formed by and affiliated with CBI.[1]  Just a few months

after recordation of the transfer deed, John J. Duffy, CBI's then general counsel, explained the

All Hallows Transfer as follows:

> Within the last few years in order **to make CBI less of a target in
> any suit for damages**, we have been incorporating each school as
> a separate corporate entity with its own Board of Trustees or
> Directors and transferring title to the school from CBI e.g. to All
> Hallows Institute.  This **helps to give some protection from
> liability** and is also useful for fund raising by individual schools.

*See* December 18, 1990 letter from John J. Duffy to Claude R. Thomson, Q.C., attached hereto

as **Exhibit B** (emphasis added).  The "suits" and "liability" referenced in Mr. Duffy's letter

related to sexual abuse claims against CBI, which included: (a) a 1989 sexual abuse complaint

filed against CBI; (b) sexual, physical and emotional abuse claims involving the Debtors being

investigated by a Royal Commission appointed in 1989 by the Newfoundland Government; and

(c) other claims or potential claims arising out of abuse perpetrated by members or associates of

the Debtors, of which the Debtors would have been aware in 1990.[2]

2.       By this Motion, the Official Committee of Unsecured Creditors ("Committee"),

which includes survivors of the sexual abuse perpetrated by members of CBI, seeks the Court's

permission to pursue the avoidance and recovery of the All Hallows Transfer for the benefit of

CBI's bankruptcy estate and its creditors.  The All Hallows Transfer is subject to avoidance and

---

[1] A copy of the March 9, 1990 transfer deed is attached hereto as **Exhibit A**.

[2] The Debtors in the above-captioned cases are CBI and The Christian Brothers of Ireland, Inc.

-2-

recovery as an "actual" fraudulent transfer under the Bankruptcy Code and New York law because there can be no doubt in this case that CBI made the All Hallows Transfer with the actual intent to hinder, delay or defraud sexual abuse survivors. As described by CBI's own general counsel, CBI made the All Hallows Transfer as part of a fraudulent asset protection scheme designed to make CBI a less financially attractive defendant to the sexual abuse survivors who were in active litigation or contemplating litigation against CBI.

3. The Committee seeks authorization to pursue the avoidance and recovery of the All Hallows Transfer because resolution of CBI's fraudulent conveyance claims against AHI will determine whether additional assets are available for distribution to CBI's creditors, including the sexual abuse claimants. The Committee is the only party in interest that is willing and able to represent the interests of the estate and its creditors in litigation to avoid the All Hallows Transfer. In particular, CBI has not agreed to pursue avoidance of the All Hallows Transfer and, in fact, is hopelessly conflicted out of doing so because: (a) CBI transferred the property at issue pursuant to its intentional scheme to hinder, delay or defraud creditors; (b) the transferee (AHI) was formed by and is affiliated with CBI; and (c) CBI's long-time general counsel, Anthony D. Dougherty, was the mentee of John J. Duffy, CBI's prior general counsel who orchestrated the fraudulent scheme. Thus, in light of CBI's and its counsel's inability to prosecute the fraudulent conveyance claims credibly, the Committee respectfully requests that the Court enter an order granting the Committee derivative standing to assert, litigate and settle (with Court approval) CBI's fraudulent conveyance claims to avoid and recover the All Hallows Transfer.[3]

---

[3] Attached hereto as **Exhibit G** is a copy of a *[Proposed] Complaint for Avoidance and Recovery of Fraudulent Transfer to All Hallows Institute* (the "Proposed Complaint") that sets forth the fraudulent conveyance claims the Committee intends to assert against AHI in the event that the Court grants this Motion. The Committee reserves all rights to supplement, revise or otherwise amend the Proposed Complaint prior to filing the Proposed Complaint.

-3-

4.      Derivative standing is appropriate in this case because CBI and its estate have, at a minimum, a "colorable" claim for avoidance of the All Hallows Transfer.  Based on the facts outlined above, the All Hallows Transfer is avoidable as an "actual" fraudulent conveyance under section 544 of the Bankruptcy Code and New York's Debtor & Creditor Law.  Furthermore, the anticipated defenses to avoidance of the All Hallows Transfer – namely, a statute of limitations defense and a defense based on the First Amendment or the Religious Freedom Restoration Act – lack merit and/or do not justify CBI's failure to pursue avoidance of the All Hallows Transfer.  Finally, the pursuit of CBI's avoidance claims against AHI is in the best interests of the bankruptcy estate because, among other reasons, if the Committee prevails against AHI several millions of dollars in value could be brought into the estate for distribution among CBI's creditors.  Therefore, for the reasons set forth herein, the Committee respectfully requests that the Court authorize the Committee to pursue the avoidance and recovery of the All Hallows Transfer.

## II.  JURISDICTION AND VENUE

5.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The Motion presents a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2) over which the Court has authority to enter a final order.  The statutory predicates for the relief requested in this Motion include 11 U.S.C. §§ 105, 363, 1103 and 1109.  Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## III.  BACKGROUND

**A.      The Bankruptcy Case**

6.      On April 28, 2011 (the "Petition Date"), CBI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  CBI continues to operate its business as a debtor in possession.

-4-

7.     On or about May 19, 2011, the United States Trustee appointed the Committee to represent CBI's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).  This Court entered an order authorizing the Committee to employ Pachulski Stang Ziehl & Jones LLP as counsel for the Committee.

**B.     The All Hallows Transfer**

8.     Prior to April 13, 1990, CBI owned certain real and personal property associated with a high school located in Bronx County, New York commonly known as All Hallows High School.  On April 13, 1990, by deed dated March 9, 1990, CBI transferred the real property and improvements associated with All Hallows High School to AHI, a corporation formed by CBI. *See* **Exhibit A**.  CBI received, if anything at all, only $10 in exchange for the transfer.  *Id*.  The deed was notarized by John J. Duffy, CBI's late general counsel.  *Id*.  Mr. Duffy was the mentor of Anthony Dougherty, CBI's current counsel, who states in his biography that he "[g]ained significant experience in representing not-for-profit, educational and religious institutions under John J. Duffy, Esq."  *See* http://www.tarterkrinsky.com/pages/attorneys/dougherty_anthony.html (last visited on April 24, 2012).

9.     Just a few months after recordation of the deed, Mr. Duffy made the following admissions regarding CBI's fraudulent intent with respect to the All Hallows Transfer and other similar transfers:

> Within the last few years in order to make CBI less of a target in any suit for damages, we have been incorporating each school as a separate corporate entity with its own Board of Trustees or Directors and transferring title to the school from CBI e.g. to All Hallows Institute.  This helps to give some protection from liability and is also useful for fund raising by individual schools.

*See* **Exhibit B**.

-5-

DOCS_LA:252631.7  14012-002

10.     The "liability" and "suits" referenced in Mr. Duffy's letter related to sexual abuse claims against CBI.  Prior to the All Hallows Transfer in 1990, CBI had actual knowledge that individuals had been sexually abused by its members, that some of the sexual abuse survivors already had commenced litigation against CBI and that CBI had exposure for further sexual abuse litigation.  For example, in 1989, James Hoy filed a complaint against CBI arising out of sexual abuse occurring at Essex Catholic High School, a high school operated by CBI, in 1982.  *See McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83 (App. Div. 1997).  Also in 1989, the Newfoundland Government appointed a Royal Commission to investigate the sexual, physical and emotional abuse claims arising from the Mt. Cashel orphanage, an orphanage operated by the Congregation of Christian Brothers (the "Congregation") and/or CBI.[4]  *See Rowland v. Vancouver College*, 2001 BCCA 527 (2001).  Furthermore, the archives of the Eastern American Province include a document stating that the Congregation was aware of sexual abuse claims arising out of Canada in 1989.  *See* **Exhibit C** (stating that in 1989, the "[f]irst accusations of abuse at Mt. Cashel Orphanage surface in newspaper in St. John's, Nf'ld.  Canadian Province begins years of court cases …").

**C.     CBI's Failure To Prosecute The Avoidance Actions Against AHI**

11.     Based on the foregoing facts regarding the All Hallows Transfer, the Committee has concluded that the All Hallows Transfer was part of an intentional, fraudulent scheme to transfer assets from CBI to a separate but affiliated corporation in order to hinder, delay or

---

[4] Since the 19th century, the Congregation has been a papal institute and voluntary association of laymen in communion with the Roman Catholic Church.  For over a century, the Congregation has operated in the United States and Canada, among other places.  Both CBI and AHI are civil entities affiliated with the Congregation.  The North American Province is presently the geographical division of the Congregation that covers the United States and Canada, and includes CBI and AHI.  The Eastern American Province was one of the predecessors of the North American Province.

DOCS_LA:252631.7  14012-002

defraud CBI's sexual abuse creditors. Thus, the Committee made a written demand to CBI that CBI pursue all avoidance claims available to CBI, including all avoidance claims related to the All Hallows Transfer (the "Avoidance Claims"). *See* **Exhibit D**.

12. CBI has not agreed to the Committee's request that CBI pursue its Avoidance Claims against AHI. The Committee believes that CBI's inaction is due to the fact that CBI itself is inextricably linked with AHI. For instance, CBI formed AHI and transferred the property associated with All Hallows High School to AHI for only nominal consideration, as part of CBI's fraudulent scheme to attempt to shield its assets from sexual abuse claimants. The Congregation (CBI's ecclesiastical counterpart) established All Hallows High School in 1909, and All Hallows High School's mission statement and beliefs are closely tied to those of the Congregation. *See* http://www.allhallows.org/noflash/about.html (last visited on April 24, 2012). Furthermore, CBI's counsel is the protégée of the architect of CBI's fraudulent scheme. Thus, CBI has failed to prosecute the Avoidance Actions against AHI and, in fact, is conflicted out of doing so.

13. As a result, the Committee is the only party in interest in this bankruptcy case that can legitimately represent the best interests of the estate and its creditors with respect to the Avoidance Claims against AHI. Therefore, the Committee seeks an order of this Court granting the Committee authority to assert, litigate and/or settle (subject to further Court approval) CBI's Avoidance Claims against AHI.

## IV.  BASIS FOR RELIEF

14. By this Motion, the Committee requests derivative standing to seek avoidance of the All Hallows Transfer under the Bankruptcy Code and New York law on the grounds that the All Hallows Transfer was an "actual" fraudulent transfer made by CBI in furtherance of CBI's

-7-

scheme to make itself a financially less attractive defendant in sexual abuse litigation.  The

Second Circuit, in common with the majority of circuits reaching the issue, has held that 11

U.S.C. §§ 1103(c)(5) and 1109(b) imply a "qualified right under 11 U.S.C. §§ 1103(c)(5) and

1109(b) for an unsecured creditors' committee to assert claims where the trustee or debtor in

possession unjustifiably failed to bring suit or abused its discretion in not suing on colorable

claims likely to benefit the reorganization estate."  *In re Adelphia Commc'ns Corp.*, 544 F.3d

420, 423-424 (2d Cir. 2008); *Unsecured Creditors Comm. Of STN Enters. Inc v. Noves (In re*

*STN Enterprises, Inc.)* ("*STN*"), 770 F.2d 901, 904 (2d Cir. 1985) (same); *Adelphia Commc'ns*

*Corp v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.) ("Adelphia")*, 330 B.R. 364 (Bankr.

S.D.N.Y. 2005) (same) (citing cases).  *See also Official Comm. of Unsecured Creditors of*

*Cybergenics Corp. v. Chinery*, 330 F.3d 548, 579-80 (3d Cir. 2003) (bankruptcy courts, pursuant

to their equitable powers, can confer upon creditors' committees standing to bring avoidance

actions for the benefits of a debtor's estate).

15.     To determine whether a debtor in possession has unjustifiably failed to bring suit,

and thus whether a creditors' committee should be given standing to bring an action, courts

evaluate (1) whether the committee has presented "a colorable claim or claims for relief that on

appropriate proof would support a recovery," and (2) "whether an action asserting such claim(s)

is likely to benefit the reorganization estate." *STN*, 779 F.2d. at 905; *Adelphia*, 330 B.R. at 374

and n. 19 ("A debtor's failure to bring a claim is deemed to be unjustifiable when the committee

has presented a colorable claim that on appropriate proof would support recovery and the action

is likely to benefit the reorganization estate"); *Official Committee of Unsecured Creditors v.*

*Morgan Stanley & Co., Inc (In re Sunbeam Corp.) ("Sunbeam")*, 84 B.R. 355, 374 (Bankr.

S.D.N.Y 2002) (same).

-8-

16.    In the present case, the Committee satisfies both the elements required for a grant of derivative standing to bring the Avoidance Claims.  As discussed in more detail below, the Avoidance Claims are colorable claims, and pursuit of the Avoidance Claims is in the best interests of CBI's bankruptcy estate.  As a result, CBI's failure to pursue the Avoidance Claims is unjustified and the Committee should be permitted to prosecute the Avoidance Claims.

## A.    The Avoidance Claims Against AHI Are Colorable Claims

17.    For purposes of this Motion and its request for derivative standing, the Committee is not required to prove that it ultimately will succeed in avoiding and recovering the All Hallows Transfer.  Rather, the Committee is required only to make a "colorable" claim.  *STN*, 779 F.2d. at 905; *Adelphia*, 330 B.R. at 374 and n. 19; *Sunbeam*, 84 B.R. at 374.

18.    "Caselaw construing requirements for 'colorable' claims has made it clear that the required showing is a relatively easy one to make." *Adelphia*, 330 B.R. at 376.  Courts have explained what is meant by a colorable claim in a variety of ways.  *See, e.g., In re G-I Holdings, Inc.*, 313 B.R. 612, 631 (Bankr. D.N.J. 2004) (court must decide whether the Committee has asserted "claims for relief that on appropriate proof would support a recovery"); *In re America's Hobby Ctr., Inc.*, 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998) (standing to sue should be denied only if claims are "facially defective"); *Official Comm. Of Unsecured Creditors v. Austin Fin. Serv. (In re KDI Holdings)*, 277 B.R. 493, 508 (Bankr. S.D.N.Y. 1999) (observing that the inquiry into whether a claim is colorable is similar to that undertaken on a motion to dismiss for failure to state a claim); *In re iPCS, Inc.*, 297 B.R. 283, 291-92 (Bankr. N.D. Ga. 2003) (same);

-9-

*In re Colfor*, 1998 Bankr. LEXIS 158, *7 (Bankr. N.D. Ohio, Jan. 5, 1998) (claims should be "plausible" or "not without some merit"); *see also Adelphia*, 330 B.R. at 376 (collecting cases).[5]

19.     As discussed in the following sections, the Avoidance Claims against AHI are "colorable" because there are meritorious legal and factual bases for asserting the Avoidance Claims.  In addition, the defenses likely to asserted by CBI and All Hallows – which include a statute of limitations defense and a defense based on the First Amendment or the Religious Freedom Restoration Act – are without merit and/or do not alter the conclusion that the Avoidance Claims are "colorable" claims that should be pursued for the benefit of CBI's bankruptcy estate and its creditors.

> **1.     The Avoidance Claims Are Colorable Fraudulent Transfer Claims Under 11 U.S.C. § 544 and N.Y. Debt. & Cred. Law §§ 276, 276-A, 278 and 279**

20.     CBI made the All Hallows Transfer to AHI with an actual intent to hinder, delay, or defraud CBI's creditors, namely the sex abuse survivors who were in active litigation or contemplating litigation against CBI at the time of the transfer.  As a result, CBI, as a debtor in possession, has colorable claims against AHI under 11 U.S.C. § 544 and New York's Debtor & Creditor Law, specifically N.Y. Debt. & Cred. Law §§ 276, 276-A, 278 and 279.

---

[5] On a motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6), a court must "accept all factual allegations in the complaint as true," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007), even if the allegations are doubtful in fact. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). The factual allegations must be plausible, *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007); and "raise a right to relief above the speculative level." *Bell Atl. Corp.,* 127 S.Ct. at 1965; *accord ATSI Commcn's, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.,* 127 S.Ct. at 1969; *accord Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007).

-10-

21.    Two subsections of 11 U.S.C. § 544 enable CBI to utilize New York's Debtor & Creditor Law to avoid the All Hallows Transfer.  Under 11 U.S.C. § 544(a), CBI has the rights and powers of a judgment creditor as of the commencement of the bankruptcy case, without regard to CBI's own knowledge as of the Petition Date.  In addition, under 11 U.S.C. § 544(b)(1), CBI may avoid any transfer of an interest of CBI in property that is voidable under applicable law by an actual creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

22.    Here, New York law is the "applicable law" because the transferor (CBI), the transferee (AHI) and the property (the property associated with All Hallows High School) were each located in New York.  Under New York law, a conveyance made with intent to defraud present **or** future creditors is fraudulent with respect to present **and** future creditors, and such transfers can be set aside.  *See, e.g.*, N.Y. Debt. & Cred. Law §§ 276, 278-279.  New York law also subjects the transferee of a fraudulent conveyance to liability for the plaintiff's attorneys fees.  *See* N.Y. Debt. & Cred. Law § 276-A.

23.    It cannot reasonably be disputed that CBI intended to hinder, delay or defraud its creditors, as they existed in 1990 and its future creditors, by making the All Hallows Transfer.  Mr. Duffy, general counsel to CBI, unabashedly admitted that the All Hallows Transfer was made "to make CBI less of a target in any suit for damages" and "helps to give some protection from liability."  At that time, CBI was well aware of the sexual abuse litigation pending against it, and the Royal Commission's investigation into the abuse at the Mt. Cashel orphanage.  While Mr. Duffy lauds the scheme to establish separate corporations and transfer assets from CBI to such corporations as being "also useful for fund raising" by the schools, this incidental benefit of CBI's asset protection scheme does not "launder" CBI's fraudulent intent.  Notably, Mr. Duffy

-11-

was not a mere scrivener for CBI – by his own admission, his statements were based "upon my knowledge of what the Brothers have done in the Eastern Province for years." *See* **Exhibit B**.

24.     Rarely does a party fraudulently transferring property make the clear cut statement of intent provided by Mr. Duffy.  Instead, courts often must rely on "badges of fraud" to discern the transferor's intent. *Matter of Shelly v. Doe*, 249 A.D.2d 756, 758, 671 N.Y.S.2d 803, 806 (App. Div. 3d Dept. 1998).  New York appellate courts have identified the following badges of fraud: (1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance. *Id*.  A court may find fraudulent intent even if the facts do not support each one of the recited badges.

25.     In this case, almost all of the traditional badges of fraud are present.  As stated by Mr. Duffy, AHI was a corporation formed by CBI.  The close relationship between CBI and All Hallows High School is evident from the school's website, which identifies its mission and beliefs as being closely tied to those of the Congregation, *i.e.*, the ecclesiastical entity associated with CBI.  *See* http://www.allhallows.org/noflash/about.html (last visited on April 24, 2012). The All Hallows Transfer also was not in the usual course of business.  To the contrary, Mr. Duffy made clear that the transfer was made to avoid legal liability.  The possible fundraising benefit noted by Mr. Duffy was merely a useful side effect of a transfer specifically designed to hinder, delay or defraud the abuse survivors.  In addition, from the face of the March 1990 deed, AHI paid, if anything at all, only $10 in exchange for the All Hallows Transfer.  Furthermore, at the time of the All Hallows Transfer, CBI knew that it had exposure for the sexual abuse

-12-

litigation, as evidenced by the Hoy suit, the Royal Commission inquiry and its own archival

materials.  Finally, the Committee is informed that the governance of religious schools, such as

All Hallows High School, often includes a two-tiered system whereby the religious sponsors

often control one level of governance relating to fundamental aspects of the school's operation.

Discovery will enable the Committee to establish whether such a two-tiered system ever existed

at All Hallows and to discern CBI's role in any such system.

26.     Thus, the facts and circumstances surrounding the All Hallows Transfer provide

both direct and circumstantial evidence of CBI's actual intent to hinder, delay or defraud its

creditors by making the All Hallows Transfer.  As a result, a prima facie case to avoid the All

Hallows Transfer under 11 U.S.C. § 544 and N.Y. Debt. & Cred. Law §§ 276, 276-A, 278 and

279 has been established.

### 2.     The Statute Of Limitations Defense Likely To Be Asserted By CBI And AHI Is Without Merit

27.     In response to the Motion, and as a defense to the Avoidance Claims if the

Committee is granted derivative standing, CBI and AHI are likely to assert that the Avoidance

Claims are barred by the applicable statute of limitations.[6]  Any statute of limitations defense that

might be asserted by CBI and AHI, however, is without merit because CBI's rights to set aside

the All Hallows Transfer under sections 544(a) and 544(b)(1) of the Bankruptcy Code and New

York's Debtor & Creditor Law are protected by New York's "discovery rule" for causes of

action predicated on fraud.

---

[6] The assertion of a statute of limitations defense appears likely because, in 2005, certain creditors sued CBI and AHI to set aside the All Hallows Transfer.  In response to that action, Mr. Dougherty threatened sanctions and costs against the plaintiffs' counsel on the grounds that, *inter alia*, the action was time barred.  Copies of the 2005 complaint and Mr. Dougherty's letter in response to that complaint are attached hereto as **Exhibit E** and **Exhibit F**.  The 2005 litigation was dismissed with a tolling agreement.

-13-

28.     New York's "discovery rule" for actions based on fraud is set forth at N.Y. CPLR § 213, which provides that "[t]he following actions must be commenced within six years: … 8. an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. CPLR § 213.  Thus, under New York's "discovery rule" for actions predicated on fraud, a cause of action "must be commenced within six years after the commission of the fraud or within two years of the date the fraud was or should have been discovered with reasonable diligence, whichever is longer." *Phillips v. Levie,* 593 F.2d 459, 462 n. 12 (2d Cir. 1979) (bracketed material removed); *see also Manning v. Utilities Mut. Ins. Co.,* 254 F.3d 387, 401 n. 12 (2d Cir. 2001) ("New York's six year statute of limitations for fraud claims is a 'discovery rule.'").[7]

29.     CBI's claim for avoidance of the All Hallows Transfer under section 544(a) of the Bankruptcy Code and New York's Debtor & Creditor Law is protected by the "discovery rule" because (a) CBI became a hypothetical judgment creditor as of the commencement of the bankruptcy case, pursuant to 11 U.S.C. § 544(a), and (b) the All Hallows Transfer was, pursuant to N.Y. Debt. & Cred. Law § 276, fraudulent as to present **and** future creditors of CBI.  Thus, CBI and derivatively, the Committee, have two years from the commencement of the bankruptcy case to bring a fraudulent conveyance action against AHI.

30.     CBI's claim for avoidance of the All Hallows Transfer under section 544(b)(1) of the Bankruptcy Code and New York's Debtor & Creditor Law also is protected by New York's

---

[7] The "discovery rule" applies to "actual" fraudulent transfers, but not to "constructive" fraudulent transfers.  *See In re Bernie L. Madoff Inv. Sec. LLC ("Madoff")*, 445 B.R. 206, 233 n. 25 (Bankr. S.D.N.Y. 2011).

-14-

"discovery rule" for actions based on fraud. Section 544(b) of the Bankruptcy Code puts the debtor in possession (or derivatively, a committee) "in the shoes of each individual creditor who could have avoided the transfers under state law." *In re Maui Indus. Loan & Fin. Co.,* 454 B.R. 133, 138 (Bankr. D. Haw. 2011). Thus, the "discovery" period for a debtor in possession or a committee with derivative standing does not begin to run until "the *last* creditor could reasonably have discovered the fraudulent nature of a particular transfer." *Id.* (emphasis in original); *see also State Farm Mut. Auto. Ins. Co. v. Cordua,* ––– F.Supp.2d ––––, 2011 WL 6009970, *5 (E.D. Pa. Dec. 2, 2011) (stating that "the majority of other jurisdictions have consistently held that the one-year savings provision [under UFTA] does not begin to accrue until the creditor discovers or could have reasonably discovered the nature of the fraudulent transfer").

31.     In this case, CBI has at least one unsecured creditor who did not discover, and could not with reasonable diligence have discovered, the fraudulent nature of the All Hallows Transfer within two years of the Petition Date. *See, e.g., Madoff*, 445 B.R. at 234 (trustee could sue to avoid actual fraudulent transfers that occurred outside the six-year statutory period because trustee alleged that "the fraudulent scheme perpetrated by [the debtor-transferor] was not reasonably discoverable by at least one unsecured creditor of [the debtor-transferor]" within two years of the petition date). Accordingly, under *Madoff*, a claim to avoid the All Hallows Transfer as an "actual" fraudulent transfer under section 544(b)(1) of the Bankruptcy Code and New York's Debtor & Creditor Law is timely.

32.     Finally, the Committee anticipates that CBI and AHI will contend that the statute of limitations has run on the Avoidance Claims by virtue of CBI's recordation of the transfer deed in 1990. Under New York law, however, the mere recordation of a transfer deed does not give rise to a duty to inquire or impart constructive notice to a plaintiff seeking to set aside a

-15-

transfer made with intent to defraud. *See Dowlings, Inc. v. Homestead Dairies*, 88 A.D.3d 1226,

932 N.Y.S.2d 192 (App. Div. 3d Dept. 2011); *Citicorp Trust Bank, FSB v. Makkas*, 67 A.D.3d

950, 889 N.Y.S.2d 656 (App. Div. 2d Dept. 2009) ("[T]he failure to ascertain that an allegedly

fraudulent conveyance has occurred through the inspection of public records is not a basis for

imputing knowledge of the fraud in the absence of circumstances that would require the plaintiff

to investigate."). To the best of the Committee's knowledge, CBI did not give actual notice of

the All Hallows Transfer to any creditor, nor did anything occur in the operation of CBI or All

Hallows High School that would give rise to any suspicion that the All Hallows Transfer had

occurred or was fraudulent. In the absence of such circumstances, CBI's bankruptcy estate may

seek to avoid the All Hallows Transfer without being barred by the statute of limitations.

### 3. The First Amendment Or RFRA Defense Likely To Be Asserted By CBI And AHI Does Not Warrant Denial Of The Motion

33.     The Committee also anticipates that CBI and AHI will contend that the

Avoidance Claims should not be prosecuted based on the First Amendment and the Religious

Freedom Restoration Act ("RFRA").[8] As an initial matter, the Committee believes that the First

Amendment/RFRA issues should not be addressed unless and until the Court determines that

application of the avoidance provisions of the Bankruptcy Code will result in the property at

issue being property of CBI's estate. In other words, any First Amendment/RFRA issues should

not be addressed until the avoidability of the All Hallows Transfer is determined.

34.     Additionally, in *Tort Claimants Committee v. Roman Catholic Archbishop of*

*Portland in Oregon (In re Roman Catholic Archbishop of Portland in Oregon)*, 335 B.R. 843,

---

[8] The assertion of a First Amendment/RFRA defense appears likely because CBI raised these issues when the Committee successfully challenged CBI's sales procedures related to the sale of Iona Grammar.

864 (Bankr. D. Or. 2005), Judge Perris denied the defendant's motion for summary judgment on the issue of whether the RFRA bars or limits application of section 544(a)(3) of the Bankruptcy Code to avoid alleged unrecorded beneficial interests in parish real property. In that case, the court concluded that section 544(a)(3) of the Bankruptcy Code could possibly result in the avoidance of all alleged interests in parish property, including schools and churches, which could make those schools and churches unavailable to the parishioners and school children to use for worship and education. *Id*. at 863. Nonetheless, the court denied summary judgment on the issue of application of the RFRA. *Id*. at 864. In particular, the court found that factual issues existed because:

> Without knowing the amount of the claims or the value of the real property, or what alternatives parishioners and school children would have for worship and religious education, I cannot tell whether application of section 544(a)(3) would create a substantial burden on the exercise of religion. The burden might not be substantial, depending on the number of properties that must be sold to pay claims of creditors and whether there are alternative locations for worship and religious education. But if the application of the statute leaves the parishioners and school children with no place to worship and study because no facilities are available, and if they establish that worship and study are central to religious doctrine, the burden could be substantial.

*Id.* at 863.

35.    Similarly, in this case, the existence of a substantial burden cannot be determined until the amount of the claims that must be paid in the bankruptcy case and the value of other assets available to pay those claims are known. Without that information, the Court cannot determine what portion of the value of the All Hallows property will be used to pay creditors, and what portion will be left over for CBI to use to pursue its mission. Therefore, any potential First Amendment or RFRA defense that may be asserted by CBI or AHI does not warrant denial of the Motion.

-17-

**B.**    **Pursuit Of The Avoidance Claims Is In The Best Interests Of The Bankruptcy Estate And Its Creditors**

36.    The final element of the inquiry into whether derivative standing is appropriate is easily satisfied here.  If the Committee prevails against AHI, in whole or in part, several millions of dollars in value could be brought into the bankruptcy estate for distribution among CBI's creditors.  CBI, through its sales of two other schools, has demonstrated that such property, even subject to a special use, has significant value.  The cost to CBI's estate if the Committee pursues the Avoidance Claims should be comparatively small, given the written admissions of CBI's former counsel as to CBI's actual fraudulent intent behind the All Hallows Transfer.  Because the Committee has every reason to seek preservation of the property of CBI's estate, the Committee will not pursue litigation that it does not believe is reasonably likely to increase the property of the estate by more than such litigation will cost the estate.

37.    Furthermore, viewed in the context of CBI's bankruptcy case as a whole, the Avoidance Claims are a critical tool that will assist the parties in resolving their disputes regarding what property is the property of CBI's bankruptcy estate.  CBI did not list AHI or its assets as property of CBI's estate in its Schedules or Statement of Financial Affairs.  Nearly since the commencement of this case, however, the Committee has raised the question of whether schools once owned by CBI are property of the estate or can be recovered as property of the estate.  CBI has insisted, both prepetition and after this case was filed, that AHI and its property is not property of the estate and not recoverable into the estate.  Prosecution of the Avoidance Claims will provide an additional benefit to the bankruptcy estate by fostering resolution of this long-standing issue in the case.

38.    Thus, the Committee has established that derivative standing is appropriate in this case.  The Avoidance Claims are "colorable" claims, and prosecution of the Avoidance Claims

-18-

will benefit CBI's bankruptcy estate and its creditors.  As a result, CBI's failure to pursue the

Avoidance Claims for the benefit of the bankruptcy estate is unjustifiable.  In addition, as set

forth above, CBI and its professionals have an inherent conflict in this matter that interferes with

CBI's ability to exercise its fiduciary obligations to the estate and its creditors.  Not only did CBI

form AHI and transfer the very property that is the subject of the Avoidance Claims to AHI, but

CBI and its ecclesiastical counterpart (*i.e.*, the Congregation) are also integrally related to the

mission of All Hallows High School.  Moreover, CBI's current counsel was a mentee, partner

and colleague of Mr. Duffy, the architect of CBI's fraudulent asset protection scheme that

included the All Hallows Transfer.  Because of these fundamental conflicts, the Committee is the

only party in interest that is willing and able to bring the Avoidance Claims.

[remainder of page intentionally blank]

-19-

DOCS_LA:252631.7 14012-002

## V. **CONCLUSION**

39.     For all of the reasons set forth above, the Committee requests that it be granted

derivative standing to assert, litigate and settle (subject to further Court approval) CBI's

Avoidance Claims against AHI, so that any of this Court's determinations with respect to the

Avoidance Claims are binding on CBI and its bankruptcy estate.


Dated:  New York, New York          PACHULSKI STANG ZIEHL & JONES LLP
        May 1, 2012


                                    */s/ Ilan D. Scharf*
                                    Alan J. Kornfeld, Esq.
                                    Ilan D. Scharf, Esq.
                                    780 Third Avenue, 36th Floor
                                    New York, NY  10017-2024
                                    Telephone:  (212) 561-7700
                                    Facsimile:  (212) 561-7777

                                    -and-

                                    James I. Stang, Esq. (admitted *pro hac vice*)
                                    10100 Santa Monica Blvd., 13th Floor
                                    Los Angeles, California 90067-4100
                                    Telephone:  (310) 277-6910
                                    Facsimile:  (310) 201-0760

                                    Counsel for the Official Committee of
                                    Unsecured Creditors of The Christian Brothers'
                                    Institute and The Christian Brothers of Ireland, Inc.

-20-

DOCS_LA:252631.7 14012-002

**Exhibit A**

CONSULT YOUR LAWYER | A SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD | ID BY LAWYERS ONLY.

AR8334

THIS INDENTURE, made the 9th day of March, nineteen hundred and Fifty

BETWEEN   The Christian Brothers' Institute, A New York not-for-

profit corporation, having offices at 21 Pryer Terrace, New Rochelle,

New York,

party of the first part, and All Hallows Institute, a corporation organized and existing under The Education Law of the State of New York and having offices at 111 East 164th Street, Borough of the Bronx, County of Bronx, City and State of New York

party of the second part,

WITNESSETH, that the party of the first part, in consideration of

Ten no/xx ($10.00)   dollars,

lawful money of the United States, and other good and valuable consideration paid

by the party of the secon → does hereby grant and release unto the party of the second part, the heirs or

successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,

lying and being in the Borough of the Bronx, County of Bronx, City and State of New York, Bounded and Described as follows:

BEGINNING at the corner formed by the intersection of the Northerly side of East 164th Street with the Easterly side of Walton Avenue; running thence EASTERLY along the Northerly side of East 164th Street, One Hundred Fifty-one and Fifty-one one-hundredths (151.51) feet to a point, which point is distant One Hundred Three and Sixty-three one-hundredths (103.63) feet Westerly from the corner formed by the intersection of the Northerly side of 164th Street with the Westerly side of Grand Boulevard and Concourse; running thence NORTHERLY along a line forming an angle of ninety-seven (97) degrees, seven (7) minutes, ten (10) seconds on its Westerly side with the Northerly side of East 164th Street, Forty and Sixty-four one-hundredths (40.64) feet to a point; thence NORTHERLY on a line forming on its Westerly side an angle of One hundred seventy (170) degrees, forty-eight (48) minutes, forty (40) seconds with the last mentioned course, Ninety-six and Eighty-five one-hundredths (96.85) feet to a point; thence NORTHERLY on a line forming on its Westerly side an angle of one hundred seventy-six (176) degrees, six (6) minutes, no (00) seconds with the last mentioned course, Seventy-three and Ninety-six one hundredths (73.96) feet to a point; thence NORTHLY on a line which forms on its westerly side an angle of one hundred seventy-five (175) degrees, ten (10) minutes, twenty (20) seconds with the last course, Forty and Sixty one hundredths (40.60) feet, more or less to a point where said line intersects the dividing line between lots 388 and 389 as shown on the map of West Morrisania etc. made by A. Findlay dated June 1, 1852 and filed in the office of the Register of Westchester County May 16, 1853 as Map No. 15 if said dividing line were extended easterly at right angles to the westerly side of Old Butternut Street; thence WESTERLY at right angles to the westerly side of Old Butternut Street, Twenty and Sixty-four one-hundredths (20.64) feet to the Westerly side of Old Butternut Street at its intersection with the dividing line between lots 388 and 389 aforesaid; thence running WESTERLY at right angles to Walton Avenue and along the said dividing line between Lots 388 and 389 on said map of West Morrisania, One Hundred Seventeen and Fifty one-hundredths (117.50) feet to the Easterly side of Walton Avenue and thence SOUTHERLY along the Easterly side of Walton Avenue, Two Hundred Forty-six and Fifty-nine one-hundredths (246.59) feet to the corner aforesaid the point or place of BEGINNING.

TOGETHER with all ... t, title and interest, if any, of the party of the first part ... to any streets and roads abutting the above described premises to the center lines thereof,

TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises,

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been incumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

THE CHRISTIAN BROTHERS' INSTITUTE

By _William W. Shea_
Harold M. Delaney, President
Vice-President

STATE OF NEW YORK, COUNTY OF

On the _____ day of _____ 19___, before me
personally came _____

to me known to be the individual _____ described in and who
executed the foregoing instrument, and acknowledged that
executed the same.

STATE OF NEW YORK, COUNTY OF

On the _____ day of _____ 19___, before me
personally came _____

to me known to be the individual _____ described in and who
executed the foregoing instrument, and acknowledged that
executed the same.

---

**STATE OF NEW YORK, COUNTY OF Westchester**

On the 9th day of March 1990, before me
personally came HAROLD M. DELANEY William M.
Stolda to me known, who, being by me duly sworn, did depose and
say that he resides at No. 21 Pryer Terrace
New Rochelle, New York
that he is the Vice President
of The Christian Brothers' Institute
, the corporation described
in and which executed the foregoing instrument; that he
knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the board of directors of said corpora-
tion, and that he signed his name thereto by like order.

JOHN J. DUFFY
Notary Public, State of New York
No. 44-6114002
Qualified in Rockland County
Commission Expires December 31, 19__

**STATE OF NEW YORK, COUNTY OF**

On the _____ day of _____ 19___, before me
personally came _____
to me known, who, being by me duly sworn, did depose and
say that he resides at No. _____
that he is the _____
of _____
, the corporation described
in and which executed the foregoing instrument; that he
knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the board of directors of said corpora-
tion, and that he signed h name thereto by like order.

$ RECEIVED 4455
REAL ESTATE

APR 13 1990

TRANSFER TAX
BRONX
COUNTY

LOC. VER. -90
BY ADDRESS

SECTION 9
BLOCK 2471
LOT 1 + 20
COUNTY OR TOWN Bronx

BX04
PAID

| DEED | 419645 | $21.00 |
| GANFF | 419646 | |
| | | $1.00 |
| GANFF | 419646 | |
| GANFF | | $1.00 |

---

**Bargain and Sale Deed**
WITH COVENANT AGAINST GRANTOR'S ACTS

TITLE No. AR8334

THE CHRISTIAN BROTHERS'
INSTITUTE

TO

ALL HALLOWS INSTITUTE

RECORDED BY
LTIC ABSTRACT CORP.
32 EAST 39th STREET
NEW YORK, N.Y. 10016
599-2170

Recorded At Request of The Title Guarantee Company
RETURN BY MAIL TO:

SHEA & GOULD
330 Madison Avenue
New York, New York 10017
DAVIDOFF + MALITO
10D E 42 St
New York, N.Y. 10017    Zip No.

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS
Distributed by

TITLE GUARANTEE-
NEW YORK

A TICOR COMPANY

RECORDED IN BRONX COUNTY

1990 APR 13 A 9 31

**<u>Exhibit B</u>**

# DAVIDOFF & MALITO

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

ATTORNEYS AT LAW

100 EAST 42ND STREET

NEW YORK, N.Y. 10017-5671

(212) 557-7200

FAX (212) 286-1684

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230
FAX (518) 465-8650

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117
FAX (202) 638-6784

LONG ISLAND
91 N. FRANKLIN STREET
HEMPSTEAD, N.Y. 11660
(516) 483-0630

FLORIDA
1 SOUTHEAST THIRD AVENUE
SUITE 1480
MIAMI, FLA. 33101
(305) 530-1322
FAX (305) 530-9417

December 18, 1990

**VIA TELEFAX**

Claude R. Thomson, Q.C.
Fasken Campbell Godfrey
 Barristers and Solicitors
Box 20
Toronto-Dominion Centre
Toronto, Canada
M5K 1N6

Re:   The Christian Brothers of
      Ireland in Canada

Dear Mr. Thomson:

This will acknowledge your telecopy letter of December 12th regarding the 1962 incorporation by Special Act of The Christian Brothers of Ireland in Canada.

The only person in New York who had any personnel albeit distant involvement with this matter was the late Myles B. Amend. And while I do have the Brothers many files, I have been unable to locate any folder on the above entity.

It is possible that Brother Paul Hennessy, Provincial of the Eastern American Province located at 21 Pryer Terrace, New Rochelle, New York 10804-4499 has a file on this matter. Brother Darcy to whom Myles addressed his letter was during those years, one of the Provincial Consultors before becoming the first Provincial in the then new Canadian Province.

I will attempt to respond to your inquiries in the order presented based upon my knowledge of what the Brothers have done in the Eastern American Province for years.

1.  Yes.  But the power to operate the company resides in the Board of Trustees.

DAVIDOFF & MALITO

Claude R. Thomson, Q.C.
December 18. 1990
Page 2

2.   Yes, it was intended that all of the assets and activities of the congregation would be carried on through the limited company.  Were all assets intended to be transferred to the company (Yes) and was the congregation as such intended to cease to exist? (No)

The relationship between the congregation and the company was that the congregation ran the company and elected its officers and Trustees.

The company (corporation) in the Eastern American Province is known as "The Christian Brothers' Institute" ("CBI").  It is a New York not-for-profit corporation and derives its powers both from the statute which provides broad powers to own real and personal property, etc. and also from it's Charter (two pages of powers are enclosed herewith).

3.   Yes.

In response to your comments on the corporate structure you are correct that the company (CBI) was and is intended as a corporate vehicle to own and hold title to real and personal property, to borrow money, mortgage property et al.

Within the last few years in order to make CBI less of a target in any suit for damages, we have been incorporating each school as a seperate corporate entity with its own Board of Trustees or Directors and transferring title to the school from CBI e.g. to All Hallows Institute.  This helps to give some protection from liability and is also useful for fund raising by individual schools.

If I can be of any further assistance, please call me and I will be happy to oblige.

Best wishes for the Christmas season and a healthy, happy new year.

Cordially,

John J. Duffy

JJD:IMG
Enclosures

cc:  Bro. Paul K. Hennessy, C.F.C.

**Exhibit C**



# DEVELOPMENT OF THE CONGREGATION OF CHRISTIAN BROTHERS IN NORTH AND SOUTH AMERICA (1876-PRESENT)

A BRIEF DESCRIPTION IN CHRONOLOGICAL ORDER
OF EVENTS IN THE LIFE OF THE CONGREGATION
IN THE WESTERN HEMISPHERE.

ARCHIVES/RECORDS CENTER
EASTERN AMERICAN PROVINCE
NEW ROCHELLE, NEW YORK
1997

WF49085

34

1989  St. Augustine's Volunteer Community, 1184 Fulton
      Ave., Bronx, NY established
      Gerald J. Iacullo, superior/director
      2 Brothers and 3 volunteers
      (1992-1994 moved to C.B.-East-Harlem Community, Br.
      Robert B. McGovern, director
      (1994 PROGRAM SUSPENDED)

1989  Provincial Chapter (EAP) meets at Mt. St. Alphonsus,
      Esopus, NY June 25 - July 8th
      all Brothers of Province besides elected delegates are
      invited to participate
      (13 elected delegates)

1989  Province Steering Committee holds first meeting at St.
      Joseph's Residence, New Rochelle, NY, (Sept) Members are
      the elected delegates from July Chapter, term expires
      Sept. 1990.  In 1996 Edmundian and Associate members
      are appointed to Steering Committee.

1989  Los Asociados(as) A Edmundo Rice established in
      Monsefu, Peru (Comunidad "Edmundo Rice")
      Jorge Mirua was founding Asociado
      Vincent A. Peragine, coordinator
      10 Asociados(as); 4 candidates
      (1994  Asociados(as) established at Santa Rosa, Lima)
      (1995  Asociados(as) established at Ariquipa)
      (1996  Asociados(as) established in Chimbote)

1989  Province Archives/Records Center opened at St.
      Joseph's Residence, New Rochelle, NY
      Dedicated in memory of Rt. Rev. Msgr. James W. Power
      on Nov. 30, 1991 by Rev. Br. J. Columba Keating,
      Superior General
      A. Eugenio De Lorenzo, director

1989  Iona College opens campus in Manhattan, NY,
      425 West 33rd Street

*1989  First accusations of abuse at Mt. Cashel Orphanage
      surface in newspaper in St. John's, Nf'ld.  Canadian
      Province begins years of court cases and in October
      of 1996 declares bankruptcy. ,In November of 1996
      accusations against members of EAP who had worked
      in Mt. Cashel over 30 years ago surfaced.

**Exhibit D**



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4100

**TELEPHONE: 310/277 6910**

FACSIMILE: 310/201 0760

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE: 415/263 7000**
FACSIMILE: 415/263 7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302/652 4100**
FACSIMILE: 302/652 4400

**NEW YORK**
788 THIRD AVENUE
36th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212/561 7700**
FACSIMILE: 212/561 7777

WEB: www.pszjlaw.com

James I. Stang                    April 5, 2012                    310.277.6910
                                                                   jstang@pszjlaw.com

**VIA FIRST CLASS MAIL AND EMAIL**
Scott S. Markowitz, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018

> Re:    **Avoidance of Fraudulent Conveyance by The**
>        **Christian Brothers' Institute to All Hallows Institute**

Dear Scott:

We are counsel to the Official Committee of Unsecured Creditors (the "Committee") of The Christian Brothers' Institute ("CBI") and The Christian Brothers of Ireland, Inc.

The Committee hereby demands that CBI prosecute all actions available to it under 11 U.S.C. secs. 544 and 547-550 (such actions, "Avoidance Claims") to avoid and recover transfers to All Hallows Institute, including but not limited to the real property transferred to All Hallows Institute on or about April 13, 1990 (collectively, the "All Hallow Institute Transfer"). To avoid any confusion as to the subject transfer, I am enclosing a copy of the deed transferring the real property from CBI to All Hallows Institute.

**Legal Basis for the Committee's Demand**

The Bankruptcy Code provides that a committee may "perform such . . . services as are in the interest of those represented." 11 U.S.C. §1103(c)(5). The Bankruptcy Code also allows a party in interest, including a creditors' committee, to be heard on any issue in a chapter 11 case. *See* 11 U.S.C. §1109(b). Moreover, section 105(a) empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See* 11 U.S.C. §105(a). These statutes codify Congressional intent that creditors' committees be able to receive derivative standing to prosecute and

DOCS_LA:252627.3 14012-002



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

Page 2

defend claims belonging to a debtor. *See The Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 566 (3d Cir. 2003). It is a "straightforward application of a bankruptcy court's equitable powers" to confer derivative standing under a creditors' committee. *Id.* at 568.

Bankruptcy courts in the Second Circuit will confer derivative standing on a committee upon the committee's showing that (1) the debtor unjustifiably refuses to pursue Avoidance Claims; (2) the Avoidance Claims are colorable; and (3) it is in the best interests of the estate that the Avoidance Claims be pursued. *See Unsecured Creditors of STN Enters., Inc. v. Noves (In re STN Enters. Inc.)*, 220 F.2d 901, 904 (2d Cir. 1985); *Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*, 330 B.R.364 (Bnkr. S.D.N.Y. 2005).

Attached to this letter is the draft *Official Committee of Unsecured Creditors' Motion for Authority to Assert and Prosecute Avoidance Claims, and Litigate and Settle an Adversary Proceeding on Behalf of Bankruptcy Estate Relating to Transfers to All Hallows Institute* (the "Motion"). The Motion sets forth the Committee's position that the Avoidance Claims are actionable and that it is in the best interests of the estate to pursue these Avoidance Claims. The Motion assumes that CBI will refuse the demand that it pursue the Avoidance Claims. Or course, should CBI refuse the demand but agree to the Committee pursing the Avoidance Claims, we will make that clear in the Motion.

### Reasons for the Committee's Demand

We expect that CBI is not inclined to prosecute any claims relating to All Hallows Institute Transfers. We rest this belief, at least in part, on the Debtor's response to the litigation commenced in 2005 regarding the All Hallows Institute Transfers and captioned *John Doe (G.E.B. #16) et a; v. The Christian Brothers' Institute, Inc. et. al*, Index No. 23189/05, the Debtor's role as transferee of the fraudulent conveyance.

In order to move forward with the liquidation of litigation claims of the estate, the Committee seeks to represent to the Court – either by way of a stipulation with the Debtor or else by filing the



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

Page 3

Motion – that the Debtor has declined the Committee's reasonable demand that the Debtor prosecute the avoidance of the All Hallows Institute Transfers.

Please let us know by **April 16, 2012** whether the Debtor agrees or declines to prosecute the avoidance of the All Hallows Institute Transfers.

Very truly yours,

James I. Stang

JIS

**<u>Exhibit E</u>**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------------------------------X

JOHN DOE (G.E.B. # 16), JOHN DOE (G.E.B.#18),
JOHN DOE (G.E.B. # 21), JOHN DOE (G.E.B. # 22),
JOHN DOE (G.E.B. # 24) through JOHN DOE (G.E.B. # 35),
JOHN DOE (G.E.B. # 37), JOHN DOE (G.E.B. # 39)
through JOHN DOE (G.E.B. # 43), JOHN DOE (G.E.B. #45)
through JOHN DOE (G.E.B. # 56), JOHN DOE (G.E.B. # 57),
through JOHN DOE (G.E.B. # 61), JOHN DOE (G.E.B. # 65),
JOHN DOE (G.E.B. # 66), JOHN DOE (G.E.B. # 68)
through JOHN DOE (G.E.B. # 75), R.E., S.H., R.C., C.A.,
M.B., D.C., F.M., J. M., T.M., G.P., D.S., A.W., J.B., M.B.-2,
A.C., G.C., P.C., D.D., W.D., S.D., E.D., D.F., J.F., R.G.,
C.G., J.G., S.H.-2, R.H., T.K., V.P., M.P., R.P., S.S., G.S.,
R.S., J.S., G.W., L.W., J.B.-2, M.B.-3, A.C.-2, G.C.-2,
P.C.-2, D.D., W.D.-2, S.D.-2, E.D., D.F.-2, J.F.-2, R.G.-2
and C.G.-2,

Plaintiffs,

-against-

CHRISTIAN BROTHERS INSTITUTE ("CBI") and
ALL HALLOWS INSTITUTE,

Defendants.

-------------------------------------------------------------------------X

Index No. 23189/05
Date Purchased: 11/1/05

Plaintiffs designate
BRONX County
as the place of trial.

The basis of the venue is
Defendants' place of
business.

**SUMMONS**

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve a
Notice of Appearance, on the Plaintiff's Attorney within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief demanded

in the complaint.


Dated: New York, New York
      October 27, 2005

MICHAEL G. DOWD, ESQ.
Attorney for Plaintiff
420 Fifth Avenue, 25th Floor
New York, NY 10018
(212) 703-5450

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------------------X

JOHN DOE (G.E.B. # 16), JOHN DOE (G.E.B.#18),
JOHN DOE (G.E.B. # 21), JOHN DOE (G.E.B. # 22),
JOHN DOE (G.E.B. # 24) through JOHN DOE (G.E.B. # 35),
JOHN DOE (G.E.B. # 37), JOHN DOE (G.E.B. # 39)
through JOHN DOE (G.E.B. # 43), JOHN DOE (G.E.B. #45)
through JOHN DOE (G.E.B. # 56), JOHN DOE (G.E.B. # 57),
through JOHN DOE (G.E.B. # 61), JOHN DOE (G.E.B. # 65),
JOHN DOE (G.E.B. # 66), JOHN DOE (G.E.B. # 68)
through JOHN DOE (G.E.B. # 75), R.E., S.H., R.C., C.A.,
M.B., D.C., F.M., J. M., T.M., G.P., D.S., A.W., J.B., M.B.-2,
A.C., G.C., P.C., D.D., W.D., S.D., E.D., D.F., J.F., R.G.,
C.G., J.G., S.H.-2, R.H., T.K., V.P., M.P., R.P., S.S., G.S.,
R.S., J.S., G.W., L.W., J.B.-2, M.B.-3, A.C.-2, G.C.-2,
P.C.-2, D.D., W.D.-2, S.D.-2, E.D., D.F.-2, J.F.-2, R.G.-2
and C.G.-2,

Index No. 23189/05

**VERIFIED
COMPLAINT**

Plaintiffs,

-against-

CHRISTIAN BROTHERS INSTITUTE ("CBI") and
ALL HALLOWS INSTITUTE,

Defendants.

------------------------------------------------------------------------X

Plaintiffs, by their attorney, MICHAEL G. DOWD, complaining of the

defendants, hereby allege the following:

## THE PLAINTIFFS

1.    Plaintiffs JOHN DOE (G.E.B. # 16), JOHN DOE (G.E.B. # 18), JOHN

DOE (G.E.B. # 21), JOHN DOE (G.E.B. # 22), JOHN DOE (G.E.B. #24) through JOHN DOE

(G.E.B. # 35), JOHN DOE (G.E.B. # 37), JOHN DOE (G.E.B. # 39) through JOHN DOE

(G.E.B. #43), JOHN DOE (G.E.B. #45) through JOHN DOE (G.E.B. #56) are plaintiffs in civil

actions filed and pending against defendant CHRISTIAN BROTHERS INSTITUTE ("CBI") in

the Supreme Court of Newfoundland, Trial Division relating to physical and sexual abuse at Mount Cashel Orphanage and St. Patrick's School (complaints annexed hereto as Exhibit "A").

2.      Plaintiffs JOHN DOE (G.E.B. # 57) through JOHN DOE (G.E.B. # 61), JOHN DOE (G.E.B. # 65), JOHN DOE (G.E.B. # 66), JOHN DOE (G.E.B. # 68) through JOHN DOE (G.E.B. # 75) are victims of physical and sexual abuse at Mount Cashel Orphanage during the time period Mount Cashel was operated by defendant CHRISTIAN BROTHERS INSTITUTE ("CBI"). (Claims annexed hereto as Exhibit "B").

3.      Plaintiffs R.E., S.H., R.C., C.A., M.B., D.C., F.M., J.M., T.M., G.P., D.S., A.W., J.B., M.B.-2, A.C., G.C., P.C., D.D., W.D., S.D., E.D., D.F., J.F., R.G., C.G., J.G., S.H.-2, R.H., T.K., V.P., M.P., R.P., S.S., G.S., R.S., J.S., G.W., L.W., J.B.-2, M.B.-3, A.C.-2, G.C.-2, P.C.-2, D.D., W.D.-2, S.D.-2, E.D., D.F.-2, J.F.-2, R.G.-2 and C.G.-2 are plaintiffs in civil actions filed against defendant CHRISTIAN BROTHERS INSTITUTE ("CBI") in the Superior Court of the State of Washington for King County relating to physical and sexual abuse at Briscoe Memorial School and O'Dea High School (complaints annexed hereto as Exhibit "C").

## THE DEFENDANTS

4.      Defendant CHRISTIAN BROTHERS INSTITUTE ("CBI") is a New York State not-for-profit business corporation validly existing under the laws of the State of New York. At all times relevant, it had offices at 21 Pryer Terrace, New Rochelle, New York.

5.      Defendant ALL HALLOWS INSTITUTE ("ALL HALLOWS") is a corporation set up by defendant CBI. It is a corporation organized and existing under The Education Law of the State of New York having offices at 111 East 164th Street, Bronx County, New York, New York.

2

## THE FACTS

6.     The Congregation of Christian Brothers is a Roman Catholic religious Order which originated out of Ireland.  It later became a papal institute headquartered in Rome.

7.     At all times relevant, the Congregation of Christian Brothers in North America, including Canada was controlled, directed and supervised by the defendant, CHRISTIAN BROTHERS INSTITUTE ("CBI") located in New Rochelle, New York.

8.     At all times relevant, the defendant CBI as described in the foregoing owned most of the Christian Brothers' schools, residential facilities, and property belonging to the Congregation of Christian Brothers in North America.

9.     At all times relevant, the defendant CBI as described in the foregoing controlled, directed and supervised all members of the Congregation of Christian Brothers in North America.

10.    At all times relevant, the defendant CBI as described in the foregoing controlled, directed and supervised all members of the Congregation of Christian Brothers in North America who staffed religious schools, orphanages and other residential facilities operated by the Congregation of Christian Brothers for other religious or other organizations in North America.

11.    At all times relevant, the defendant CBI as described in the foregoing operated the Mount Cashel Orphanage and St. Patrick's School located near St. John's, Newfoundland, Canada with permission of the Roman Catholic Archdiocese of St. John's, which itself operated through the Roman Catholic Episcopal Corporation of St. John's, a Canadian corporation.

12.    At all times relevant, the defendant CBI operated the Briscoe Memorial School and provided teaching services to O'Dea High School located within the Roman Catholic Archdiocese of Seattle, Washington for the Archdiocese of Seattle.

13.    At all times relevant, the Mount Cashel Orphanage, St. Patrick's School, Briscoe Memorial School and O'Dea High School were staffed by members of the Congregation of Christian Brothers under the control and supervision of the defendant CBI.

## BRISCOE MEMORIAL SCHOOL AND O'DEA HIGH SCHOOL

14.    The Briscoe Memorial School (hereinafter "Briscoe") was initially opened by the Archdiocese of Seattle in 1908 to care for needy and troubled orphans.

15.    In 1914, the defendant CBI, pursuant to a written agreement with the Seattle Archdiocese, took over the day to day internal teaching operations at Briscoe and staffed Briscoe with members of the Christian Brothers.

16.    The Seattle Archdiocese controlled O'Dea High School (hereinafter "O'Dea") while the defendant CBI through member Christian Brothers assisted with teaching operations.

17.    Upon information and belief, Briscoe officials were made aware of defendant CBI member Christian Brothers physically and sexually abusing child residents of Briscoe as early as 1949.

18.    Upon information and belief, in the early 1960's, the parents of a child abused at Briscoe complained to the Archbishop of the Seattle Archdiocese and advised him of the abuse of other children at Briscoe by members of the Christian brothers under the control of the defendant CBI.

4

19. Upon information and belief, the principal of O'Dea was informed of the sexual abuse of a child student by a Christian Brother member of the defendant CBI, in or about 1978.

20. Upon information and belief, the defendant CBI was aware that children at Briscoe and O'Dea were being physically and sexually abused by its member Christian Brothers by the early 1980's or earlier.

21. Briscoe was closed in 1970.

### MOUNT CASHEL ORPHANAGE

22. At all times relevant and until 1962, the defendant CBI operated and controlled the Mount Cashel Orphanage and St. Patrick's School near St. John's, Newfoundland, Canada.

23. Upon information and belief, in the late 1980's, the defendant CBI became aware of allegations that child residents of Mount Cashel had been or were being sexually and physically abused by its member Christian Brothers.

24. The defendant CBI, with the help and assistance of members of the government and law enforcement, whose identities are unknown to plaintiffs, covered up the allegations until in or about February, 1989.

25. In or about February, 1989, the allegations of sexual and physical abuse by defendant CBI's member Christian Brothers at Mount Cashel were reported in the Newfoundland press.

26. In or about mid 1990, Mount Cashel was closed.

## OTHER CBI OPERATED SCHOOLS

27.    Upon information and belief, until in or about 1962, the defendant CBI operated schools in Vancouver, British Columbia, Canada and Victoria, British Columbia, Canada.

28.    Upon information and belief, until in or about 1962, defendant CBI operated other schools elsewhere in Canada.

29.    Upon information and belief, in the 1980's allegations surfaced of widespread sexual abuse of children at certain of these schools by Christian Brother members of the defendant CBI during the 1940's, 1950's and 1960's.

30.    Upon information and belief, the defendant CBI was aware of these allegations by the 1980's.

## THE FRAUDULENT TRANSFER OF ASSETS BY THE CBI

31.    By the late 1980's, the defendant CBI was very aware of the widespread allegations of physical and sexual abuse of children by its member Christian Brothers at orphanages, homes and schools run by the defendant CBI.

32.    By the late 1980's, the defendant CBI anticipated being sued by the many victims of its member Christian Brothers.

33.    To insulate real property owned by the defendant CBI, in or about 1989, the defendant CBI began incorporating CBI owned schools and real property as separate corporate entities with their own Board of Trustees or Directors.

34.    In or about 1989, the defendant CBI began transferring title of each CBI owned school/property from the defendant CBI to the separate corporate entities set up by the

6

defendant CBI to protect the properties from the many lawsuits anticipated by the defendant CBI. (Exhibit "D" annexed hereto).

## ALL HALLOWS HIGH SCHOOL

35.   At all times relevant, the Christian Brothers through the defendant CBI owned and operated All Hallows High School now located at 111 East 164th Street, Bronx County, New York from 1909 until 1990.

36.   On March 9, 1990, in order to insulate the real property upon which All Hallows stands from expected lawsuits and in furtherance of defendant CBI's overall scheme as described in the foregoing paragraphs 31 to 34, the defendant CBI, by deed, transferred the real property of All Hallows as described in the deed of transfer annexed hereto as Exhibit "E" to All Hallows Institute, a corporation set up by defendant CBI, for ten (10) dollars.

## THE LAWSUITS

37.   In 1999, approximately 40 former residents of Mount Cashel Orphanage filed suits in the Supreme Court of Newfoundland charging physical and sexual abuse by Christian Brothers members of the defendant CBI (33 complaints of the plaintiffs herein are annexed hereto as Exhibit "A"). Other former residents subsequently made similar complaints (16 complaints of the plaintiffs herein are annexed hereto as Exhibit "B").

38.   The complaints variously alleged that the plaintiffs were physically and sexually abused by Christian Brothers, members of the defendant CBI, during the 1940's, 1950's and early 1960's at schools and orphanages operated by or staffed by the defendant CBI's brothers.

7

39.     In 2004, approximately 51 former residents of Briscoe and/or students at O'Dea filed suits in the Superior Court, King County, Washington (complaints of the plaintiffs herein are annexed hereto as Exhibit "C").

40.     The complaints variously alleged that the plaintiffs were physically and sexually abused at Briscoe and O'Dea from in or about 1946 to in or about 1978.

## THE PLAINTIFFS ARE CREDITORS

41.     Pursuant to New York State's Debtor Creditor Law Section 270, the plaintiffs in the actions filed against the defendant CBI in Newfoundland, the State of Washington and in this action are creditors of the defendant CBI.

## FIRST CAUSE OF ACTION

## FRAUDULENT TRANSFER OF ALL HALLOWS IN ANTICIPATION OF LITIGATION AND IN FRAUD OF CREDITORS

42.     Paragraphs 1 through 41 are repeated and realleged as if fully set forth herein.

43.     Pursuant to the Debtor Creditor Law § 270 and plaintiffs' claims as set forth in the foregoing and in Exhibits "A" and "B" and "C", plaintiffs were creditors of defendant CBI prior to CBI's transfer of All Hallows to All Hallows Institute on March 9, 1990.

44.     The foregoing establishes that the defendant CBI transferred All Hallows from defendant CBI's ownership to ownership by the separate corporation All Hallows' Institute (set up by the CBI) in anticipation of litigation against the defendant CBI for the abuse at Mount Cashel, St. Patrick's, Briscoe and O'Dea as well as abuse at other schools the defendant CBI had operated.

8

45. Exhibit "E" shows that there was no consideration for the transfer of real property having substantial value.

46. Exhibit "E" shows that the transfer was made after the defendant CBI had become aware of the abuse at Mount Cashel, St. Patrick's, Briscoe, O'Dea and other of its schools and after the defendant CBI knew it would be a defendant in suits by victims of its member Christian Brothers.

47. Pursuant to New York State's Debtor Creditor Law Section 279 and the foregoing, the defendant CBI's transfer of All Hallows to All Hallows Institute for no consideration was fraudulent and was made in anticipation of litigation that the defendant CBI expected.

WHEREFORE, the Court should:

a. Find that the March 9, 1990 transfer of the real property known as All Hallows High School and described in the deed annexed hereto (Exhibit "E") from the defendant CBI to All Hallows Institute was a fraudulent conveyance made in anticipation of litigation against the defendant CBI;

b. Set aside or annul the conveyance by the defendant CBI to All Hallows Institute;

c. Restrain All Hallows Institute from transferring or disposing of the property described in Exhibit "E";

d. Appoint a receiver to take charge of the property described in Exhibit "E";

e.    Restrain defendant CBI from transferring title to any real property

owned by defendant CBI;

f.    Make any order which the circumstances of this case may require;

and

g.    Grant such other, further and different relief as to the Court seems

just, fair and equitable.

Dated: New York, New York
    October 25, 2005

MICHAEL G. DOWD
Attorney for Plaintiffs
420 Fifth Avenue, 25th Floor
New York, NY 10018
(212) 703-5450

10

## VERIFICATION BY ATTORNEY

MICHAEL G. DOWD, an attorney being duly admitted before the courts of the State of New York, hereby affirms the following under penalties of perjury:

That he is an attorney for the plaintiffs in the above-entitled action with offices located at 420 Fifth Avenue, New York, New York; that he has read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same is true to his knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters he believes them to be true.

That the reason why this verification is made by deponent instead of plaintiffs is because plaintiffs are not within the County of New York where the deponent has his office. Deponent further says that the grounds of his belief as to all matters in the VERIFIED COMPLAINT not stated to be upon his knowledge are based upon writings relevant to this action.

Dated: New York, New York
      October 25, 2005

MICHAEL G. DOWD

11

**<u>Exhibit F</u>**



TARTER KRINSKY
& DROGIN LLP
ATTORNEYS AT LAW

NEW YORK OFFICE
470 PARK AVENUE SO,
NEW YORK, NY 10016
TEL: 212.481.8585
FAX: 212.481.9062

results@tarterkrinsky.com
www.tarterkrinsky.com

December 16, 2005

Via Telefax
And First Class Mail

Michael G. Dowd, Esq.
420 Fifth Avenue, 25th Floor
New York, New York 10018

> *Re: John Doe (G.E.B. # 16) et. al v. The Christian Brothers' Institute, Inc. et. al.*

Dear Mr. Dowd:

This letter shall serve as notice to you that we will move this court for costs and sanctions against you and your client for engaging in frivolous conduct as defined by § 130-1.1 (c) of the New York Rules of Court.

A simple cursory review of the complaint reveals that it is completely without merit in law. Furthermore, it is our position that your commencement of this suit was undertaken by you and your clients primarily to harass and maliciously injure not only my client but also All Hallows High School. As you are certainly aware, All Hallows High School has absolutely no connection whatsoever with the underlying actions.

I base the foregoing, in part, on the following facts:

1. Your are statutorily barred from commencing this action;
2. You provided a copy of your complaint to Mr. Andrew Newman, a reporter for the New York Times at least seven days before filing it with the Supreme Court;
3. You represented to this court that The Christian Brothers' Institute entered into a 1914 written agreement with the Seattle Archdiocese. A simple review of the agreement indicates nothing of the sort (I have included herein a copy of the agreement for your review). It is noteworthy that your clients are in possession of this document as it was produced to them in discovery in the pending Seattle actions;

{G:\WDox\CLIENT\001718\I525\00032662.DOC;1}

4. You have represented to this court that all of the captioned Seattle plaintiffs have filed suits against CBI in the Superior Court of the state of Washington for King County; such is not the case;

5. Your representation to this court that CBI operated schools in Vancouver and Victoria, British Columbia, Canada flies in the face of that which has been previously established in prior litigation, (See, *Re: Christian Brothers of Ireland in Canada* 37 O.R. (3d) 367 [1998] O.J. No.823, Court File No. B316/96). Plaintiffs' Canadian Counsel is well aware of this Canadian court's determination; and

6. An affirmative defense has been raised in each of the underlying complaints that are presently pending in their respective jurisdictions, namely: CBI is not a proper defendant. It is absolutely clear that whether or not CBI is the proper defendant in the underlying actions is a decisive issue; one that has yet to be adjudicated.

Needless to say, your actions are extremely damaging and costly to CBI and All Hallows High School and are wasting an inordinate amount of court time, time that this court can ill afford to lose.

Please be advised that if you do not withdraw your complaint within ten days of receipt of this letter, we have been directed by our client to seek all available remedies including, but not limited to, costs and the imposition of sanctions against you and your client.

In anticipation of your cooperation, I remain,

Cordially,

Anthony D. Dougherty

**<u>Exhibit G</u>**

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760


- and -


PACHULSKI STANG ZIEHL & JONES LLP
Alan J. Kornfeld, Esq.
Ilan D. Scharf, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777


Attorneys for Official Committee of Unsecured Creditors of The Christian Brothers'
Institute and The Christian Brothers of Ireland, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE CHRISTIAN BROTHERS' INSTITUTE, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-22820 (RDD)<br><br>(Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE CHRISTIAN BROTHERS' INSTITUTE AND THE CHRISTIAN BROTHERS OF IRELAND, INC.,<br><br>Plaintiff,<br>v.<br><br>ALL HALLOWS INSTITUTE,<br><br>Defendant. | Adv. Pro. No. 12-[_____] (RDD) |

**[PROPOSED] COMPLAINT FOR AVOIDANCE AND RECOVERY OF**
**<u>FRAUDULENT TRANSFER TO ALL HALLOWS INSTITUTE</u>**

DOCS_LA:253567.4 14012-002

Plaintiff, the Official Committee of Unsecured Creditors ("Plaintiff" or "Committee") of

The Christian Brothers' Institute ("CBI") and The Christian Brothers of Ireland, Inc. ("CBOI")

(collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned cases

pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), by and

through its undersigned counsel, as and for its *Complaint for Avoidance and Recovery of*

*Fraudulent Transfer to All Hallows Institute* (the "Complaint") against All Hallows Institute

("Defendant" or "AHI"), alleges upon knowledge with respect to the Committee and upon

information and belief as to all other matters as follows:

### Nature of This Action

1.      On April 13, 1990, by a transfer deed dated March 9, 1990, CBI transferred

certain real property and improvements associated with a high school commonly known as All

Hallows High School (the "All Hallows Transfer") to AHI, a corporation formed by and

affiliated with CBI.[1]  Just a few months after recordation of the transfer deed, John J. Duffy,

CBI's then general counsel, explained the All Hallows Transfer as follows:

> Within the last few years in order **to make CBI less of a target in any suit for damages**, we have been incorporating each school as a separate corporate entity with its own Board of Trustees or Directors and transferring title to the school from CBI e.g. to All Hallows Institute.  This **helps to give some protection from liability** and is also useful for fund raising by individual schools.

*See* December 18, 1990 letter from John J. Duffy to Claude R. Thomson, Q.C., attached hereto

as **Exhibit B** (emphasis added).  The "liability" referenced in Mr. Duffy's letter related to sexual

abuse claims against CBI, which included: (a) a 1989 sexual abuse complaint filed against CBI;

(b) sexual, physical and emotional abuse claims involving the Debtors being investigated by a

Royal Commission appointed in 1989 by the Newfoundland Government; and (c) other claims or

---

[1] A copy of the March 9, 1990 transfer deed is attached hereto as **Exhibit A**.

-2-

potential claims arising out of abuse perpetrated by members or associates of the Debtors, of which the Debtors would have been aware in 1990.

2. By this Complaint, the Committee, which includes survivors of the sexual abuse perpetrated by members of CBI, seeks to avoid and recover the All Hallows Transfer for the benefit of CBI's bankruptcy estate and its creditors. The Committee seeks to avoid and recover the All Hallows Transfer as an "actual" fraudulent transfer pursuant to sections 544 and 550 of the Bankruptcy Code and sections 276, 278 and 279 of New York's Debtor & Creditor Law, on the grounds that CBI made the All Hallows Transfer with the actual intent to hinder, delay or defraud creditors, including the sexual abuse survivors.

3. CBI's actual fraudulent intent with respect to the All Hallows Transfer is beyond dispute. As described by CBI's own general counsel, CBI made the All Hallows Transfer as part of a fraudulent asset protection scheme designed to make CBI a less financially attractive defendant to the sexual abuse survivors who were in active litigation or contemplating litigation against CBI at the time of the All Hallows Transfer. This direct evidence of CBI's actual fraudulent intent is buttressed by additional circumstantial evidence (or "badges of fraud") showing that, among other things, CBI had (and continues to have) a close relationship with AHI and received, if anything at all, only $10 in exchange for the All Hallows Transfer.

4. Therefore, for these and each of the other reasons set forth herein, the Committee is entitled to avoid and recover the All Hallows Transfer for the benefit of CBI's bankruptcy estate and its creditors, including the sexual abuse claimants. In addition, under New York law, the Committee also is entitled to recover its reasonable attorneys' fees incurred in prosecuting this action against AHI.

-3-

**Parties**

5.      The Plaintiff is the Official Committee of Unsecured Creditors appointed in CBI's chapter 11 case by the United States Trustee on or about May 19, 2011.  The United States Trustee appointed the Committee to represent CBI's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).  The Committee includes survivors of sexual abuse perpetrated by members of CBI.

6.      The Defendant is All Hallows Institute, a corporation organized and existing under the Education Law of New York with a principal place of business located at 111 East 164th Street, Bronx, New York 10452.  AHI was formed by CBI.  Both CBI and AHI are civil entities affiliated with the Congregation of Christian Brothers (the "Congregation"), which has since the 19th century been a papal institute and voluntary association of laymen in communion with the Roman Catholic Church, and which for over a century has operated in the United States and Canada, among other places.  The North American Province is presently the geographical division of the Congregation that covers the United States and Canada, and includes CBI and AHI.

**Standing**

7.      The Committee has standing and is authorized to commence this adversary proceeding on behalf of CBI's bankruptcy estate pursuant to […].

**Jurisdiction and Venue**

8.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper under 28 U.S.C. § 1409.

-4-

DOCS_LA:253567.4 14012-002

**Basis for Relief Requested**

9.      This adversary proceeding is commenced pursuant to Rule 7001 of the Federal

Rules of Bankruptcy Procedure to avoid and recover the All Hallows Transfer pursuant to

sections 544, 550, 551 and 1107 of the Bankruptcy Code and sections 276, 278 and 279 of New

York's Debtor & Creditor Law.  The Committee also seeks its reasonable attorneys' fees

pursuant to section 276-a of New York's Debtor & Creditor Law.

**Facts**

**A.      The All Hallows Transfer**

10.      Prior to April 13, 1990, CBI owned the real property and improvements

associated with a high school located in Bronx County, New York commonly known as All

Hallows High School.  All Hallows High School was established by the Congregation in 1909.

11.      On April 13, 1990, by a transfer deed dated March 9, 1990, CBI transferred the

real property and improvements (*i.e.*, the All Hallows Transfer) associated with All Hallows

High School to AHI.  *See* **Exhibit A**.  CBI received, if anything at all, only $10 in exchange for

the All Hallows Transfer.  *Id*.  The transfer deed was notarized by John J. Duffy, CBI's late

general counsel.  *Id*.

12.      Just a few months after recordation of the transfer deed, Mr. Duffy made the

following admissions regarding CBI's fraudulent intent with respect to the All Hallows Transfer

and other similar transfers:

> Within the last few years in order to make CBI less of a target in
> any suit for damages, we have been incorporating each school as a
> separate corporate entity with its own Board of Trustees or
> Directors and transferring title to the school from CBI e.g. to All
> Hallows Institute.  This helps to give some protection from liability
> and is also useful for fund raising by individual schools.

*See* **Exhibit B**.

DOCS_LA:253567.4 14012-002

13.     The "liability" referenced in Mr. Duffy's letter related to sexual abuse claims against CBI.  Prior to the All Hallows Transfer in 1990, CBI had actual knowledge that individuals had been sexually abused by its members, that some of the sexual abuse survivors already had commenced litigation against CBI and that CBI had exposure for further sexual abuse litigation.  For example:

    a.     CBI was aware that, in 1989, James Hoy filed a complaint against CBI arising out of sexual abuse occurring at Essex Catholic High School, a high school operated by CBI, in 1982.  *McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83 (App. Div. 1997).

    b.     CBI was aware that, in 1989, the Newfoundland Government appointed a Royal Commission to investigate sexual, physical and emotional abuse claims arising from the Mt. Cashel orphanage, an orphanage operated by the Congregation and/or CBI.  *Rowland v. Vancouver College*, 2001 BCCA 527 (2001).

    c.     The archives of the Eastern American Province include a document stating that the Congregation was aware of sexual abuse claims arising out of Canada in 1989.  *See* **Exhibit C** (stating that in 1989, the "[f]irst accusations of abuse at Mt. Cashel Orphanage surface in newspaper in St. John's, Nf'ld. Canadian Province begins years of court cases …").  The Eastern American Province was one of the predecessors of the North American Province.

14.     Thus, the All Hallows Transfer was not made by CBI in the usual course of business.  Instead, CBI made the All Hallows Transfer in an attempt to avoid legal liability for the sexual abuse perpetrated by its members.

15.     AHI received the All Hallows Transfer with knowledge of CBI's actual intent to hinder, delay or defraud CBI's creditors, and received the All Hallows Transfer with the actual intent to hinder, delay or defraud CBI's creditors.

-6-

DOCS_LA:253567.4 14012-002

16.     CBI did not give actual notice of the All Hallows Transfer to any creditor, nor did anything occur in the operation of CBI, AHI or All Hallows High School that would give rise to any suspicion that the All Hallows Transfer had occurred or was fraudulent.

17.     At all relevant times, a close relationship has existed between CBI and AHI.  CBI and AHI are both civil entities that are affiliated with the Congregation, and are part of the North American Province.  CBI formed AHI, and transferred the real property and improvements associated with All Hallows High School to AHI in 1990 as part of CBI's fraudulent asset protection scheme.  In addition, the close relationship between CBI and All Hallows High School is evident from All Hallows High School's website, which identifies its mission and beliefs as being closely tied to those of the Congregation, *i.e.*, CBI's ecclesiastical counterpart. *See, e.g.*, http://www.allhallows.org/noflash/about.html (last visited on April 24, 2012).

18.     Finally, the governance of religious schools, such as All Hallows High School, includes a two-tiered system whereby the religious sponsors, such as CBI or the Congregation, control one level of governance relating to fundamental aspects of the school's operation.

## B.     The Bankruptcy Case

19.     CBI is, and at all relevant times was, a corporation existing under the laws of New York with a principal place of business located at 21 Pryer Terrace, New Rochelle, New York 10804.  On April 28, 2011 (the "Petition Date"), CBI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  CBI continues to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in CBI's chapter 11 case.

20.     Pursuant to 11 U.S.C. §§ 544(a) and 1107, CBI has, as of the Petition Date, all the rights and powers of a "hypothetical judgment creditor" and may avoid any transfer of its

-7-

property that is voidable by such a "hypothetical judgment creditor" without regard to CBI's knowledge or the knowledge of any actual creditor as of the Petition Date.

21.     In addition, under 11 U.S.C. § 544(b)(1) and 1107, CBI may avoid any transfer of an interest of CBI in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

22.     CBI has at least one unsecured creditor (a) who did not discover, and could not with reasonable diligence have discovered, the fraudulent nature of the All Hallows Transfer within two years of the Petition Date, (b) by whom the All Hallows Transfer is voidable under New York's Debtor & Creditor Law and (c) who holds an unsecured claim against CBI that is allowable under 11 U.S.C. § 502.

### First Claim for Relief
### Avoidance and Recovery of Fraudulent Transfer
### (11 U.S.C. §§ 544(a), 550-551 and N.Y. Debt. & Cred. Law §§ 276, 276-a, 278-279)

23.     The Committee repeats and realleges the allegations contained in each preceding paragraph of this Complaint as though set forth fully herein.

24.     On April 13, 1990, by a transfer deed dated March 9, 1990, CBI made the All Hallows Transfer to AHI, by which CBI transferred the real property and improvements associated with All Hallows High School to AHI.  The All Hallows Transfer was a transfer of CBI's property to AHI.

25.     CBI made the All Hallows Transfer to AHI with the actual intent to hinder, delay or defraud CBI's creditors.

26.     AHI is the initial transferee of the All Hallows Transfer.  AHI did not provide fair consideration or reasonably equivalent value to CBI in exchange for the All Hallows Transfer. AHI received the All Hallows Transfer with knowledge of CBI's actual intent to hinder, delay or

-8-

defraud CBI's creditors, and received the All Hallows Transfer with the actual intent to hinder, delay or defraud CBI's creditors.

27.     As of the commencement of CBI's chapter 11 case, CBI and, derivatively, the Committee has all the rights and powers of a "hypothetical judgment creditor" and may avoid any transfer of CBI's property that is voidable by such a "hypothetical judgment creditor" without regard to CBI's knowledge or the knowledge of any actual creditor of CBI as of the commencement of CBI's chapter 11 case.

28.     At the time of the All Hallows Transfer, the All Hallows Transfer was fraudulent as to, and voidable by, present and future creditors of CBI pursuant to sections 276, 278 and 279 of New York's Debtor & Creditor Law.  Thus, the All Hallows Transfer is voidable by a "hypothetical judgment creditor" of CBI.

29.     The Committee is entitled to an order and judgment against AHI pursuant to 11 U.S.C. § 544(a) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279 that the All Hallows Transfer shall be avoided.  As AHI is the initial transferee of the All Hallows Transfer, the Committee is entitled to recover for CBI's estate the All Hallows Transfer or the value thereof under 11 U.S.C. § 550 and N.Y. Debt. & Cred. Law §§ 278 and 279, plus interest thereon at the maximum legal rate from the date of the All Hallows Transfer, and to preserve the All Hallows Transfer or the value thereof for the benefit of CBI's estate under 11 U.S.C. § 551.  The Committee also is entitled to recover its reasonable attorneys' fees under N.Y. Debt. & Cred. Law § 276-a.

**Second Claim for Relief**
**Avoidance and Recovery of Fraudulent Transfer**
**(11 U.S.C. §§ 544(b)(1), 550-551 and N.Y. Debt. & Cred. Law §§ 276, 276-a, 278-279)**

30.     The Committee repeats and realleges the allegations contained in each preceding paragraph of this Complaint as though set forth fully herein.

-9-

31.     On April 13, 1990, by a transfer deed dated March 9, 1990, CBI made the All Hallows Transfer to AHI, by which CBI transferred the real property and improvements associated with All Hallows High School to AHI.  The All Hallows Transfer was a transfer of CBI's property to AHI.

32.     CBI made the All Hallows Transfer to AHI with the actual intent to hinder, delay or defraud CBI's creditors.

33.     AHI is the initial transferee of the All Hallows Transfer.  AHI did not provide fair consideration or reasonably equivalent value to CBI in exchange for the All Hallows Transfer. AHI received the All Hallows Transfer with knowledge of CBI's actual intent to hinder, delay or defraud CBI's creditors, and received the All Hallows Transfer with the actual intent to hinder, delay or defraud CBI's creditors.

34.     Under 11 U.S.C. § 544(b)(1) and 1107, CBI and, derivatively, the Committee may avoid any transfer of an interest of CBI in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

35.     At the time of the All Hallows Transfer, the All Hallows Transfer was fraudulent as to, and voidable by, present and future creditors of CBI pursuant to sections 276, 278 and 279 of New York's Debtor & Creditor Law.  CBI has at least one unsecured creditor (a) who did not discover, and could not with reasonable diligence have discovered, the fraudulent nature of the All Hallows Transfer within two years of the Petition Date, (b) by whom the All Hallows Transfer is voidable under New York's Debtor & Creditor Law and (c) who holds an unsecured claim against CBI that is allowable under 11 U.S.C. § 502.

36.     The Committee is entitled to an order and judgment against AHI pursuant to 11 U.S.C. § 544(b)(1) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279 that the All Hallows

-10-

Transfer shall be avoided.  As AHI is the initial transferee of the All Hallows Transfer, the Committee is entitled to recover for CBI's estate the All Hallows Transfer or the value thereof under 11 U.S.C. § 550 and N.Y. Debt. & Cred. Law §§ 278 and 279, plus interest thereon at the maximum legal rate from the date of the All Hallows Transfer, and to preserve the All Hallows Transfer or the value thereof for the benefit of CBI's estate under 11 U.S.C. § 551.  The Committee also is entitled to recover its reasonable attorneys' fees under N.Y. Debt. & Cred. Law § 276-a.

## Prayer for Relief

**WHEREFORE**, the Committee prays for judgment against AHI as follows:

(a)      On the First Claim for Relief, for a determination that the All Hallows Transfer is avoided as a fraudulent transfer pursuant to 11 U.S.C. § 544(a) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279, and that the Committee, on behalf of CBI's bankruptcy estate, is entitled to recover the All Hallows Transfer or the value thereof, plus interest thereon at the maximum legal rate from the date of the All Hallows Transfer;

(b)      On the Second Claim for Relief, for a determination that the All Hallows Transfer is avoided as a fraudulent transfer pursuant to 11 U.S.C. § 544(b)(1) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279, and that the Committee, on behalf of CBI's bankruptcy estate, is entitled to recover the All Hallows Transfer or the value thereof, plus interest thereon at the maximum legal rate from the date of the All Hallows Transfer;

(c)      On the First and Second Claims for Relief, preserving for the benefit of CBI's bankruptcy estate the All Hallows Transfer or the value thereof;

(d)      On the First and Second Claims for Relief, for the Committee's reasonable attorneys' fees incurred herein;

-11-

(e)     For the Committee's costs of suit incurred herein; and

(f)     For such other and further relief as the Court may deem appropriate.


Dated:  New York, New York            PACHULSKI STANG ZIEHL & JONES LLP
        May __, 2012


                                      _____
                                      Alan J. Kornfeld, Esq.
                                      Ilan D. Scharf, Esq.
                                      780 Third Avenue, 36th Floor
                                      New York, NY  10017-2024
                                      Telephone:  (212) 561-7700
                                      Facsimile:  (212) 561-7777

                                      -and-

                                      James I. Stang, Esq. (admitted *pro hac vice*)
                                      10100 Santa Monica Blvd., 13th Floor
                                      Los Angeles, California 90067-4100
                                      Telephone:  (310) 277-6910
                                      Facsimile:   (310) 201-0760

                                      Counsel for the Official Committee of
                                      Unsecured Creditors of The Christian Brothers'
                                      Institute and The Christian Brothers of Ireland, Inc.

DOCS_LA:253567.4 14012-002