HEARING DATE:   MAY 31, 2012
HEARING TIME:   10:00 A.M.

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for The Christian Brothers' Institute, et al.*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
In re:                                                          :     Chapter 11
                                                                :
THE CHRISTIAN BROTHERS' INSTITUTE, *et al*.   :     Case No.: 11-22820 (RDD)
                                                                :
                           Debtors.                  :     (Jointly Administered)
-------------------------------------------------------------------- x

### DEBTOR'S OBJECTION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AUTHORITY TO ASSERT, LITIGATE AND SETTLE CLAIMS ON BEHALF OF BANKRUPTCY ESTATE RELATING TO FRAUDULENT CONVEYANCE TO ALL HALLOWS INSTITUTE

TO:   THE HONORABLE ROBERT D. DRAIN
       UNITED STATES BANKRUPTCY JUDGE

The Christian Brothers' Institute ("CBI"), one of the above-captioned debtors and debtors-in-possession (the "Debtor"), hereby files this objection (the "Objection") to the motion of the Official Committee of Unsecured Creditors for authority to assert, litigate and settle claims on behalf of bankruptcy estate relating to an alleged intentional fraudulent conveyance to All Hallows Institute (the "Motion"). In support of the Objection, the Debtor respectfully states as follows:

### PRELIMINARY STATEMENT

1.      In its papers, the Committee is seeking extraordinary relief – the right to prosecute a cause of action that belongs to the Debtor. Such relief should not be taken lightly. The

Committee is essentially seeking authority to unwind a transaction that occurred over twenty years ago.  Unwinding such a transaction is not so simple and may have drastic consequences. After all, All Hallows High School ("All Hallows") – a highly regarded Catholic school – is the direct target.  All Hallows is a Catholic boys' high school located in the Bronx in the poorest Congressional district in the United States.  All Hallows routinely places the majority of its graduating class in four-year institutions and has been recognized as one of the top parochial schools in the country.

2.      As this Court is aware, the Debtor has two years from the Petition Date – another eleven months – to commence Chapter 5 causes of action.  As set forth below, at a minimum, any attempt to unwind the All Hallows Transfer (as defined below) – if at all warranted – should not occur until after passage of the August 1st sexual abuse bar date.  After all, while unclear at this juncture, it is quite possible that the monies collected – or to be collected – from real property sales, coupled with available insurance proceeds, and monies collected via other pursuits (*i.e.*, consideration given for third-party releases), may be sufficient to satisfy legitimate claims in these cases, thus obviating the need to purse a costly, fact intensive intentional fraudulent transfer litigation.

3.      At bottom, the Debtor submits that even if the estate has colorable claims asserting an intentional fraudulent transfer that are not barred by the six year statute of limitations, augmented by the discovery rule, the Court should defer granting the Committee such extraordinary relief until the sexual abuse claims can be reviewed and it is determined if the cost of such litigation is justified.

### GENERAL BACKGROUND

4.      On April 28, 2011 (the "Petition Date"), CBI and The Christian Brothers of

Ireland, Inc. ("CBOI" and together with CBI, the "Debtors") each commenced their respective Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate as debtors-in-possession. No trustee has been appointed.

5. The Debtors' cases were consolidated for administrative purposes only, by order dated May 2, 2011. Thereafter, by order dated May 18, 2011, the Debtors were authorized to retain Tarter Krinsky & Drogin LLP as bankruptcy counsel.

6. On May 11, 2011, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). The Committee retained Pachulski Stang Ziehl & Jones LLP as its counsel, which was approved by an order of this Court dated July 14, 2011.

7. CBI is a domestic not-for-profit 501(c)(3) corporation organized under § 102(a)(5) of the New York Not-for-Profit Corporation Law. CBI was formed in 1906 pursuant to Section 57 of the then existing New York Membership Law. The Not-for-Profit Corporation Law replaced the Membership Law effective September 1, 1970. The purpose of CBI's formation is and always has been, to establish, conduct and support Catholic elementary and secondary schools principally throughout New York State.

8. Over the course of its century-long existence and in its ordinary course of business, CBI has conveyed many parcels of developed and undeveloped real property to schools that it had originally established, once they were viable and capable self-sustained independence. These conveyances, which happened on numerous occasions in the ordinary course of CBI's business, were done in furtherance of CBI's sole purpose – to establish, conduct, and support Catholic elementary and secondary schools principally throughout New York State.

9.      The cause for the filing of these cases has been extensively detailed in the affidavit pursuant to Local Bankruptcy Rule 1007-2 filed with the original petitions, and is referred to as if fully set forth herein.  In short, the Debtors' Chapter 11 cases were filed in an effort to resolve in one forum, the onslaught of litigation and claims asserted by alleged sexual abuse plaintiffs against the Debtors.  Most, if not all, of the sexual abuse claims date back to the 1950's, 1960's, and 1970's.

**A.      CBI is Not-for-Profit Entity Focused on Supporting Catholic Education**

10.      The purpose for which CBI – and continues to be – formed was to establish, conduct and support Catholic elementary and secondary schools principally throughout New York State.  The focus of its work is on teaching and helping impoverished communities or communities in need, primarily through education.  For example, several Brothers teach at All Hallows.  The Brothers have a substantial presence in Bonita Springs, Florida assisting in the education of migrant farm workers.  Brothers have also assisted Operation Helping Hands in rebuilding houses for displaced residents in New Orleans as a result of Hurricane Katrina.  Many of the Brothers have full-time teaching positions at educational institutions.

**B.      Establishment of Claims Bar Dates**

11.      By order dated February 10, 2012, this Court entered an order establishing dates by which claimants have to file their claims against the Debtors' estates (Docket No. 244).  With respect to claims on account of sexual abuse, the Court set August 1, 2012 as the bar date.  With respect to other claims against the estates, including general unsecured claims, the Court set May 11, 2012 as the bar date.

12.      The establishment of a sexual abuse claims bar date was a significant undertaking in these cases.  As this Court is aware, the Debtors' Chapter 11 cases are somewhat unique in that the Debtors, over a period of many decades, either operated or were significantly involved in

teaching and ministry with numerous schools, orphanages, and other institutions across the United States and Canada; many of which have been closed for a number of years. The Debtors were required to expend an extraordinary amount of effort to obtain the appropriate names and addresses of the parties to receive actual notice rather than relying solely on publication notice. In fact, various requests and subpoenas were issued and hearings were held with respect to objections raised to such subpoenas as well as the Debtors' efforts to give notice of the sexual abuse bar date.

13.     The Debtors are pleased to report that the noticing process is complete. All told, the Debtors served in excess of 150,000 individuals with notice of the bar dates and published in various news publications in the United States and Canada.[1]

C.     **Exclusivity**

14.     On May 14, 2012, the Debtors filed a motion (the "Exclusivity Motion") to further extend the exclusive periods within which they may file a plan and solicit acceptances thereto through and including October 26, 2012 and December 27, 2012, respectively (Docket No. 326). In such motion, the Debtors pointed out their intention to propose a plan term sheet to the Committee prior to the June 15th hearing on the Exclusivity Motion. In fact, the Debtors recently provided the Committee with a plan term sheet, which details which assets the Debtors seek to retain to continue their mission and provide for the support of retired and infirm Brothers, and what funds would be made available for payment of sexual abuse claims and other unsecured claims.

**RELEVANT BACKGROUND**

15.     Founded in 1909 by the Christian Brothers, All Hallows is a Catholic boys' high

---

[1] Pursuant to the Bar Date Order, the Debtors are required to publish notice of the bar date in those publications a second time. Such noticing will be completed in a timely manner pursuant to the Bar Date Order.

school located at 111 East 164th Street, Bronx, New York (the "All Hallows Property").  Current

enrollment is approximately 650 – most of which are minority students.  Despite being located in

the poorest Congressional district in the country, All Hallows routinely places the majority of its

graduating class in four-year institutions.  In fact, the *Wall Street Journal* has called the school's

success in that regard "stunning."[2]  Additionally, All Hallows has been recognized as one of the

top parochial schools in the country.  All Hallows has more than 10,000 graduates.  One could

see the many notable graduates of All Hallows by perusing the oft-cited Wikipedia site.[3]

16.     In or about April 1990, CBI, as the fee owner of the All Hallows Property, and in

its ordinary course of business, conveyed such property to the All Hallows Institute ("AHI")

pursuant to a transfer deed (the "All Hallows Transfer").  Such deed was promptly and properly

recorded with the Bronx County recording office.  Even a cursory search on ACRIS – which is

publicly available – would evidence such transfer.  The All Hallows Transfer was made upon the

ordinary and customary terms for such transfers in New York, at that time.

17.     In or around October 2005 – almost six years prior to the Petition Date – certain

sexual abuse plaintiffs who had filed lawsuits against the Debtor in Washington State asserting

sexual abuse at O'Dea High School and Briscoe Memorial commenced an action in the New

York Supreme Court, Bronx County (Index No. 23189/05) against CBI and AHI, seeking to,

among other things, unwind the All Hallows Transfer on grounds that such transfer was

allegedly fraudulent (the "All Hallows Action").  As a defense, CBI maintained that the

claimants were barred from brining such an action as the statute of limitations had long expired.

By stipulation dated in or around March 2006, the All Hallows Action was settled and

discontinued.

---

[2] See Suskind, Ron, *A Bronx Tale: College is Better Than No College, Period. You'll Thank Me* Later, The Wall
Street Journal, April 1, 1999.
[3] See http://en.wikipedia.org/wiki/All_Hallows_High_School.

18.     By letter dated April 5, 2012, counsel to the Committee issued a demand on Debtor's counsel – demanding that the Debtor prosecute purported causes of action related to the All Hallows Transfer (the "Committee Demand").  The Committee put in an April 16th response deadline.  Particularly, the Committee is looking to unwind the All Hallows Transfer – which occurred over 20 years ago.  The Committee asserts that pursuant to the Bankruptcy Code § 544's strong-arm power, parties exist (or may exist) that were unaware of the All Hallows Transfer, and as such, the estate would essentially step into those creditors' shoes and enjoy the benefit of New York's discovery rule with respect to intentional fraudulent conveyances.  While the Committee's recitation of the strong-arm power may be correct, that does not belli the fact that based on the well-publicized nature of the All Hallows Transfer and the aggressive solicitation and litigation tactics of plaintiffs' counsel, it is not out of the realm of possibility that a party devoid of knowledge of the All Hallows Transfer simply does not exist.  Additionally, intentional fraudulent transfer litigation is highly fact intensive and the Committee does not explain how the estate will benefit from such litigation.  Rather, it appears that the requested relief will saddle the estate with a costly and burdensome litigation.  This concern is certainly heightened by the anticipated challenges (as noted by the Committee) to be raised based on the First Amendment and the Religious Freedom Restoration Act.  From the Debtor's standpoint, the Committee's argument appears to be nothing more than plaintiffs' attorneys seeking a second bite at the apple.

19.     While it is true that the Debtor has not yet formally responded to the Committee Demand, the Debtor submits that the timing is not ripe due to the unknown, uncertain and unliquidated nature of the Debtor's claims exposure.  The Debtor's also questions the cost-benefit analysis considering that All Hallows consists of one building located in the Grand

Concourse area of the Bronx. Permitting the Committee to proceed at this juncture would simply be a waste of the Debtor's limited resources – especially since Committee counsel's blended rate is in excess of $600 per hour.

## OBJECTION

20. By the Committee Demand, the Committee is demanding that the Debtor immediately commence proceedings to unwind the All Hallows Transfer – or give the Committee authority to do so. The Debtor submits that the Committee's request should not be taken lightly by this Court – as the Committee is looking to strip away from the Debtor important rights. The Debtor submits that – at best – the Committee's demand is premature and the Court should defer a determination of whether the Committee should be granted STN authority until the Court has the benefit of a claims analysis as well as some evidentiary showing that granting the Committee STN authority would be cost beneficial.

21. As noted above, the Debtors served in excess of 150,000 individuals with notice of the bar dates and published in various news publications in the United States and Canada, which, to date, has resulted in 32 filed claims. Seven of the 32 claims were previously settled and proper settlement agreements and releases were executed. Two of the filed claims do not allege sexual abuse, and five of the claims allege abuse at the hands of individuals who have never been in the Congregation of Christian Brothers.

22. Accordingly, the Court should defer the Committee's motion until the sexual abuse claims can be reviewed while examining the cost/benefit to the Debtor of commencing complex litigation.

23. As this Court is aware, the Debtor has two years from the Petition Date – another eleven months – to commence Chapter 5 causes of action. At a minimum, any attempt to

unwind the All Hallows Transfer – if warranted – should not occur until after a reasonable period after the passage of the August 1st sexual abuse bar date.  Indeed, while unclear at this juncture, it is quite possible that the monies collected – or to be collected – from real property sales, coupled with available insurance proceeds, and monies collected via other pursuits (*i.e.*, consideration given for third-party releases), may be sufficient to satisfy legitimate claims in these cases.

24.     Similarly, it is not at all clear at this juncture if the benefit of seeking to unwind the All Hallows Transfer will outweigh the cost to the estate.  Prosecuting an intentional fraudulent conveyance action is a significant litigation which is highly fact intensive.  See, e.g., Ag Venture Fin. Servs., Inc. v. Montagne (In re Montagne), 417 B.R. 232, 238 (Bankr. D. Vt. 2009) (noting fact-intensive nature of determining fraudulent intent).  This is certainly heightened by the substantial legal burdens that have to be surpassed in order to prevail on such an action.  For instance, as noted above, the All Hallows Transfer occurred over twenty years ago – well beyond New York's statute of limitations with respect to fraudulent transfers.  The party prosecuting such an action would have to demonstrate that the facts of this action fall within the "discovery" rule component of the statute of limitations.  Because of the well-publicized nature of the All Hallows Transfer and the aggressive solicitation and litigation tactics of plaintiffs' counsel, having the benefit of the discovery rule is not at all certain – and will surely be a heavily litigated topic.  Additionally, the prosecuting party will have to overcome challenges based on the First Amendment and the Religious Freedom Restoration Act.  The Court would have to determine the nature and scope of any impingement on religious freedom and whether that impingement invalidates and essentially moots this type of litigation.  Reaching that determination, too, is a time consuming and costly process.

25.     The Debtor submits that the estate would be better served by deferring a ruling on

{Client/001718/BANK376/00487743.DOC;6 }                    9

this issue until the passage of the August 1st sexual abuse bar date, thus permitting the Debtor and Committee to focus its efforts on a consensual plan as opposed to expensive litigation.  At that time, the Debtor will be in a better position to ascertain whether pursuit of the litigation to unwind the All Hallows Transfer will benefit the estate.  The Debtor submits that the Committee would not at all be prejudiced by a short delay.

26.    At bottom, the Debtor submits that attempting to unwind the All Hallows Transaction prior to having a sense as to the full claims picture and other available assets is premature and will be disruptive and damaging to a viable and successful school and hinder, rather than advance, consensual plan negotiations which should be the primary focus of the Debtor and the Committee at this stage of these Chapter 11 cases.

### CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court deny the Motion at this juncture and grant such other and further relief as is just and appropriate.

Dated: New York, New York
        May 25, 2012

TARTER KRINSKY & DROGIN LLP
*Attorneys for The Christian Brothers' Institute, et al.*
*Debtors and Debtors-in-Possession*


By:    /s/ Scott S. Markowitz
        Scott S. Markowitz
        1350 Broadway, 11th Floor
        New York, New York 10018
        (212) 216-8000