**Hearing Date:  May 31, 2012**
**Hearing Time:  10:00 a.m. (EST)**

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

- and -

PACHULSKI STANG ZIEHL & JONES LLP
Alan J. Kornfeld, Esq.
Ilan D. Scharf, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Attorneys for Official Committee of Unsecured Creditors of The Christian Brothers' Institute
and The Christian Brothers of Ireland, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE CHRISTIAN BROTHERS' INSTITUTE, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-22820 (RDD)<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR AUTHORITY TO ASSERT, LITIGATE AND
SETTLE CLAIMS ON BEHALF OF BANKRUPTCY ESTATE RELATING TO
FRAUDULENT CONVEYANCE TO ALL HALLOWS INSTITUTE**

The Official Committee of Unsecured Creditors (the "Committee") of The Christian

Brothers' Institute ("CBI") and The Christian Brothers of Ireland, Inc., the debtors and debtors in

possession (collectively, "Debtors") in the above-captioned cases under chapter 11 of title 11 of

the United States Code ("Bankruptcy Code"), submits this reply in support of the Committee's

*Motion for Authority to Assert, Litigate and Settle Claims on Behalf of Bankruptcy Estate*

DOCS_LA:254466.2 14012-002

*Relating to Fraudulent Conveyance to All Hallows Institute* [D.I. 302] (the "Motion") and in response to CBI's objection [D.I. 335] (the "Objection") to the Motion.[1]

## PRELIMINARY STATEMENT

1.      By the Motion, the Committee seeks derivative standing to prosecute an action to avoid and recover the All Hallows Transfer for the benefit of CBI's bankruptcy estate and its creditors.  As described in the Motion, CBI made the All Hallows Transfer to AHI for only nominal consideration, as part of a fraudulent asset protection scheme designed to make CBI a less financially attractive defendant in sexual abuse litigation.  In its Objection, CBI does not deny that the proposed Avoidance Claims are "colorable" fraudulent transfer claims.  CBI also does not deny that CBI cannot credibly prosecute the Avoidance Claims or that the Committee is the only party in interest that legitimately can represent the interests of the estate and its creditors with respect to the Avoidance Claims.  Instead, CBI asserts that the Court should not decide the Motion until after the August 1, 2012 bar date for sexual abuse claims has passed.

2.      The Committee agrees that a ruling on the Motion should be deferred until after the August 1, 2012 bar date.  The Committee further requests that the Court schedule an evidentiary hearing on the Motion during the first week of August 2012, at which time the Committee will present evidence regarding, among other things, (a) the amount and validity of the sexual abuse claims filed against CBI and (b) the additional value that avoidance and recovery of the All Hallows Transfer is likely to bring into CBI's bankruptcy estate.  While the Committee anticipates that the Court will establish a supplemental briefing schedule in connection with the evidentiary hearing, and reserves all rights to supplement this Reply and/or

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

-2-

submit additional briefing in advance of the evidentiary hearing, the Committee submits this Reply as a preliminary response to certain of the arguments raised by CBI in the Objection.

3.      In the Objection, CBI argues that a ruling on the Motion should be deferred until after the August 1 bar date because only 32 sexual abuse claims have been filed so far and, according to CBI, sufficient other funds might be available to pay all legitimate claims against CBI.  Although the total number of sexual abuse claims will not definitively be established until after the bar date has passed, the Committee anticipates that at least 130 sexual abuse claims will be filed against the Debtors.  Moreover, even if none of the actual or anticipated sexual abuse claims are considered, CBI's amended Schedule F ("Schedule F") and most recent Monthly Operating Report ("MOR") show that CBI is hopelessly insolvent, with no ability to pay even the non-tort claims against CBI.  *See* Schedule F [D.I. 324] (showing non-tort claims in excess of $126 million); MOR [D.I. 329] (showing $9.9 million total assets and $4 million total liabilities).  The dismal picture painted by CBI's Schedule F and MOR shows that, notwithstanding CBI's rank speculation regarding its ability to pay all legitimate claims, it is vital that CBI and the Committee begin to identify additional sources of funding – such as the avoidance and recovery of the All Hallows Transfer or the value thereof – to ensure the adequate compensation of the sexual abuse claimants and CBI's other creditors.

4.      CBI also challenges the Committee's request for standing on the grounds that, according to CBI, the proposed avoidance litigation will be time-consuming and expensive.  For instance, CBI claims that the prosecution of an intentional fraudulent transfer claim is "significant litigation which is highly fact intensive."  *See* Objection at ¶ 24.  CBI, however, ignores the fact that, in this case, the Committee is in the somewhat rare position of having a clear admission of CBI's actual fraudulent intent with respect to the All Hallows Transfer.  *See*

-3-

**Exhibit B** to Motion (December 18, 1990 letter from CBI's then general counsel explaining that CBI made the All Hallows Transfer to make itself "less of a target in any suit for damages" and to give CBI "some protection from liability").

5.      CBI also speculates that overcoming the anticipated defenses to the Avoidance Claims – namely a statute of limitations defense and a defense based on the First Amendment or Religious Freedom Restoration Act ("RFRA") – will be an expensive process.  With respect to the anticipated statute of limitations defense, CBI does not deny that the timeliness of the Avoidance Claims will be evaluated under the "discovery rule" component of New York's statute of limitations.  CBI also does not address the Committee's argument that its proposed Avoidance Claim under section 544(a) of the Bankruptcy Code is timely under New York's "discovery rule" because the Committee will seek to avoid and recover the All Hallows Transfer as a "hypothetical judgment creditor" without regard to CBI's knowledge or the knowledge of any actual creditor of CBI as of the commencement of CBI's chapter 11 case.  *See* Motion at ¶¶ 21, 29; **Exhibit G** to Motion at ¶¶ 23-29.  Instead, CBI claims that one of the factual issues involved in the "discovery rule" analysis of the Committee's proposed Avoidance Claim under section 544(b)(1) of the Bankruptcy Code – namely, when CBI's creditors reasonably could have discovered the fraudulent nature of the All Hallows Transfer – will be a "heavily litigated" issue. In this regard, CBI repeatedly refers to the "well-publicized nature" of the All Hallows Transfer but offers no information or examples to show that the All Hallows Transfer was publicized at all, let alone well-publicized.  Furthermore, any attempt by CBI to claim that all potential creditors were aware of the fraudulent nature of the All Hallows Transfer is untenable, given CBI's own description of the "extraordinary amount of effort" it was required to expend to identify potential sexual abuse claimants.  *See* Objection ¶¶ 12-13 (stating that the Debtors were

-4-

involved in numerous institutions across the United States and Canada over a period of many decades, and that the Debtors served notice of the bar date on more than 150,000 individuals).

6.     Finally, CBI argues that, in connection with the anticipated First Amendment and/or RFRA defense, the Court will be required to determine the nature and scope of any impingement on religious freedom. Objection at ¶ 24. With respect to RFRA, CBI is incorrect because RFRA only permits relief against "a government," and neither CBI nor the Committee is a government actor under RFRA. Moreover, even if RFRA could be applied to the Avoidance Claims, it is quite possible that resolution of the Avoidance Claims will not impinge on any religious freedoms because (among other reasons) the Committee intends to seek recovery of the All Hallows Transfer **or** the value thereof. *See* **Exhibit G** to Motion at ¶¶ 29, 36. As a result, the successful prosecution of the Avoidance Claims will not necessarily lead to the closure of All Hallows High School or affect any religious freedoms in any way.[2] Thus, CBI has not shown that the Committee's prosecution of the Avoidance Claims would be unduly expensive.

### ARGUMENT

**A.     Recovery of the All Hallows Transfer or the Value Thereof is a Critical Source of Additional Funding for Payment of Claims against CBI**

7.     In the Objection, CBI claims that prosecution of the Avoidance Claims may not be necessary because, according to CBI, sufficient other funds may be available to pay all legitimate claims against CBI. In support of this position, CBI emphasizes that only 32 sexual abuse claims have been filed to date. As an initial matter, based on discussions with three attorneys representing sexual abuse survivors, the Committee expects that **at least** 130 sexual abuse claims will be filed against the Debtors. Furthermore, even if none of the actual or

---

[2] The Committee reserves all rights and arguments with respect to any First Amendment or RFRA issues that may be raised in connection with the Avoidance Claims.

-5-

anticipated sexual abuse claims are considered, CBI's prediction regarding its ability to pay all legitimate claims is, at best, disingenuous. According to CBI's Schedule F, the non-tort claims against CBI (the majority of which are claims for support of Brothers) total in excess of $126 million. *See* Schedule F at Sheet No. 49. The MOR, on the other hand, shows that CBI has total assets of $9.9 million and total liabilities of $4 million. *See* MOR at MOR-3. In other words, CBI is hopelessly insolvent with no present means of satisfying even the non-tort claims against CBI. As a result, it is vital that CBI and the Committee begin to identify additional sources of funding – such as the recovery of the All Hallows Transfer or the value thereof – to ensure the adequate compensation of the sexual abuse claimants and CBI's other creditors.

**B.    CBI Has Not Shown that the Committee's Prosecution of the Avoidance Claims Would Be Unduly Expensive**

8.    As set forth in the Motion, the Committee will not pursue litigation that is not reasonably likely to increase the property of the estate by more than such litigation will cost the estate, because one of the Committee's goals is to preserve and maximize the property of CBI's bankruptcy estate for distribution to CBI's creditors. At the requested evidentiary hearing on the Motion, the Committee will provide evidence regarding the additional value that recovery of the All Hallows Transfer or the value thereof is likely to bring into CBI's bankruptcy estate. Furthermore, the Committee anticipates that the cost of prosecuting the Avoidance Claims should be relatively small in comparison to this potential additional value.

9.    In the Objection, CBI argues that the potential costs of prosecuting the Avoidance Claims may exceed the potential benefits. For instance, CBI argues that the prosecution of an intentional fraudulent transfer claim is "significant litigation which is highly fact intensive." Objection at ¶ 24. In this case, however, the Committee has direct evidence of CBI's actual fraudulent intent with respect to the All Hallows Transfer – namely, the December 18, 1990

-6-

letter from CBI's former general counsel explaining that CBI made the All Hallows Transfer to make itself "less of a target in any suit for damages" and to give CBI "some protection from liability" after CBI became aware of its potential exposure in sexual abuse litigation.  *See* **Exhibits B-C** to Motion.  The Committee also has circumstantial evidence of CBI's actual fraudulent intent, including CBI's close relationship with AHI and the fact that CBI received, if anything at all, only $10 in exchange for the All Hallows Transfer.  Thus, CBI's predictions regarding the cost of establishing CBI's actual fraudulent intent are belied by the evidence available to the Committee in this case.

10.     CBI also claims that the anticipated "discovery rule" issues will be expensive to litigate.  CBI offers three main arguments in support of its position:  (a) the All Hallows Transfer purportedly was well-publicized, (b) plaintiffs' counsel in a 2005 action to avoid the All Hallows Transfer – which was dismissed with a tolling agreement – purportedly engaged in "aggressive" solicitation and litigation tactics and (c) the All Hallows Transfer was recorded.  CBI's arguments, however, do not establish that the "discovery rule" litigation will be unduly expensive, for the following reasons:

a.      CBI ignores the Committee's proposed claim for avoidance of the All Hallows Transfer pursuant to section 544(a) of the Bankruptcy Code, by which the Committee will seek to avoid and recover the All Hallows Transfer as a "hypothetical judgment creditor" without regard to CBI's knowledge or the knowledge of any actual creditor of CBI as of the commencement of CBI's chapter 11 case.  *See* **Exhibit G** to Motion at ¶¶ 23-29.

b.      CBI refers repeatedly to the "well-publicized" nature of the All Hallows Transfer and the "aggressive" solicitation and litigation tactics of plaintiffs' counsel in the 2005 avoidance action, but offers no information or examples to establish that the All Hallows

-7-

Transfer was publicized at all, let alone well-publicized, or to show that plaintiffs' counsel in the 2005 action in fact engaged in "aggressive" solicitation and litigation tactics. Furthermore, regardless of what publicity or "aggressive" tactics CBI may be able to establish, any attempt to claim that every potential creditor received notice of the fraudulent nature of the All Hallows Transfer would be highly implausible, given that CBI itself has stated that "the Debtors, over a period of many decades, either operated or were significantly involved in teaching and ministry with numerous schools, orphanages, and other institutions across the United States and Canada; many of which have been closed for a number of years. The Debtors were required to expend an extraordinary amount of effort to obtain the appropriate names and addresses of the parties to receive actual notice rather than relying solely on publication notice. … All told, the Debtors served in excess of 150,000 individuals with notice of the bar dates and published in various news publications in the United States and Canada." *See* Objection at ¶¶ 12-13.

c.      With respect to the recordation of the All Hallows Transfer, CBI has ignored the Committee's discussion of this issue in the Motion. As set forth in the Motion, the mere recordation of a transfer deed does not give rise to a duty to inquire or impart constructive notice to a plaintiff seeking to set aside a transfer made with intent to defraud. *See* Motion at ¶ 32; *see also Dowlings, Inc. v. Homestead Dairies*, 88 A.D.3d 1226, 932 N.Y.S.2d 192 (App. Div. 3d Dept. 2011); *Citicorp Trust Bank, FSB v. Makkas*, 67 A.D.3d 950, 889 N.Y.S.2d 656 (App. Div. 2d Dept. 2009). Thus, the fact that the All Hallows Transfer was recorded does not impact the Committee's ability to take advantage of New York's "discovery rule" and is not likely to result in significant additional litigation expense.

11.      CBI also argues that the anticipated First Amendment and/or RFRA litigation will be a "time consuming and costly process." *See* Objection at ¶ 24. In particular, CBI asserts that

-8-

the Court will be required to determine the nature and scope of any impingement on religious

freedom caused by avoidance and recovery of the All Hallows Transfer.  The plain language of

RFRA, however, only permits relief against "a government."  RFRA provides:

> (a) General. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

> (b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person-(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

> (c) Judicial relief. A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief *against a government*. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb-1 (2012) (emphasis added).  Neither CBI nor the Committee is included in

the definition of "government" under RFRA.  *See* 42 U.S.C. § 2000bb-2(1) ("The term

'government' includes a branch, department, agency, instrumentality and official (or other

person acting under color of law) of the United States, or of a covered entity.").

12.     Finally, even if RFRA could be applied to the Avoidance Claims, CBI ignores the

fact that the Committee intends to seek recovery of the All Hallows Transfer **or** the value

thereof.  *See* **Exhibit G** to Motion at ¶¶ 29, 36.  As a result, the successful prosecution of the

Avoidance Claims will not necessarily lead to the closure of All Hallows High School or

impinge on any religious freedoms in any way.  Thus, CBI has not shown that the Committee's

prosecution of the Avoidance Claims, or the anticipated litigation regarding potential defenses to

the Avoidance Claims, would be unduly expensive.

-9-

## CONCLUSION

13. As set forth above, the Committee requests that the Court schedule an evidentiary hearing on the Motion during the first week of August 2012, at which time the Committee will present evidence regarding, among other things, (a) the amount and validity of the sexual abuse claims filed against CBI and (b) the additional value that avoidance and recovery of the All Hallows Transfer is likely to bring into CBI's bankruptcy estate. The Committee also requests that the Court establish a supplemental briefing schedule in connection with the evidentiary hearing, and reserves all rights to supplement this Reply and/or submit additional briefing in advance of the evidentiary hearing.

Dated: New York, New York     PACHULSKI STANG ZIEHL & JONES LLP
       May 30, 2012

         */s/ Alan J. Kornfeld*
         Alan J. Kornfeld, Esq.
         Ilan D. Scharf, Esq.
         780 Third Avenue, 36th Floor
         New York, NY  10017-2024
         Telephone:  (212) 561-7700
         Facsimile:  (212) 561-7777

         -and-

         James I. Stang, Esq. (admitted *pro hac vice*)
         10100 Santa Monica Blvd., 13th Floor
         Los Angeles, California 90067-4100
         Telephone:  (310) 277-6910
         Facsimile:  (310) 201-0760

         Counsel for the Official Committee of
         Unsecured Creditors of The Christian Brothers'
         Institute and The Christian Brothers of Ireland, Inc.

-10-