**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHRISTIAN BROTHERS' INSTITUTE, *et al.*, | Case No. 11-22820 (RDD) |
| Debtors. | (Jointly Administered) |

## MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE CHRISTIAN BROTHERS' INSTITUTE AND THE CHRISTIAN BROTHERS OF IRELAND, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

TARTER KRINSKY & DROGIN LLP
Anthony Dougherty, Esq.
Scott S. Markowitz, Esq.
1350 Broadway, 11th Floor
New York, New York 10018
Telephone: 212/216-8000
Facsimile: 212/216-8001

*Attorneys for the Debtors and Debtors-In-Possession*

PACHULSKI STANG ZIEHL & JONES LLP          PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq.                        Ilan D. Scharf, Esq.
10100 Santa Monica Blvd., 13th Floor        780 Third Avenue, 36th Floor
Los Angeles, CA  90067-4100                 New York, NY  10017-2024
Telephone: 310/277-6910                      Telephone: 212/561-7700
Facsimile: 310/201-0760                      Facsimile: 212/561-7777

*Attorneys for Official Committee of Unsecured Creditors.*

-and-

LAW OFFICES OF PAUL A. RICHLER
Paul A. Richler, Esq.
15332 Antioch St, Suite 305
Pacific Palisades CA 90272
Telephone: 310/862-0045
Facsimile: 310/612-2501

*Special Insurance Counsel to the Official Committee of Unsecured Creditors*

Dated: New York, New York
          January 9, 2014

**Table of Contents**

SECTION I RULES OF INTERPRETATION ............................................................................... 1
SECTION II DEFINITIONS ....................................................................................................... 3
SECTION III PLAN OBJECTIVES ......................................................................................... 17
SECTION IV TREATMENT OF UNCLASSIFIED CLAIMS .................................................. 17
SECTION V CLASSIFICATION OF CLAIMS. ...................................................................... 19
SECTION VI TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS ............................. 20
SECTION VII TREATMENT OF IMPAIRED CLASSES OF CLAIMS ................................. 21
SECTION VIII ACCEPTANCE OR REJECTION OF PLAN .................................................. 26
SECTION IX TRUST ............................................................................................................... 26
SECTION X LIQUIDATION AND PAYMENT OF ABUSE CLAIMS ................................... 27
SECTION XI INSURANCE MATTERS ................................................................................... 31
SECTION XII MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 37
SECTION XIII LITIGATION ................................................................................................... 44
SECTION XIV CONDITIONS PRECEDENT ......................................................................... 45
SECTION XV EFFECTS OF PLAN CONFIRMATION AND DISCHARGE ......................... 45
SECTION XVI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ........................................................................................................................ 54
SECTION XVII NON-MONETARY COMMITMENTS ........................................................... 55
SECTION XVIII MISCELLANEOUS PROVISIONS. ............................................................. 58
SECTION XIX RECOMMENDATIONS AND CONCLUSION .............................................. 67

The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc. and the Official Committee of Unsecured Creditors of The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc. propose the following Plan[1] pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

Reference is made to the Disclosure Statement for this Plan for a discussion of the Debtors' history, businesses, assets, Cases, risk factors, summary and analysis of the Plan, and certain other related matters.

Subject to the provisions of Section 1127 of the Bankruptcy Code and those restrictions on modification set forth in Section XVIII of the Plan, the Debtors and the Committee reserve the right to amend, alter or modify the Plan one or more times before its substantial consummation.

SECTION I
**RULES OF INTERPRETATION**

**1.1      The rules of construction in Bankruptcy Code Section 102 apply to this Plan to the extent not inconsistent with any other provision in this Section I.**

**1.2      In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any act under the Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).**

**1.3      A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.**

**1.4      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Trust Agreement.**

**1.5      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.  Whenever it is appropriate from the context, the plural term "Debtors" includes the singular.**

**1.6      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.**

---

[1] Capitalized terms used but not defined in this preamble shall have the meanings and definitions ascribed to them in Section II of the Plan.

     **1.7**    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

     **1.8**    Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of the Plan.

     **1.9**    Unless otherwise specified, all references to Sections, sections, clauses or exhibits are references to this Plan's Sections, sections, clauses or exhibits.

     **1.10**    Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

     **1.11**    All definitions in the Bankruptcy Code and below will be subject to the rules of construction set forth in Section 102 of the Bankruptcy Code.  In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to" or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with.

     **1.12**    Any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.  Any specific references to promissory notes, deeds of trust or other debt instruments or security documents include any amendments, modifications and extensions thereto.

     **1.13**    The Plan includes as an exhibit the Providence Washington Settlement Agreement.  The Providence Washington Settlement Agreement, and injunctions at Sections XV of the Plan, include: (i) terms that are not otherwise defined in the Plan, and (ii) terms contained in the Plan but that are defined differently than in the Plan.  For the purposes of the interpretation and enforcement of the Providence Washington Settlement Agreement, the injunctions, and the Plan provisions relating to the Providence Washington Settlement Agreement, the definitions in the Providence Washington Settlement Agreement control, and any conflicts between the defined terms in the Plan and the defined terms in the Providence Washington Settlement Agreement shall be resolved in favor of the defined terms in the Providence Washington Settlement Agreement,  unless such a resolution would diminish the scope of the protections afforded Providence Washington as a Settling Insurer under this Plan.

     **1.14**    Nothing contained in this Plan constitutes an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtors or against any third party.

## SECTION II
## DEFINITIONS

**2.1** "**Abuse**" means any act of Sexual Abuse, or physical non-sexual, mental, or emotional abuse.

**2.2** "**Abuse Claim**" means a Claim, asserted by or on behalf of an individual who is or claims to be the victim of Abuse, against the Debtors, including Sexual Abuse Claims, Physical Abuse Claims and Fraud Claims related to Abuse that occurred prior to the Petition Date causing a personal injury or wrongful death. The term "Abuse Claim" does not include any Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim.

**2.3** "**Abuse Claims Reviewer**" means the person, including the designee of such person, who will administer the Allocation Plan. Subject to the Plan's provisions for replacement of the Abuse Claims Reviewer, the Abuse Claims Reviewer is Hon. William L. Bettinelli, Ret.

**2.4** "**Abuse Claimant**" means the holder of an Abuse Claim, the estate of a deceased Abuse Claimant, or the personal executor or personal representative of the estate of a deceased Abuse Claimant, as the case may be.

**2.5** "**Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim**" means any Entity's Claim against any other Entity for contribution, indemnity, or reimbursement arising as a result of such Entity having paid or defended against any Abuse Claim including but not limited to a joint tortfeasor or the like.

**2.6** "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code including the actual, necessary costs and expenses of preserving the Debtors' estates and operating the Debtors' businesses, compensation for professional services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtors' estate under chapter 123 of Title 28, United States Code.

**2.7** "**Administrative Claimant**" means the holder of an Administrative Claim.

**2.8** "**Allocation Plan**" means the protocol which is set forth as Exhibit 2.8 to the Plan.

**2.9** "**Allocation Plan Claimant**" means a Sex Abuse Claimant electing to use the Allocation Plan.

**2.10** "**Allowance Date**" means, with respect to a Claim, the date such Claim becomes Allowed.

**2.11** "**Allowed**" means, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or

contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 12.9 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder .  Abuse Claims are not Allowed Claims except as specifically provided in this Plan.

   **2.12**  **"Avoidance Rights"** means those rights that may be asserted by the Debtors, as debtors in possession, or the Committee on behalf of the Estates to avoid and recover transfers, liens, or obligations, described in Sections 544, 545, 546, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, and any other actions provided for under applicable law that allows a debtor in possession or trustee to avoid certain transfers, but excluding those Avoidance Rights, if any, against the Participating Parties and the Settling Insurers that are compromised and released pursuant the Plan.

   **2.13**  **"Award"** means the amount payable to an Abuse Claimant as determined in accordance with the terms of this Plan.

   **2.14**  **"Ballot"** means the ballot that is used by a Creditor to accept or reject the Plan, and pursuant to which Claimants will make certain elections regarding the treatment of their Claims as provided in the Plan.

   **2.15**  **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, and any amendments thereto applicable to these Cases.

   **2.16**  **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, or such other court having jurisdiction over these Cases or any proceeding within.

   **2.17**  **"Bankruptcy Rules"** means the Rules and Forms of Practice and Procedures in Bankruptcy promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 cases, together with all amendments and modifications thereto.

   **2.18**  **"Business Day"** means any day other than Saturday, Sunday, or a "legal holiday", as that term is defined in Bankruptcy Rule 9006(a).

   **2.19**  **"Canon Law"** means the 1983 Code of Canon Law promulgated on January 25, 1983 by Pope John Paul II, and any amendments thereto.

   **2.20**  **"Cases" or "Chapter 11 Cases"** means the cases under Chapter 11 of the Bankruptcy Code commenced by The Christian Brothers' Institute on April 28, 2011, Case No. 11-22820 and by The Christian Brothers of Ireland, Inc. on April 28, 2011, Case No. 11-22821.

   **2.21**  **"Cash"** means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

**2.22**    **"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtors' Estates, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, of the Debtors' Estates, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to Section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Rights; (6) claims for tax refunds; and (7) any other claims which may be asserted against third parties or insiders.

**2.23**    **"Channeled Claim"** means any Abuse Claim, and/or Claim against a Participating Party or Settling Insurer arising from, in connection with, or related in any way to an Abuse Claim or any of the Settling Insurer Policies. Each Claim described in this Section **2.23** shall include all such Claims whenever and wherever arising or asserted, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy. A Channeled Claim **does not** include an Abuse Claim against: (i) a Person or Persons having personally committed an act or acts of Abuse resulting in a Claim against a Debtor or a Participating Party, (ii) the Congregation of Christian Brothers or any of its predecessors; (iii) the Congregational Leadership Team (and any member thereof) of the Congregation of Christian Brothers or any of its (*i.e.* the Congregational Leadership Teams) predecessors or successors, (iv) a successor or predecessor of the Debtors to the extent of such successor's or predecessor's independent liability for an act or acts of Abuse, (v) the Christian Brothers Schools and (vi) the Holy See. Notwithstanding the foregoing sentence, a Channeled Claim includes any Claim against a Participating Party or Settling Insurer based on allegations that it is an alter ego of an Entity that is not a Participating Party or Settling Insurer or that the Participating Party's or Settling Insurer's corporate veil should be pierced on account of Claims against an Entity that is not a Participating Party or Settling Insurer.

**2.24**    **"Channeling Injunction"** means the injunction provided for under Section 15.9 of the Plan and any injunction provided for in, or required by, any Bankruptcy Court-approved agreement with a Participating Party or a Settling Insurer.

**2.25**    **"Chapter 11 Professionals"** means, collectively, the Debtors' Professionals and, the Committee's Professionals.

**2.26**    **"Christian Brother"** means a current or former vowed member of the Congregation of Christian Brothers, including without limitation novices, temporarily professed members, and perpetually professed members.

**2.27**    **"Christian Brothers Community"** means a local community or group of Christian Brothers within the Province Territory and not in the individual capacity of the member or members of such local community or group, regardless of whether it is part of the Debtors, or has a separate legal existence under civil law.

**2.28** **"Christian Brothers Schools"** means the schools identified on Exhibit 2.28, including any Person or Entity operating, managing, or owning such schools except for the Debtors and any Participating Party.

**2.29** **"Claim"** means any past, present or future claim, demand, action, requests cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights causes of action or orders, and any claim within the definition of Section 101(5) of the Bankruptcy Code  or  claim, as that term is defined in Section 101(5) of the Bankruptcy Code.

**2.30** **"Claim Allowance Agreement"** means an agreement between the Debtors and a Claimant which is entered into prior to the Effective Date and approved by the Bankruptcy Court as reasonable under Bankruptcy Rule 9019, whereby the Debtors and the Claimant agree to the Allowed amount of the Claimant's Claim.

**2.31** **"Claimant"** means a holder of a Claim.

**2.32** **"Claims Bar Date"** means May 11, 2012, which was the last date for filing Claims (other than Abuse Claims) against the Estates pursuant to the Court's Order entered on February 10, 2012.

**2.33** **"Claims Objection Bar Date"** means, unless extended by the Court, the first Business Day that follows the 60th day after the Effective Date, by which any objection to a Claim (excluding Class 4, 5 and 6 Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

**2.34** **"Closing"** means the payments and transfers to the Trust of those assets required to be paid and transferred in accordance with Section 9.2 of the Plan.

**2.35** **"Co-Defendant"** means a Person or Entity that is named as a defendant in a lawsuit in which one or both of the Debtors are also named as a defendant, and/or who is alleged to be fully or partially responsible for a Claim asserted, or which may be asserted in the future, against both such Person and/or Entity and the Debtors, including co-debtors as described in Section 509 of the Bankruptcy Code.  A Participating Party or Settling Insurer is not a Co-Defendant.

**2.36** **"Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Cases, as such committee may be reconstituted from time to time.

**2.37** **"Committee's Professionals"** means Pachulski Stang Ziehl & Jones LLP; Law Offices of Paul Richler; Berkeley Research Group, LLC and all other professionals, if any,

which the Committee has retained or may retain to provide professional services in accordance with Section 1103(a) of the Bankruptcy Code and as approved by the Bankruptcy Court.

**2.38**    **"Confirmation Date"** means the date of the entry of the Confirmation Order.

**2.39**    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

**2.40**    **"Confirmation Order"** means a Final Order confirming the Plan.

**2.41**    **"Congregation of Christian Brothers"** means the worldwide Roman Catholic religious order of men founded in 1802 by Edmund Rice.

**2.42**    **"Contingent"** means, with respect to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

**2.43**    **"Convenience Abuse Claim"** means an Abuse Claim in an amount of $500 or otherwise deemed to be a Convenience Abuse Claim under the Plan.

**2.44**    **"Creditor"** has the meaning ascribed to the term in Section 101(10) if the Bankruptcy Code.

**2.45**    **"Current Obligations"** means (a) all accounts payable and other liabilities or obligations of the Debtors that arose or accrued in the ordinary course of the Debtors' businesses subsequent to the Petition Date and prior to the Confirmation Date (excluding any Abuse Claims), and (b) any taxes that were incurred subsequent to the Petition Date and became or become legally due and payable by the Debtors subsequent to the Petition Date and prior to the Confirmation Date.

**2.46**    **"Debtors"** means The Christian Brothers' Institute, a New York not-for-profit corporation, and The Christian Brothers of Ireland, Inc., an Illinois not-for-profit corporation.

**2.47**    **"Debtors' Insurance Policy"** means an Insurance Policy that (i) lists either or both of the Debtors as a named insured(s) and (ii) does not have an exclusion for bodily injury arising out of operations on or from premises (other than insured premises) owned by, rented to or controlled by Debtors. The fact that an Insurance Policy lists the Congregation of Christian Brothers as a Named Insured does not mean that the Insurance Policy is a Debtors' Insurance Policy.  An umbrella or excess Insurance Policy that lists either or both of the Debtors as a named insured(s) and includes in its schedule of underlying insurance a general liability Insurance Policy that contains the exclusion set forth above in (ii), is a  Debtors' Insurance Policy only  if that umbrella or excess Insurance Policy provides coverage for at least some occurrences that such underlying Insurance Policy does not cover, other than by reason of exhaustion or reduction of such underlying Insurance Policy's limits. For avoidance of doubt, the following umbrellas Insurance Policies are Debtors' Insurance Policies:  Interstate Fire & Casualty Company Policy 155-C 06573 and National Union Fire Insurance Company BE 112 25 47.

2.48    **"Debtors and Participating Party Actions"** means any and all Claims, Causes Of Action, and rights of the Debtors and the Participating Parties against third parties including Claims of the Debtors and Participating Parties for recovery of, or based upon, or in any manner arising from or related to damages, general or exemplary (or both), or other relief, including equitable relief relating to or based upon:  (a) indebtedness owing to the Debtors; (b) fraud, negligence, gross negligence, willful misconduct, or any other tort actions; (c) breaches of contract; (d) violations of federal or state laws (including corporate and securities laws); (e) breaches of fiduciary or agency duties; (f) Abuse Related Contingency Contribution/Reimbursement Indemnity Claims, and (g) any other Claim of the Debtors or a Participating Party to the extent not assigned to the Trust or specifically compromised or released pursuant to this Plan or an agreement incorporated into this Plan.  Notwithstanding the foregoing, Debtors and Participating Party Actions shall not include: (a) Insurance Claims, and (b) Avoidance Rights.

2.49    **"Debtors and Participating Party Action Recoveries"** means the rights of the Debtors and the Participating Parties to any and all proceeds or other relief, including equitable relief, from (a) any award, judgment, relief, or other determination rendered or made as to the Debtors or Participating Party Action; or (b) any compromise or settlement of the Debtors or Participating Party Action.

2.50    **"Debtors' Professionals"** means Tarter Krinsky & Drogin LLP, Gordon Tilden Thomas & Cordell LLP, Sperduto Spector & Company, Bansley & Keiner, and McInnes Cooper and all other professionals, if any, which the Debtors have retained or may retain to provide professional services in accordance with Sections 327(a) and 327(e) of the Bankruptcy Code.

2.51    **"Disallowed Claim"** means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

2.52    **"Disclosure Statement"** means the Disclosure Statement relating to this Plan, as it may be amended from time to time.

2.53    **"Disclosure Statement Order"** means the Order entered by the Bankruptcy Court approving the Disclosure Statement.

2.54    **"Disputed Claim"** means a Claim: as to which a proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1); and as to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

2.55    **"Distribution"** means any transfer of Cash or other property or instruments to either a Claimant by the Reorganized Debtors or the Trustee.

2.56    **"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

2.57    **"Effective Date"** means the first Business Day after the Confirmation Date on which (i) all conditions to effectiveness specified in Section 14.1 of this Plan have been satisfied or waived, and (ii) no stay of the Confirmation Order is in effect.

2.58    **"Estates"** means the bankruptcy estates of the Debtors as created under Section 541 of the Bankruptcy Code.

2.59    **"Estimated Amount"** means the amount at which the Bankruptcy Court or the U.S. District Court for the Southern District of New York, pursuant to 28 USC §157(b)(2)(B), Section 502(c) of the Bankruptcy Code, and Bankruptcy Rule 3018(a), as the case may be, estimates any Claim or class of Claims that is Contingent, unliquidated, or disputed, including any Abuse Claim or class thereof, for the purpose of (a) allowance, (b) distribution, (c) confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, (d) voting to accept or reject this Plan pursuant to Section 1126 of the Bankruptcy Code, or (e) any other purpose.

2.60    **"Estimation Order"** means an order of the Bankruptcy Court or the U.S. District Court for the Southern District of New York, as applicable, that determines the Estimated Amount of any Claim or Claims for any purpose, whether individually or as part of an aggregate.

2.61    **"Exculpated Parties"** means the Participating Parties; the Released Parties; the Settling Insurers, the Committee and each of its members; the Debtors' Professionals; the Committee's Professionals; the Settling Insurers; and all of their respective present or former members, managers, officers, directors, employees, representatives, attorneys, and agents acting in such capacity.

2.62    **"Final Order"** means an order, judgment, or other decree (including any modification of amendment thereof) of the Bankruptcy Court, a U.S. District Court, or any other court having jurisdiction that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal or review has been taken, (i) it has been resolved and no longer remains pending or (ii) the Debtors, the Committee, or the Trustee (after the Effective Date) and a Participating Party or Settling Insurer, as applicable, have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order.

2.63    **"Fraud Claim"** means a claim that the Debtors fraudulently induced the Claimant to settle one or more Claims of Abuse prior to the Petition Date. Fraud Claims are listed on Exhibit 2.63; provided, however, that any Claim not listed on Exhibit 2.63 may be characterized as a Fraud Claim pursuant to further Order of the Bankruptcy Court.

2.64    **"General Unsecured Claim"** means any Claim against the Debtors that is not an Abuse Claim, Fraud Claim, Physical Abuse Claim, Administrative Claim, Priority Tax Claim or a Claim that is otherwise classified under the Plan.

2.65    **"General Unsecured Convenience Claim"** means any General Unsecured Claim in an amount of $500 or less, or voluntarily reduced to $500 by the holder of such Claim.

**2.66**    **"Insurance Claims"** means all Claims, Causes Of Action and enforceable rights (other than the duty to defend) against any Non-Settling Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by:

        a)   The Debtors for any reason related to an Abuse Claim including those for (i) indemnity and payment of any Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide Insurance Coverage under any Insurance Policy, including the failure or refusal to provide a defense to any Abuse Claim against the Debtors; (iii) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to defend or timely compromise and settle any Abuse Claims against the Debtors pursuant to any Insurance Policy; and (iv) the interpretation or enforcement of the terms of any Insurance Policy; and/or

        b)   Any of the Participating Parties or Settling Insurers for any reason related to an Abuse Claim against the Participating Party or Settling Insurer, whether independently or jointly liable with the Debtors on such Abuse Claim, including (i) indemnity and payment of any Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide Insurance Coverage under any Insurance Policy, including the failure or refusal to provide a defense to any Abuse Claim against the Debtors, a Participating Party or a Settling Insurer; (iii) any Non-Setting Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to defend or timely compromise and settle any Abuse Claims against the Debtors, a Participating Party or a Settling Insurer pursuant to any Insurance Policy; and (iv) the interpretation or enforcement of the terms of any Insurance Policy.

Notwithstanding the foregoing, nothing in this Plan affects the rights of a Settling Insurer under any agreement or contract providing reinsurance to the Settling Insurer.  All such rights are retained by the Settling Insurer.

**2.67**    **"Insurance Coverage"** means insurance that is available under any Insurance Policy, whether known to the Debtors or the Committee or unknown to the Debtors or Committee, to cover all or any portion of an Abuse Claim asserted against (a) the Debtors and/or (b) a Participating Party; provided, however, "Insurance Coverage" excludes any agreement or contract providing reinsurance to a Settling Insurer.

**2.68**    **"Insurance Policy"** means an insurance policy providing Insurance Coverage. Insurance Policy also includes any policy providing Insurance Coverage that is identified in a Bankruptcy Court-approved agreement with a Participating Party or a Settling Insurer.

**2.69**   **"Insurance Recoveries"** means the rights to any and all proceeds, including any interest or income earned thereon, and other relief, from (a) any award, judgment, relief, or other determination entered or made as to any Insurance Claims; (b) any and all amounts payable by an Insurer under any settlement agreement with the Debtors, a Participating Party or a Settling Insurer with respect to Insurance Claims; and (c) any and all proceeds of any Insurance Policy paid or payable to the Debtors, a Participating Party or a Settling Insurer with respect to Insurance Claims.  Insurance Recoveries do not include any recoveries of a Settling Insurer under any agreement or contract providing reinsurance to the Settling Insurer.

**2.70**   **"Insured Non-Abuse Claim"** means any Claim, other than an Abuse Claim, all or part of which is covered by insurance.

**2.71**   **"Insurer"** means (a) any Person or Entity that during any period of time either (i) provided Insurance Coverage to the Debtors and/or a Participating Party, its predecessors, successors, or assigns, or (ii) issued an Insurance Policy to the Debtors and/or a Participating Party, its predecessors, successors, or assigns; and (b) any Person or Entity owing a duty to defend and/or indemnify the Debtors and/or a Participating Party under any Insurance Policy.

**2.72**   **"Interest"** means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

**2.73**   **"Maintenance Claim"** means any Claim of a Christian Brother against the Debtors, a Christian Brothers Community, the Province, the Congregation of Christian Brothers, a Christian Brothers School, or the Holy See for support, maintenance, sustenance, charity or care, including but not limited to all such Claims scheduled or filed in the Cases.

**2.74**   **"Non-Settling Insurer"** means any Insurer that is not a Settling Insurer.

**2.75**   **"Net Settlement Fund"** means the Settlement Fund less any amounts paid on account of Allowed Physical Abuse Claims and Allowed Fraud Claims and reserves provided for under the Trust Agreement.

**2.76**   **"Non-Sexual Abuse"** means physical, non-sexual, mental or emotional abuse that is not Sexual Abuse.

**2.77**   **"Participating Party"** means those Persons or Entities listed on Exhibit 2.77 to the Plan, that are providing or will provide consideration or a portion of the funding for the Plan in exchange for (a) the release of any Abuse Related Contribution/Indemnity Claim by the Debtors against such Participating Party, (b) the benefit of the Channeling Injunction, and (c) any other benefits in favor of Participating Parties under the Plan.  A Settling Insurer is not a Participating Party.  Pursuant and subject to Section 10.10 of the Plan, and after notice and a hearing, upon the sole discretion of the Trustee, a Person or Entity may become a Participating Party after the Effective Date if the Bankruptcy Court approves an agreement between the Person or Entity and the Trustee pursuant to its retained jurisdiction.  Upon the Bankruptcy Court's entry of a Final Order approving such an agreement, Exhibit 2.77 will be amended by the Trustee to include such Person or Entity.

**2.78**    **"Penalty Claim"** means a Claim for a fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including any Claim not meant to compensate the Claimant for actual pecuniary loss.

**2.79**    **"Person"** has the meaning set forth in Section 101(41) of the Bankruptcy Code.

**2.80**    **"Petition Date"** means April 28, 2011, the date the Debtors filed their petitions commencing these Cases.

**2.81**    **"Physical Abuse Claim"** means those Claims listed on Exhibit 2.81.

**2.82**    **"Plan"** means this Plan of Reorganization (and all exhibits annexed thereto), Plan Documents and any and all modifications and/or amendments thereto.

**2.83**    **"Plan Documents"** means all agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are necessary or appropriate to implement the Plan and the Trust, including the Providence Washington Settlement Agreement, provided that the Committee shall have approved each of said agreements, documents and exhibits as to form and content, such approval not to be unreasonably withheld.

**2.84**    **"Post-Confirmation Notice Parties"** means the Reorganized Debtors, the Trust, the Office of the U.S. Trustee and any Person that files a request to be a Post-Confirmation Notice Party.

**2.85**    **"Priority Claim"** means any Claim which, if Allowed, would be entitled to priority under Section 507 of the Bankruptcy Code.

**2.86**    **"Priority Claimant"** means the holder of a Priority Claim.

**2.87**    **"Professional"** means any Person or Entity employed by the Debtors or the Committee pursuant to Sections 327 or 1103 of the Bankruptcy Code.

**2.88**    **"Professional Fee Claim"** means a Claim under Bankruptcy Code Sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of the Professionals prior to the Effective Date.

**2.89**    **"Pro Rata"** means proportionate, and when applied to a Claim means the ratio of the amount distributed on account of an Allowed Claim in a Class to the amount distributed on account of all Allowed Claims in such class.

**2.90**    **"Proponent"** means the Debtors and the Committee.

**2.91**    **"Providence Washington"** means Providence Washington Insurance Company, and each of its past and present subsidiaries, parents, and affiliates.  "Providence Washington" also includes all future subsidiaries, parents and affiliates of Providence Washington Insurance Company, to the extent that their liability arises out of insurance policies issued by Providence Washington Insurance Company or any of its past or present subsidiaries, parents or affiliates. In

addition, for purposes of defining the scope of the releases, injunctions, exculpation provision, and other provisions and protections in favor of Providence Washington, as a Settling Insurer, provided for herein, the term "Providence Washington" also includes all employees, officers, directors, shareholders, principals, parents, indirect parents, claims managers, agents, attorneys, and representatives, as well as the predecessors, successors, assignors, and assigns of each of the foregoing, in their capacity as such to the extent that their liability arises out of, or is related to, any Settling Insurer Policy.

2.92    **"Providence Washington Settlement Agreement"** means the "Settlement Agreement, Release and Policy Buyback" dated August 12, 2013 between The Christian Brothers' Institute and Providence Washington, which was approved by order of the Bankruptcy Court, dated October 24, 2013.  A copy of the Providence Washington Settlement Agreement is at Exhibit 2.92.

2.93    **"Province"** means the Edmund Rice Christian Brothers North American Province of the Congregation of Christian Brothers, an ecclesiastical entity, and a juridic person under Canon law, regardless of whether it is part of the Debtors, or has a separate legal existence under civil law, and including any predecessors thereto, including the North American Province, the former Eastern American Province, the former Western American Province and the former Canadian Province of the Congregation of Christian Brothers.  The Province does not include the Latin American Region for the purposes of this Plan only.

2.94    **"Province Territory"** means the geographic area of the Province.

2.95    **"Provincial Leadership Team"** means the Persons who govern the Province.

2.96    **"Punitive Damages"** means the portion of a Claim for punitive or exemplary damages.

2.97    **"Qualified Counsel"** means those attorneys representing Abuse Claimants who have entered into a written retainer or fee agreements with such Claimant(s) on or before the Effective Date; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Abuse Claimant(s).

2.98    **"Qualified Counsel Fees"** means the amount to be subtracted from the balance in the Trust in an amount equal to the actual fees payable to Qualified Counsel on account of reserves or distributions calculated under the Allocation Plan in accordance with written retainer or fee agreements with Abuse Claimants.  The Trust shall pay such fees to Qualified Counsel when the Abuse Claimant receives a distribution from the Trust.

2.99    **"Qualified Counsel Costs"** means the amount to be subtracted from the balance in the Trust in an amount equal to the unpaid reimbursable expenses (prepetition and postpetition through the Effective Date) payable to Qualified Counsel on account of Abuse Claims under written retainer or fee agreement with Abuse Claimants who are utilizing the Allocation Plan. Before any distribution(s) to Abuse Claimants from the Trust, the Trustee will subtract all Qualified Counsel Costs and shall pay such Qualified Counsel Costs to the appropriate Qualified Counsel at the time the Abuse Claimant receives the first distribution from the Trust.

**2.100** **"Released Parties"** means (a) the Participating Parties; (b) the Participating Parties' present or former members, parents, indirect parents, principals, shareholders, managers, claims managers, officers, directors, employees, representatives, attorneys, or agents acting in such capacity as well as the predecessors, successors, assignors and assigns of each of the foregoing; (c) a Settling Insurer and (d) a Settling Insurer's present or former members, parents, indirect parents, principals, shareholders, managers, claims managers, officers, directors, employees, representatives, attorneys, or agents acting in such capacity as well as the predecessors, successors, assignors and assigns of each of the foregoing to .the extent their liability arises out of liabilities under Insurance Policies issued by the Settling Insurer.

The term "Released Parties" does not include: (i) a Person or Persons having personally committed an act or acts of Abuse resulting in a Claim against the Debtors or a Participating Party, (ii) The Congregation of Christian Brothers and any of its canonical predecessors, (iii) the Congregational Leadership Team (and any members thereof) of the Congregation of Christian Brothers or any of its (*i.e.* the Congregational Leadership Team) predecessors or successors, (iv) a successor or predecessor of the Debtors to the extent of such successor's or predecessor's independent liability for an act or acts of Abuse, (v) the Christian Brothers Schools and the (vi) the Holy See.

**2.101** **"Reorganized Debtors"** means the Debtors on and after the Effective Date; provided that any successor to the Province, Debtors or the Reorganized Debtors through a merger or suppression of the Province shall not have any rights or remedies by virtue of the Plan or Confirmation Order on account of Abuse Claims for which the successor was independently liable.

**2.102** **"Representatives"** means the current and former officers, directors, agents, attorneys, employees, financial advisors and legal representatives of a Person or Entity, but excluding (i) a Person or Persons having personally committed an act or acts of Abuse resulting in a Claim against the Debtors, a Participating Party or a Settling Insurer, (ii) the Congregation of Christian Brothers or any of its predecessors; (iii) the Congregational Leadership Teams (and any member thereof) of the Congregation of Christian Brothers or any of its (*i.e.* the Congregational Leadership Teams) predecessors and successors, (iv) a successor or predecessor of the Debtors to the extent of such successor's or predecessor's independent liability for an act or acts of Abuse, (v) the Christian Brothers Schools and (vi) the Holy See.

**2.103** **"Revested Assets"** means all assets and or property, real or personal, owned by the Debtors which are not transferred to the Trust. Notwithstanding the foregoing, the Insurance Policy of a Non-Settling Insurer is not a Revested Asset.

**2.104** **"S/A/P Claims"** means, collectively, Secured Claims, Administrative Claims (including Professional Fee Claims), Priority Claims, and Priority Tax Claims.

**2.105** **"S/A/P Claims Reserve"** means the reserve to be established by the Reorganized Debtors for Administrative Claims (including Professional Fee Claims), Priority Claims, and Priority Tax Claims.

**2.106   "Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs of each of the Debtors filed pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

**2.107   "Section 363 Sale"** means a sale of property pursuant to the provisions of Section 363 of the Bankruptcy Code.

**2.108   "Settled"** means, with respect to a Claim, a Claim that has been resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or a U.S. District Court, as applicable.

**2.109   "Settlement Fund"** means a fund established to pay Sexual Abuse Claims, Physical Abuse Claims and Fraud Claims and costs and expenses of the Trust.  The assets of the Settlement Fund will include cash, real property or sales proceeds thereof, Avoidance Rights and certain Causes of Action.

**2.110   "Settling Insurer"** means: (a) each of those Insurers listed on Exhibit 2.110 to the Plan, as the same may be amended in accordance with this Plan; and (b) such Insurer's predecessors, successors and assigns, but only to the extent that: (i) such predecessor's liability was assumed by the Insurer listed on Exhibit 2.110 to the Plan, and (ii) such successor's or assign's liability is derivative of the liability of the Insurer listed on Exhibit 2.110 to the Plan and not independent of the liability of the Insurer listed on Exhibit 2.110 to the Plan.  For purposes of defining the scope of the releases, injunctions, exculpation provision, and other provisions and protections provided to Settling Insurers herein, the terms "Settling Insurer," "Released Parties," and "Exculpated Parties" herein also include all past and present subsidiaries, parents, and affiliates, as well as all employees, officers, directors, shareholders, principals, parents, indirect parents, claims managers, agents, attorneys, and representatives, as well as the predecessors, successors, assignors, and assigns of each of the foregoing, in their capacity as such to the extent that their liability arises out of, or is related to, any Settling Insurer Policy.  Pursuant and subject to Section 10.11 of the Plan, upon the sole consent of the Trustee, a Person or Entity may become a Settling Insurer after the Effective Date if the Bankruptcy Court approves an agreement between the Person or Entity and the Trustee pursuant to its retained jurisdiction.  Upon the Bankruptcy Court's entry of a Final Order approving such an agreement, Exhibit 2.110 will be amended by the Trustee to include such Person or Entity.

**2.111   "Settling Insurer Injunction"** means the injunction(s) provided in Section 15.10 and any injunction provided in an agreement whereby an Insurer becomes a Settling Insurer.

**2.112   "Settling Insurer Policies"** means "Policies" as defined in any settlement agreement between a Settling Insurer and the Debtor (or the Trust for any settlement agreements entered into after the Effective Date).

**2.113   "Sexual Abuse"** means sexual conduct or misconduct, sexual abuse, sexual sadism or sexually-related harm or contacts, or interactions of a sexual nature between a child

and an adult, or a non-consenting adult and another adult. A child or non-consenting adult may be sexually abused whether or not this activity involves explicit force.

**2.114** **"Sexual Abuse Litigation"** means any litigation pending prior to the Petition Date against the Debtors or the Province or any litigation filed after the Petition Date against the Province seeking to recover monies on account of Sexual Abuse by Christian Brothers or other individuals for whom the Debtors or the Province may be responsible.

**2.115** **"Sexual Sadism"** means (a) over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving acts (real, not simulated) by a person in which the psychological or physical suffering (including humiliation) of a victim is sexually exciting to the person; and (b) the person has acted on these sexual urges with a nonconsenting person, or the sexual urges or fantasies cause marked distress or interpersonal difficulty to a nonconsenting person.

**2.116** **"Site Insurance Policy"** means an Insurance Policy that does not list either of the Debtors as a named insured or has an exclusion for bodily injury arising out of operations on or from premises (other than insured premises) owned by, rented to or controlled by Debtors.

**2.117** **"Temporarily Allowed"** with reference to a Claim means such Claim as temporarily allowed for any purpose other than distribution on a Claim pursuant to Bankruptcy Rule 3018(a) or otherwise.

**2.118** **"Third Party Derivative Claims"** means Claims against any Person or Entity for disregard of the corporate form, piercing the corporate veil, or alter ego, that would subject such Person or Entity to liability for Abuse Claims against the Debtors.

**2.119** **"Trust"** means the trust to be established pursuant to the Plan and the Trust Agreement.

**2.120** **"Trust Agreement"** means the agreement attached as Exhibit 2.120 to the Plan.

**2.121** **"Trust Assets"** means all property funded to the Trust pursuant to Section 9.2 of the Plan.

**2.122** **"Trust Documents"** means the Trust Agreement, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration and funding of the Trust.

**2.123** **"Trustee"** means Omni Management Acquisition Corp., the trustee of the Trust, and any successor trustee appointed pursuant to the terms of this Plan and the Trust Agreement.

**2.124** **"U.S. District Court"** means a United States District Court.

**2.125** **"Unclaimed Property"** means any Cash or other property which is unclaimed for one hundred and eighty (180) days after the Distribution.

**2.126** **"U.S. Trustee"** means the Office of the United States Trustee for the Southern District of New York.

**2.127** **"Unresolved"** means, with respect to a Claim, a Claim that has neither been Allowed or Disallowed nor liquidated.

SECTION III
**PLAN OBJECTIVES**

**3.1** **Objectives.** The Plan provides the means for settling and paying all Claims asserted against the Debtors. The Plan provides for the creation of a Trust for the exclusive benefit of Abuse Claimants. The Trust's assets will consist of cash from the Debtors, contributions by Participating Parties and Settling Insurer(s), proceeds from the sale of certain real property of the Debtors and net proceeds of certain Causes of Action, including Avoidance Rights. Trust assets will be used to fund the Trust's costs and expenses and payments to Abuse Claimants. Distributions and reserves from the Trust to Sexual Abuse Claimants will be determined by application of the Allocation Plan. Physical Abuse and Fraud Claimants will be paid in accordance with the Plan. General Unsecured Creditors will receive their Pro Rata share of $50,000.00. The Debtors will receive the benefit of a Section 1141(d) discharge, with certain agreed-upon exceptions set forth in the Plan. Participating Parties and Settling Insurers will receive the benefit of injunctions provided under the Plan. Holders of Sexual Abuse Claims can continue or commence litigation against the Debtors for the purpose of obtaining judgments subject to the limitations set forth in Sections IX and XV. Pursuant to the Plan, holders of Sexual Abuse Claims will not be permitted to execute on any judgment upon any of the Revested Assets or any assets acquired by the Reorganized Debtors after the Effective Date. Nothing in this Plan, including Section XV, is intended to replace and does not affect, diminish or impair the liabilities of any Co-Defendant or Non Settling Insurer under applicable non-bankruptcy law, including the law governing joint and several liabilities.

SECTION IV
**TREATMENT OF UNCLASSIFIED CLAIMS.**

**4.1** **Administrative Claims**. Each holder of an Allowed Administrative Claim against the Debtors shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the Administrative Claimant. Provided, however, that any Administrative Claim incurred postpetition by the Debtors in the ordinary course of its operations or arising pursuant to one or more postpetition agreements or transactions entered into by the Debtors with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtors (if before the Effective Date) or the Reorganized Debtors (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other.

**4.2    Professional Claims**.

    **4.2.1**    Bar Dates for Professional Claims.  All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Case) shall file and serve on the Post-Confirmation Notice Parties an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than (A) forty-five (45) days after a notice of the Effective Date is filed with the Bankruptcy Court and served on such Professional or other Persons, or (B) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period (the "Professional Claims Bar Date")

    **4.2.2**    Objections to Professional Claims.  Objections to Professional Claims or Claims of other Persons for compensation or reimbursement of expenses must be filed and served on the Post-Confirmation Notice Parties and the Professionals or other Persons to whose application the objections are addressed on or before  (A) forty-five (45) days after the Professional Claims Bar Date or (B) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtors (if before the Effective Date) or the Reorganized Debtors (on and after the Effective Date), as applicable, and the affected Professional or other Person.

    **4.2.3**    Notwithstanding anything contained in Section 4.2, the allowance of a Professional Claim shall not affect, impair, diminish or be an adjudication of any claim that is excepted from the exculpation contained in Section 15.7.

**4.3    U.S. Trustee Fees**.

    All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtors shall pay quarterly fees to the U.S. Trustee, in Cash, until the Cases are closed, and a Final Decree is entered. In addition, the Reorganized Debtors shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtors and Debtors Estates.

**4.4    Priority Tax Claims**.

    With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtors shall (i) pay such Claim in Cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtors (if before the Effective Date) or the Reorganized Debtors (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtors or the Reorganized Debtors than the treatment set forth in clause (i) of this sentence.

SECTION V
**CLASSIFICATION OF CLAIMS.**

**5.1**    All Claims except Administrative Claims and Priority Tax Claims are placed in the following classes for all purposes including voting, confirmation of the Plan and distribution pursuant to the Plan.  A Claim is classified in a particular class only to the extent the Claim qualifies within the description of that class and is classified in a different class to the extent the Claim qualifies within the description of that different class.  If a Claim is acquired or transferred, the Claim will be placed in the class where it would have been placed if it were owned by the original holder of such Claim.  If a Claimant has more than one Claim in the same class, such Claims will be aggregated and treated as a single Claim.  If a Claimant has Claims in different classes, such Claims will be aggregated only within the same class and not between classes.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Convenience Claims | Unimpaired | Deemed to Accept |
| 4 | Sexual Abuse Claims | Impaired | Yes |
| 5 | Fraud Claims | Impaired | Yes |
| 6 | Physical Abuse Claims | Impaired | Yes |
| 7 | Maintenance Claims | Unimpaired | Deemed to Accept |
| 8 | General Unsecured Claims | Impaired | Yes |
| 9 | Penalty Claims | Impaired | Deemed to Reject |
| 10 | Abuse Related Contingent Contribution/Reimbursement/ Indemnity Claims | Impaired | Deemed to Reject |

**5.2**    Except as provided in this Plan, the treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each holder of a Claim may have against the Debtors or their property.  This treatment supersedes and replaces any agreements or rights those holders have in or against the Debtors or their property.  All Distributions under the Plan will be tendered to the entity holding the Claim.  **EXCEPT AS SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE FROM AND NO RIGHTS WILL BE RETAINED AGAINST THE DEBTORS OR THEIR PROPERTY**

**ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

SECTION VI
**TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.**

**6.1    Class 1:  Other Priority Claims**.

The holders of Allowed Other Priority Claims will receive either (a) payment from the Reorganized Debtors of the full amount of their Allowed Claims in Cash, without interest on or as soon as practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtors.

**6.2    Class 2: Secured Claims**.

**6.2.1**    Impairment and Voting.  Class 2 is unimpaired under the Plan.  Holders of Secured Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.  For purposes of distributions under the Plan, each holder of a Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2-1, Class 2-2, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

**6.2.2**    Alternative Treatment.  On or as soon as practicable following the Effective Date, the Reorganized Debtors or, to the extent the Trust has an interest in the property securing a Secured Claim, the Trust shall select, in their discretion, one of the following alternative treatments for each Allowed Secured Claim in Class 2, which treatment shall be in full and final satisfaction, settlement and release of, and in exchange for, such Allowed Secured Claim:

(a)    Abandonment or Surrender. The Reorganized Debtors or the Trust, as the case may be, shall abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

(b)    Cash Payment.  The Reorganized Debtors or the Trust, as the case may be, shall pay to the holder of such Claim Cash equal to the Allowed amount of such Claim upon the sale of the collateral, or such lesser amount to which the holder of such Claim and Reorganized Debtors or the Trust, as the case may be, shall agree, in full satisfaction and release of such Claim.

(c)    Unimpairment.  The Reorganized Debtors or the Trust, as the case may be, may leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

**6.2.3**    Unsecured Deficiency Claim.

Any unsecured deficiency Claim asserted by a holder of an Allowed Secured Claim in Class 2 shall be filed with the Bankruptcy Court within thirty (30) days following the date of the

abandonment or surrender of such Creditor's collateral or such Creditor's receipt of its distribution under the Plan.  Any Allowed unsecured deficiency Claim shall be treated in accordance with Section 7.4 of the Plan.

> **6.3    Class 3:  General Unsecured Convenience Claims**.

The holders of Allowed General Unsecured Convenience Claims will receive either (a) payment from the Reorganized Debtors of the full amount of their Allowed General Unsecured Convenience Claims in Cash, on or as soon as reasonably practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed General Unsecured Convenience Claims upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtors.

> **6.4    Class 7:  Maintenance Claims**.

With respect to each Class 7 Claim, the legal, equitable, and contractual rights to which such Claim entitles its holder shall be reinstated in full on the Effective Date.  The Community Support Corporation assumes all liability for the Maintenance Claims.  Holders of Maintenance Claims shall not be able to seek payment from the Trust or the Reorganized Debtors on account of such claims.  Maintenance Claims shall be the sole responsibility of Community Support Corporation, which is a Participating Party under this Plan.

SECTION VII
**TREATMENT OF IMPAIRED CLASSES OF CLAIMS**

> **7.1    Class 4:  Sexual Abuse Claims**.

> **7.1.1**    On the Effective Date, and subject to Sections 7.1.5 of the Plan, the Trust shall assume all liability for and the Trust will pay all Sexual Abuse Claims pursuant to the provisions of the Plan and Trust Documents.  Subject to Section 7.1.4 of the Plan, the assumption of liability and payment of the Sexual Abuse Claims by the Trust is not a release, accord or novation of the Debtors' liability on account of the Sexual Abuse Claims; provided, however, that all of the Debtors' liability on account of the Sexual Abuse Claims shall be discharged pursuant to the provisions of Bankruptcy Code Section 1141(d), subject only to the limited exceptions to discharge set forth in Section 15.1 of this Plan.  However, no Sexual Abuse Claimant shall be entitled to recover from the Reorganized Debtors' Revested Assets or assets acquired by the Reorganized Debtors after the Effective Date.  As provided in Bankruptcy Code §524(e), unless otherwise provided in this Plan, such discharge shall not affect the liability of any other Person or Entity on, or the property of any other Person or Entity for, the Sexual Abuse Claims including the liability of any Non-Settling Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtors or the Reorganized Debtors under this Plan and Bankruptcy Code §1141(d).

> **7.1.2**    No later than ten (10) business days after a Class 4 Claimant is notified of the amount of the final award under the Allocation Plan, the Class 4 Claimant shall elect in writing one of the following alternatives to treatment:

a) Treatment of the Class 4 Claim as an Allocation Plan Claimant; or

b) Treatment of the Class 4 Claim as a Sexual Abuse Litigation Claim.

**7.1.3** Modification of Treatment Election:

a) If a Class 4 Claimant does not make one of the elections in Section 7.1.2, the Class 4 Claimant irrevocably will be treated as an Allocation Plan Claimant.

b) Upon written notice to the Trustee which is subject to the Trustee's sole and absolute discretion, a Class 4 Claimant may rescind the election to be treated as a Sexual Abuse Litigation Claimant in favor of being treated as an Allocation Plan Claimant. Notwithstanding the foregoing, the Trustee shall consent to a Class 4 Claimant's rescission if such written notice of rescission is given prior to entry of an order of dismissal or a final judgment on the Sex Abuse Claim in favor of the Debtors. Any rescission pursuant to this Section 7.1.3 shall not affect the divisions or recoveries under Sections 7.1.13 and 7.1.14.

c) Notwithstanding Section 7.1.3(b), no later than ten (10) days after the Effective Date, a Class 4 Claimant may rescind the election to be treated as an Allocation Plan Claimant in favor of being treated as a Sexual Abuse Litigation Claimant.

**7.1.4** On receipt of a distribution from the Trust, and without any further action by any party, each Allocation Plan Claimant shall be deemed to waive any Claim such Claimant could assert against the Debtors, the Reorganized Debtors or a Participating Party; provided, however, that nothing herein shall affect, limit, or modify such Allocation Plan Claimant's rights to collect any amounts due to such Claimant pursuant to the Plan and the Allocation Protocol. Nothing in this Plan shall have any effect on the rights of any Allocation Plan Claimant to assert claims against any party other than the Reorganized Debtors, a Participating Party or a Settling Insurer.

**7.1.5** Allocation Plan Claimants shall have their Claims treated pursuant to the Allocation Plan, including review of such Claims by the Abuse Claim Reviewer in accordance with the Allocation Plan.

**7.1.6** Under no circumstance shall the Abuse Claims Reviewer's review of a Sexual Abuse Claim have any effect on the rights of a Non-Settling Insurer.

**7.1.7**    Nothing in this Plan is intended to affect, diminish or impair any Abuse Claimant's rights against a Co-Defendant, including that Co-Defendant's joint and several liability for Abuse.

**7.1.8**    Debtors, the Reorganized Debtors and their counsel shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Allocation Plan.

**7.1.9**    No Class 4 Claimant may challenge the merit, validity, or amount of any Class 4 Claim. Any objection to a Class 4 Abuse Claim pending as of the Effective Date is deemed withdrawn with prejudice. The Trustee has the right to object to a Class 4 Claim. The Reorganized Debtors shall not have the right to object to a Class 4 Claim.

**7.1.10**    The Trustee shall establish a monetary reserve for the holders of Class 4 Claims. The amount of such reserve shall be determined by deducting certain amounts from the property received by the Trust, including (a) fees and costs of the Abuse Claim Reviewer and (b) any other deductions and/or Reserves permitted by the Plan and Trust Documents.

**7.1.11**    The Trustee shall establish a reserve for payment of a Claim held by a Sexual Abuse Litigation Claimant in the amount that would have been awarded to the Sex Abuse Litigation Claimant if such Claimant had elected to use the Allocation Plan. This reserve shall be the exclusive source of payment from the Trust of Sexual Abuse Litigation Claims against the Debtors and Participating Parties. For avoidance of doubt, the creation and existence of this reserve does not affect, diminish or impair a Sexual Abuse Litigation Claimant's rights to collect a judgment, including a judgment based on joint and several liability, against any Co-Defendant, the Trust, the Debtors or the Reorganized Debtors to the extent permitted by this Plan. The creation and existence of this reserve is not a settlement, release, accord or novation of the Claim of the Sexual Abuse Litigation Claimant and cannot be used by any Co-Defendant as a defense to any alleged joint liability with the Debtors or Reorganized Debtors. If the Sexual Abuse Litigation Claimant cannot obtain a final judgment or settlement of the Claim or a final judgment is entered against the Sexual Abuse Litigation Claimant finding that the Debtors do not have any liability to such Claimant on account of his Sexual Abuse Claim, the Reserve shall revert to the non-reserved assets of the Trust and the Sexual Abuse Litigation Claimant shall have no recourse against the Trustee, the Trust or the Settlement Fund. If the Sexual Abuse Litigation Claimant settles its claim against a Co-Defendant who is alleged to be jointly and severally liable, upon payment of the settlement amount the reserve shall be released for distribution to such Claimant pursuant to the Plan and Allocation Plan. If the Sexual Abuse Litigation Claimant obtains a final judgment (other than through settlement) against a Co-Defendant alleged to be jointly and severally liable and, after exhausting all remedies to collect such final judgment receives less than the amount thereof, the difference shall be paid to the Sexual Abuse Litigation Claimant from its reserve not to exceed the amount of the reserve. Any amount remaining in the Sexual Abuse Claimant's reserve after payment pursuant to the foregoing sentence shall be released to the non-reserved assets of the Trust for distribution pursuant to the Plan and the Allocation Plan.

**7.1.12**  The Trustee may establish one reserve for all of the reserved Sexual Abuse Litigation Claims but no Sexual Abuse Litigation Claimant shall have any interest in any portion of the reserve in excess of the amount determined for that Sexual Abuse Litigation Claimant under the Allocation Plan.

**7.1.13**  Subject to Section 7.1.16 of the Plan, if an Abuse Claimant elects to be a Sexual Abuse Litigation Claimant and thereafter it or the Trust receives an Insurance Recovery for such Abuse Claim based on a Debtors' Insurance Policy, such recoveries shall be divided as follows:

(a)     Prior to Effective Date of Plan:  100% to Trust;

(b)     After Effective Date of Plan,  50% to Trust and 50% to Claimant (payments net of contingency fee and reimbursable costs);

(c)     After post-confirmation commencement of plaintiff's deposition, commencement of independent medical examination of plaintiff or plaintiff's production of documents. 25% to Trust and 75% to Claimant (payments net of contingency fee and reimbursable costs) and

(d)     Within 90 days of trial date assigned by Court: 5% to Trust and 95% to Claimant (all payments net of contingency fee and reimbursable costs).

**7.1.14**  Subject to Section 7.1.16 of the Plan, if an Abuse Claimant elects to be a Sexual Abuse Litigation Claimant and thereafter it or the Trust receives an Insurance Recovery for such Abuse Claim based on a Site Insurance Policy or a recovery from a defendant who is jointly and severally liable with the Debtors, such recoveries shall be divided as follows:

(a)     5% to the Trust and 95% to the Claimant, regardless of when paid.

**7.1.15**  Absent a determination by the Bankruptcy Court as to whether an Insurance Policy is a Debtors' Insurance Policy or a Site Insurance Policy, the Insurance Policy will be deemed a Debtors' Insurance Policy.  Notwithstanding the foregoing, the following Insurance Policies are Site Insurance Policies:

(a)     Insurance Policies provided by Pacific Indemnity Company for operations at Briscoe Memorial School;

(b)     A certain "Lloyd's Policy" for acts occurring at O'Dea High School and

(c)     Insurance Policies provided by Maryland Casualty Co. for operations at O'Dea High School.

(d)     For avoidance of doubt, the following Hanover Insurance Company Insurance Policies are Site Insurance Policies: CCL 21 40 57; CCL 22 65 95; CCL 45 96 12; U 078 87 29.

**7.1.16**  If the Trust advances legal fees and costs to enforce any rights and remedies under an Insurance Policy of a Non-Settling Insurer, such legal fees and costs shall be prorated between the Trust and the Claimant alleging coverage under such Insurance Policy based on the foregoing percentages; provided that the Trust and the Claimant may agree to a proration more favorable to the Trust.  Claimant is responsible for his share of the legal fees and costs regardless of whether any amount is paid by the Non Settling Insurer. Counsel of record for the Claimant in connection with such Claimant's Sexual Abuse Claims shall be liable to the Trust for the Claimant's share of the legal fees and costs.   The allocation and payment of legal fees and costs among the Trust and Sexual Abuse Claimants pursuant to this Section 7.1.16 shall be determined by further order of the Bankruptcy Court. Notwithstanding anything to the contrary in sections 7.1.13 and 7.1.14 of the Plan, the proceeds of an Insurance recovery on account of any Sexual Abuse Claimant that is represented by counsel in connection with such Claimant's Sexual Abuse Claim that, upon request of the Trustee, does not advance legal fees in accordance with this Section 7.1.16 shall be split 75% to the Trust and 25% to the Claimant.

**7.1.17**  Neither the Trust nor Debtor/Reorganized Debtor have any obligation to take any action to enforce an Insurance Policy of a Non Settling Insurer, including any obligation to commence/prosecute any action against any Non Settling Insurer or to defend an action commenced by a Non Settling Insurer.

**7.2**     **Class 5: Fraud Claims**.  A holder of an Allowed Fraud Claim will receive $10,000 from the Trust, to be paid on the later of thirty (30) days after the (a) Effective Date or (b) entry of a Final Order on an objection to such holder's Claim determining that such holder is entitled to the treatment provided in this Section 7.2.

**7.3**     **Class 6: Physical Abuse Claims**.  A holder of an Allowed Physical Abuse Claim will receive $500 from the Trust, to be paid on the later of thirty (30) days after the (a) Effective Date or (b) entry of a Final Order on an objection to such holder's Claim determining that such holder is entitled to treatment provided in this Section 7.3.

**7.4**     **Class 8:  General Unsecured Claims.** The holders of Allowed General Unsecured Claims will receive payment from the Reorganized Debtors of their Pro Rata share of the sum of $50,000.00, to be paid as soon as reasonably practicable after all General Unsecured Claims have either been Allowed or Disallowed, but subject to the filing and allowance of Claims under Section 502(h) of the Bankruptcy Code.

**7.5**     **Class 9:  Penalty Claims.** Allowed Penalty Claims, if any, will be subordinated to all other Allowed Claims and will receive no distribution under the Plan.

**7.6**     **Class 10: Abuse Related Contingent Contribution/Reimbursement/ Indemnity Claims**.  In accordance with Section 502(e)(1) of the Bankruptcy Code, each Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim held by any Person or Entity against the Debtors shall be disallowed and will receive no distribution under the Plan.

SECTION VIII
**ACCEPTANCE OR REJECTION OF PLAN**

**8.1      Impaired Classes to Vote**.  Each holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

**8.2      Acceptance by Class of Creditors**. An impaired Class of holders of Claims, shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

SECTION IX
**TRUST**

**9.1      Establishment of Trust**.

On the Effective Date, the Trust shall be established in accordance with the Trust Documents. The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

**9.2      Trust Funding**.

The Trust will be funded as follows:

**9.2.1**    On the Effective Date the Reorganized Debtors, by wire transfer, will pay or deliver to the Trust the sum of $13.442 million.

**9.2.2**    On the Effective Date, Providence Washington, by wire transfer, will pay or deliver to the Trust the sum of $3.2 million pursuant to the Providence Washington Settlement Agreement.

**9.2.3**    The Reorganized Debtors, by wire transfer, will pay or deliver to the Trustee such sums received by them from any settlements of Insurance Claims since the Petition Date, other than the $3.2 million paid by Providence Washington.

**9.2.4**    On the Effective Date, without any further act by any party, the Reorganized Debtors and the Committee will be deemed to have assigned to the Trustee and the Trust all Avoidance Rights (not otherwise released, time-barred, compromised, enjoined or discharged under the Plan), Third Party Derivative Claims against Entities other than Participating Parties and or any causes of action arising from or related to denials of coverage or coverage defenses raised by Non Settling Insurers.  For the avoidance of any doubt, the Avoidance Rights include the adversary proceeding entitled *The Official Committee of Unsecured Creditors of The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc., v. All Hallows Institute*, Adv. No. 13-08229-rdd, filed in the Bankruptcy Court.

**9.2.5**    At the Trustee's election as to one or more of the Properties (defined below):

a) After the Effective Date within 3 Business Days after a request by the Trustee, the Reorganized Debtors will execute and deliver quitclaim deed(s) to the Trust for the real property and personal property located at: (a) Bishop Kearney High School, 125 Kings Highway S, Rochester, New York and (b) 1850 Broadway/Route 9W, Esopus, New York (Lower Parcel) (collectively, the "Properties"); or

b) The Reorganized Debtors shall market and sell the Properties in accordance with the Trustee's sole and exclusive discretion. Net proceeds from the sale of the Properties payable to the owner of the Properties shall be delivered from any sale escrow to the Trustee.

**9.2.6** Net Sales proceeds of any of the Properties received by the Debtors prior to the Effective Date shall be paid to the Trust in addition to any other funds or property transferred to the Trust.

**9.2.7** On the Effective Date, without any further act by any party, the assignments of Claims and Insurance Claims described in the Plan and the proceeds of such Claims and Insurance Claims shall be deemed effective.

**9.3     Reserve Accounts**.

As set forth in the Trust Agreement, the Trustee shall establish Reserves for various purposes. In addition to such Reserves, the Trustee may establish Reserves for payment of future claims to the extent a Participating Party or Settling Insurer has paid on account of the treatment of such claims.

**9.4     No Execution**. All funds held in the Trust will remain property of the Trust until such time as the funds have actually been paid to and received by a Person or Entity entitled to receive payment pursuant to the terms of the Plan, Confirmation Order and Trust Documents. Except as expressly provided in the Plan, Confirmation Order and the Trust Documents, the Trust shall not be responsible for any Claims against the Debtors.

SECTION X
**LIQUIDATION AND PAYMENT OF ABUSE CLAIMS**

**10.1     Liquidation and Payment of Abuse Claims**.

**10.1.1** The Trust shall pay Abuse Claims in accordance with the terms of the Plan, Confirmation Order and Trust Documents and without regard to the Debtor against which the Abuse Claimant filed its proof of claim

**10.1.2** The amount of the Trust's distributions/reserves on account of the Abuse Claims shall not be binding upon any Non-Settling Insurer or any Co-Defendant in connection with a Co-Defendant's liquidation of any contribution or indemnity claim. Absent

their consent, Non-Settling Insurers shall only be bound by judgments obtained against the Debtors.

      **10.1.3**  Nothing in the Trust Documents shall (i) impose any costs, directly or indirectly, upon the Estates, any Participating Party or any Settling Insurer relating to the treatment of Abuse Claims or (ii) otherwise modify the rights or obligations of the Estates, any Participating Party or Settling Insurer as otherwise set forth in the Plan.

      **10.1.4**  The Committee does not anticipate that the Trust will have sufficient assets to pay all of the Abuse Claims in the full amount that all Abuse Claimants may be owed in the event that all Abuse Claimants liquidated their Claims pursuant to applicable non-bankruptcy law. For the avoidance of doubt, neither the Debtors' or the Participating Parties' obligations to Abuse Claimants shall be deemed to have been paid in full, nor their liability to Abuse Claimants fully satisfied, as a result of reserves for, distributions on account of or payments received by Abuse Claimants from the Trust, except as modified by the discharge provisions set forth in Section 15 of this Plan.  Because Abuse Claims are being paid by the Trust without regard to whether those Claims are covered by Insurance Policies issued by Settling Insurers:  (a) the Trust shall be deemed to be subrogated to the Claims of the Abuse Claimants paid by the Trust to the extent of those payments and (b) the Trust may pursue such subrogation Claim and any contribution Claim.  The Trust may not bring any action against the Debtors, the Reorganized Debtors, the Province, the Participating Parties, or any Settling Insurer and/or their respective assets.

      **10.2**    **Effect of No Award On Abuse Claims**.

      If an Abuse Claim is denied payment pursuant to the Allocation Plan or a Sexual Abuse Litigation Claimant fails to obtain a judgment against the Debtors, the holder of such Abuse Claim will have no further rights against the Debtors, Reorganized Debtors, the Trust or Trustee relating to such Abuse Claim.

      **10.3**    **Treatment of Attorneys' Fees and Costs of Abuse Claimants**.

      Subject to the treatment of Qualified Counsel Fees and Qualified Counsel Costs pursuant to the Plan, the fees and expenses of attorneys representing Abuse Claimants who receive payment from the Trust will be borne by such Abuse Claimants based on applicable state law and individual arrangements made between such Abuse Claimants and their respective attorneys. The Debtors, the Reorganized Debtors, the Participating Parties, the Released Parties, the Settling Insurers, the Trust, or the Trustee will not have any liability for any fees and expenses of attorneys representing any of the Abuse Claimants except for the provisions relating to Qualified Counsel Fees and Qualified Counsel Costs, and any such Claims for fees and expenses, if any, will be Disallowed.

      **10.4**    **Treatment of Punitive Damages**.

      Claims for punitive or exemplary damages in connection with any of the Claims will be treated as Penalty Claims and will receive no distribution under the Plan.

      **10.5**    **Withdrawal of Abuse Claims**.

An Abuse Claimant may withdraw an Abuse Claim at any time on written notice to the Trustee.  If withdrawn, (a) the Abuse Claim will be withdrawn with prejudice and may not be reasserted, (b) as a condition to withdrawal of the Abuse Claim, any funds paid to the Abuse Claimant by the Trust (inclusive of attorneys' fees and costs) shall be returned to the Trust, and (c) any reserve maintained by the Trust on account of such Claim shall revert to the non-reserved assets of the Trust for distribution in accordance with the Plan.

**10.6    Medicare Beneficiaries.**  Before the Trustee will first pay an Abuse Claim to any Abuse Claimant who is a citizen or resident of the United States and whose Proof of Claim indicates that he or she was abused, in whole or in part, after December 5, 1980, counsel for that Claimant must provide the Trustee with a letter stating that:

**10.6.1**  if the Abuse Claimant is not a Medicare Beneficiary, counsel or an Approved Vendor has obtained documentation received within 120-days from the Social Security Administration confirming that the Abuse Claimant is not a Medicare Beneficiary, or

**10.6.2**  if the Abuse Claimant is a Medicare Beneficiary, counsel or an Approved Vendor has obtained a letter from Medicare Secondary Payer Recovery Contractor received within 120-days: (a) setting forth the Conditional Payment estimate made to or on behalf of the Medicare Beneficiary that is subject to reimbursement by a "primary plan," as the phrase is defined in Section 1395y(b)(2) of the Medicare Secondary Payer Act and verifying that the Abuse Claimant's counsel has held back in his or her trust account a sum from payment equal to the Conditional Payment estimate for the purpose of reimbursing Medicare, to be held until the Medicare Secondary Payer Recovery Contractor acknowledges that that terms for reimbursement of Medicare have been agreed, or (b)  stating that no such Conditional Payment has been made to or on behalf of the Medicare Beneficiary; and

**10.6.3**  regardless of whether the Abuse Claimant is currently a Medicare Beneficiary, counsel has evaluated whether to set aside a sum in the Abuse Claimant counsel's trust account for future medical expenses incurred after the date of payment hereunder that counsel anticipates may be covered by Medicare and that would be subject to reimbursement from payment hereunder, and if counsel has determined that a sum should set aside, that sum.

**10.7    No Admission.** Section 10.6 is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission that the Debtors, any Participating Party or any Settling Insurer are in fact "applicable plans" with the meaning of Medicare, Medicaid and SCHIP Extension Act of 2007, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under Medicare, Medicaid and SCHIP Extension Act of 2007 or any other statute or regulation.

**10.8    Delay Re Failure To Comply.**  The failure by one or more Medicare Beneficiaries or other Abuse Claimants to comply with these provisions shall not delay or impair the payment by the Trustee to any other Medicare Beneficiary or other Abuse Claimant complying with these provisions.

**10.9    Documentation by Estate of Abuse Claimant.**   If the Abuse Claimant is the estate of an Abuse Claimant, then the letters or documentation required pursuant to Section 10.6 need not be dated within 120 days of the date of payment by the Trustee to such Claimant.

### 10.10    Supplementing Exhibit 2.77 to Add to List of Participating Parties.

**10.10.1**    After the Effective Date and notwithstanding any present exclusionary language contained in this Plan, upon the consent of the Trustee, any Person or Entity may become a Participating Party if the Bankruptcy Court, after notice and hearing, approves an agreement between such Person or Entity and the Trustee (a "Participating Party Agreement").  After the Effective Date, the Trustee shall have the exclusive authority to seek approval of such a Participating Party Agreement.  Upon the Bankruptcy Court's entry of a Final Order approving such an agreement, Exhibit 2.77 will be amended by the Trustee to include such Person or Entity.  For the purposes of defining a Participating Party, the Persons or Entities listed on Exhibit 2.77 shall include their respective predecessors, successors, and assigns, or their respective employees, officers, agents, attorneys and directors except as provided in the agreement.

**10.10.2**    Any Person or Entity becoming a Participating Party under Section 10.10 et. seq. shall have all of the rights, remedies and obligations of a Participating Party notwithstanding that such Person or Entity originally may have been excluded as a Participating Party under any provision of the Plan, including without limitation, the terms and conditions of the Channeling Injunction.

**10.10.3**    The Bankruptcy Court's retained jurisdiction to approve a Participating Party Agreement under this Section shall include jurisdiction to determine the adequacy of notice of a motion to approve such a Participating Party Agreement.

### 10.11    Supplementing Exhibit 2.110 to Add to List of Settling Insurers.

**10.11.1**    After the Effective Date, upon the consent of the Trustee, a Person or Entity may become a Settling Insurer if the Bankruptcy Court, after notice and hearing, approves the agreement between the Person or Entity and the Trustee.  After the Effective Date, the Trustee shall have the exclusive authority to seek approval of such agreement.  Upon the Bankruptcy Court's entry of a Final Order approving such an agreement, Exhibit 2.110 will be amended by the Trustee to include such Person or Entity.

**10.11.2**    Any Person or Entity becoming a Settling Insurer under Section 10.11 et. seq. shall have all of the rights, remedies and duties of a Settling Insurer notwithstanding that such Person or Entity originally may have been excluded as a Settling Insurer under any provision of the Plan.  Such rights, remedies and duties shall include, but not be limited to, the terms and conditions of the Channeling Injunction.

**10.11.3**    The Bankruptcy Court's retained jurisdiction to approve an agreement under this Section shall include jurisdiction to determine the adequacy of notice of a motion to approve such an agreement.

### 10.12    Appointment of Future Claims Representative.

10.12.1    After the Effective Date, the Bankruptcy Court, after notice and hearing, may appoint one or more future claims representatives; provided that only the Trustee may seek the appointment of one or more future claims representatives. The Bankruptcy Court's order appointing a future claims representative shall set forth the constituency of the future claims representative.

10.12.2    After the Effective Date and subject to the Trustee's consent, the Bankruptcy Court, after notice and hearing, may approve an agreement between a future claims representative and a Person or Entity, whereby the Person or Entity may become a Settling Insurer or Participating Party. Under no circumstances shall the Trustee seek approval of an agreement with the future claims representative that uses any property of the Trust to fund a distribution for the benefit of future claimants. Any Person or Entity becoming a Participating Party or Settling Insurer under such an agreement shall have all of the rights, remedies and obligations of a Participating Party or Settling Insurer notwithstanding that such Person or Entity originally may have been excluded as a Participating Party or Settling Insurer under any provision of the Plan. Such rights, remedies and duties shall include, but not be limited to, the terms and conditions of the Channeling Injunction.

10.12.3    The Bankruptcy Court's jurisdiction to approve an agreement under this Section shall include jurisdiction to determine the adequacy of notice of a motion to appoint a future claims representative and to approve an agreement with the future claims representative.

SECTION XI
**INSURANCE MATTERS**

**11.1    Transfer of Insurance Rights**.

On the Effective Date, and without any further action by any party, the Debtors, the Reorganized Debtors, and each of the Participating Parties will be deemed to have assigned to the Trust, the Debtors', the Reorganized Debtors', and the Participating Parties' rights, if any, to all Insurance Claims and Insurance Recoveries against the Non-Settling Insurers. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and the terms of the Insurance Policies and shall not be construed: (a) as an assignment of the Insurance Policies or (b) to entitle any person or entity to Insurance Coverage other than those persons or entities entitled to such coverage under the terms of the Insurance Policies. The determination of whether the assignment of Insurance Claims provided for in Section 11.1 is valid, and does not defeat or impair the Insurance Coverage shall be made by the Bankruptcy Court at the Confirmation Hearing. If a party in interest fails to timely file an objection to the proposed assignment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the assignment and will be forever barred from asserting that the assignment in any way affects the ability of the Trust to pursue Insurance Claims and Insurance Recoveries, or either of them, from the Non-Settling Insurers, and each of them, or Insurance Coverage. Subject to Section 11.6 of this Plan, in the event that the Bankruptcy Court determines that the assignment of the Insurance Claims and Insurance Recoveries is valid and does not defeat or impair the Insurance Coverage, following the

Effective Date, the Trust shall assume responsibility for, and be bound by,  only such obligations of the Debtors and Participating Parties under the Insurance Policies as are necessary to enforce assigned rights, if any, to the Insurance Claims and Insurance Recoveries against the Non-Settling Insurers that have been assigned; provided, however, that the Trust's assumption of such responsibility shall not relieve the Debtors, the Reorganized Debtors or the Participating Parties from any obligation that such entities may have under the Insurance Policies.  Nothing contained in Section 11.1 shall affect the rights, obligations and remedies of a Person or Entity who is not a Participating Party but is a co-insured with the Debtors or is asserting rights under an Insurance Policy.

**11.2    Appointment of Trustee as Estate Representative to Enforce Insurance Rights and Obtain Insurance Recoveries**.

If the Court does not enter an order transferring Insurance rights pursuant to Section 11.1 of this Plan, then pursuant to the provisions of Section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee is hereby appointed as the representative of the Debtors' estate for the purpose of retaining and enforcing the Debtors' and the Debtors' Estates' rights to Insurance Recoveries and rights for Insurance Claims with respect to the Abuse Claims against the Debtors.  All Insurance Recoveries by the Reorganized Debtors and the Participating Parties will be paid to the Trust.  The determination of whether the appointment of the Trust as the Debtors' and the Debtors' Estates' representative provided for in Section 11.2 is valid and does not defeat or impair the Insurance Coverage, shall be made by the Bankruptcy Court at the Confirmation Hearing.  If a party in interest fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trust to pursue Insurance Claims and Insurance Recoveries, or either of them, from the Non-Settling Insurers, and each of them, or Insurance Coverage.  Subject to Section 11.6 of this Plan, in the event that the Bankruptcy Court determines that the appointment is valid and does not defeat or impair the Insurance Coverage, following the Effective Date, the Trust shall assume responsibility for, and be bound by, only such obligations of the Debtors and Participating Parties under the Insurance Policies as are necessary to act as the representative of the Debtors' estate for the purpose of retaining and enforcing the Debtors' and the Debtors' Estates' rights, if any, to Insurance Recoveries and for Insurance Claims against the Non-Settling Insurers; provided, however, that the Trust's appointment shall  not relieve the Debtors, the Reorganized Debtors or the Participating Parties from any obligation that such entities may have under the Insurance Policies.  Nothing contained in Section 11.2 shall affect the rights and remedies of a Person or Entity who is not a Participating Party but is a co-insured with the Debtors or is asserting rights under an Insurance Policy.

**11.3    Consequences of Determination That Assignment or Appointment is Invalid**.

The determination of whether the assignment of Insurance Claims provided for in Section 11.1 is valid, and does not defeat or impair the Insurance Coverage or that the appointment of the Trust as the Debtors' and the Debtors' Estates' representative provided for in Section 11.2, is valid and does not defeat or impair the Insurance Coverage, shall be made by the Bankruptcy

Court at the Confirmation Hearing.   In the event that a Final Order is entered holding that (a) the assignment of Insurance Claims provided for in Section 11.1 and (b) the appointment of the Trust as the Debtors' and the Debtors' Estates' representative provided for in Section 11.2 are each invalid or would defeat or impair the Insurance Coverage with respect to an Insurance Policy, as to such Insurance Policy, the assignment and/or appointment, as the case may be, will be deemed not to have been made.  If the assignment and appointment are deemed to have not been made, the Debtors, the Reorganized Debtors, and each of the Participating Parties will retain the Insurance Claims under such Insurance Policy.

      **11.3.1**  At the request of the Trust, the Reorganized Debtors and the Participating Parties will assert their Insurance Claims to the extent requested by the Trust against any Non-Settling Insurer.  All Insurance Recoveries by the Reorganized Debtors and the Participating Parties will be paid to the Trust.  The Reorganized Debtors and Participating Parties will select and retain counsel to pursue their Insurance Claims pursuant to this Section 11.3, subject to the Trustee's approval, which approval shall not be unreasonably withheld

      **11.3.2**  Notwithstanding the terms of Sections 11.1 through and including 11.3.1, the division of Insurance Recoveries under Sections 7.1.13 and 7.1.14 are binding on the Trust.

      **11.3.3**  The Reorganized Debtors agree to cooperate with the Trust with respect to the Insurance Claims.  The Reorganized Debtors will provide the Trustee and its counsel with all discovery requests, pleadings, moving documents and other papers which the Reorganized Debtors intend to make or file with respect to the Insurance or Claims and any related counterclaims against the Non-Settling Insurers prior to making such requests or filing. The Reorganized Debtors agrees to keep the Trustee advised of any settlement discussions regarding any litigation against a Non-Settling Insurer and will involve the Trust's counsel in all settlement discussions where offers or counter-offers are presented.

      **11.3.4**  The Trust shall pay the reasonable attorneys' fees, costs and expenses allowed by the Bankruptcy Court that are incurred by the Reorganized Debtors in pursuing their Insurance Claims pursuant to this Section 11.3.

      **11.3.5**  The Trust shall, in addition to reasonable attorneys' fees, costs and expenses provided for in Section 11.3.3, reimburse the Reorganized Debtors for any reasonable out of pocket costs and expenses they incur as a direct consequence of pursuing such Insurance Claims, but will not compensate the Reorganized Debtors for any time any of their employees expend. Upon receipt by the Reorganized Debtors, all Insurance Recoveries received by the Reorganized Debtors on account of such Insurance Claims shall be deemed to be held in trust for the benefit of the Trust and shall be remitted by the Reorganized Debtors to the Trust as soon as practicable following the Reorganized Debtors' receipt of such Insurance Recoveries.

    **11.4**    **Post-Judgment Actions Against Non-Settling Insurers**.

    In the event that the Trust or any Abuse Claimant obtains a judgment against the Reorganized Debtors, the Reorganized Debtors will cooperate with the Trust or Abuse Claimant

in the pursuit of any action brought by the Trust or Abuse Claimant against a Non-Settling Insurer that the Trust contends provides Insurance Coverage for such judgment.  Reorganized Debtors agree that they will provide the Trust or Abuse Claimant with any non-privileged and relevant documents and information reasonably requested by the Trust or Abuse Claimant in pursuit of such an action.  The Trust agrees that it will reimburse the Reorganized Debtors for any reasonable out of pocket costs they incur, including attorneys' fees, as a direct consequence of such cooperation, but will not compensate the Reorganized Debtors for any time any of their employees expend.

### 11.5    Settlement with Non-Settling Insurers.

Following the Effective Date, the Reorganized Debtors shall not enter into a settlement agreement affecting any Insurance Policy or Insurance Policies with any Non-Settling Insurer without the express written consent of the Trust, which consent may be granted or withheld at the Trust's sole and absolute discretion. Following the Effective Date, the Reorganized Debtors authorize the Trust to exclusively act on their behalf to negotiate a settlement with any Non-Settling Insurer on account of such Insurance Claims.  Such settlements may provide for the Non-Settling Insurer to become a Settling Insurer.

### 11.6    Cooperation with Non-Settling Insurer in Defense of Claims.

Without limiting its obligations pursuant to Section 11.1 of this Plan, in the event that the Trust or any Abuse Claimant prosecutes an action against the Reorganized Debtors, the Reorganized Debtors and the Trustee shall each, in their own capacity, cooperate, in accordance with the terms of any applicable Insurance Policy, with a Non-Settling Insurer that is providing a defense to such a Claim.  The Trust agrees that it will reimburse the Reorganized Debtors for any reasonable out of pocket costs, including attorneys' fees, they incur as a direct consequence of such cooperation, but will not compensate the Reorganized Debtors for any time any of their employees expend.

### 11.7    Insurance Neutrality.

**11.7.1**  Nothing in this Plan, Confirmation Order or in any Plan Document modifies any of the terms of any Non-Settling Insurer's Insurance Policy.

**11.7.2**  Subject only to Section 15.10 of this Plan, nothing in this Plan,  the Confirmation Order or any Plan Document shall impair or diminish any Non-Settling Insurer's legal, equitable, or contractual obligations relating to the Insurance Policies, or the Insurance Claims against the Non-Settling Insurers in any respect.  Subject to collateral estoppel and res judicata, in the event that any court determines that any provision of this Plan impairs or diminishes any Non-Settling Insurer's obligations with respect to the Insurance Claims, Insurance Recoveries or Insurance Policies, such provision of this Plan shall be given effect only to the extent that it shall not cause such impairment or diminishment.

**11.7.3**  The fact that the Trust is liquidating and paying or reserving monies on account of the Abuse Claims shall not be construed in any way to diminish any obligation of any Insurer under any Insurance Policy to provide Insurance Coverage to the Debtors, the Debtors' Estates or the Reorganized Debtors for Abuse Claims.  The duties and obligations, if

any, of the Non-Settling Insurers under each Non-Settling Insurer's Insurance Policy shall not be impaired, altered, reduced or diminished by:  (a) the discharge granted to the Debtors under the Plan pursuant to Section 1141(d) of the Bankruptcy Code, (b) the exonerations, exculpations and releases contained in the Plan or (c) the Channeling Injunction.

  **11.7.4**  Neither the Trust's payment or reserving monies on account of the Abuse Claims nor the Abuse Claims Reviewer's review of an Abuse Claim shall: (1) constitute a trial, an adjudication on the merits or evidence of liability or damages in any litigation with Reorganized Debtors or Non-Settling Insurers or (2) constitute, or be deemed, a determination of the reasonableness of the amount of any Abuse Claim, either individually or in the aggregate with other Abuse Claims, in any litigation of Insurance Claims with any Non-Settling Insurers.

  **11.7.5**  (a)  Notwithstanding any other provision in this Plan, the Confirmation Order or any Plan Document the transfer of rights or the appointment of the Trustee as a representative to enforce Insurance Claims and obtain Insurance Recoveries pursuant to Sections 11.1 or 11.2, as the case may be, shall not be asserted as a defense to coverage under any Non-Settling Insurer's Insurance Policy.

  (b) Subject to Section 15.10 of the Plan, no provision of this Plan, the Confirmation Order or in any Plan Document shall diminish or impair the rights of any Non-Settling Insurer under its Insurance Policy or the rights of a Non-Settling Insurer to assert any defense to any Insurance Claim.

  **11.7.6**  (a)   A Non-Settling Insurer's obligations, with respect to any Claim, shall be determined by and in accordance with the terms of the Insurance Policies and with applicable non-bankruptcy law.

  (b) Nothing in the Plan, Confirmation Order or any Plan Document, shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Claim.

  **11.7.7**  Nothing in the Plan, in the Confirmation Order or in any Plan Document shall grant to any Person any right to sue any Insurer directly, in connection with a Claim, or any Insurance Policy. Such rights shall be determined by and in accordance with the terms of the Insurance Policies and with applicable non-bankruptcy law.

  **11.7.8**  Subject to Sections 11.8 and 15.10 of this Plan, nothing in this Plan, in the Confirmation Order or in any Plan Document shall constitute a finding or determination that any Debtor and/or third party is a named insured, additional insured or insured in any other way under any Insurance Policy; or that any Insurer has any defense or indemnity obligation with respect to any Claim.  Subject to Sections 11.8 and 15.10 of this Plan, no defense, denial or position of a Non-Settling Insurer shall be impaired or prejudiced in any insurance coverage dispute.

  **11.7.9**  Nothing in the Plan, in the Confirmation Order or in any other Plan Document shall diminish or impair the Reorganized Debtors' defenses to liability in

connection with any Abuse Claim, and the right of any Non-Settling Insurer that is defending Reorganized Debtors to assert any such underlying defenses to liability.

**11.7.10** Nothing in this Section 11.7 negates or undoes the voluntary alteration of an Insurer's rights should it elect to become a "Settling Insurer" under the Plan.

**11.7.11** Nothing in this Plan is intended to affect the governing law of any Insurance Policy.

## 11.8    Judgment Reduction.

In connection to any action by the Trust to enforce Insurance Claims with respect to an Insurance Policy issued by a Non-Settling Insurer and subject to Section 15.10 of the Plan, in the event that any Insurer obtains a judicial determination or binding arbitration award that, but for Section 15.10 of the Plan, it would be entitled to obtain a sum certain from a Settling Insurer as a result of a claim for contribution, subrogation, indemnification, or other similar claim against a Settling Insurer for such Settling Insurer's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of such Settling Insurer for any Claims released or resolved pursuant to any settlement agreement with a Settling Insurer, then Debtors, Trustee or other Participating  Party, as applicable, shall be deemed to have reduced its judgment or Claim against, or settlement with, such other Insurer to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against such Settling Insurer.  To ensure that such a reduction is accomplished, and in addition to invoking the protection afforded it under Section 15.10 of this Plan in the Bankruptcy Court, such Settling Insurer shall be entitled to assert this Section 11.8 as a defense to any action against it brought by any other Insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect such Settling Insurer and the Released Parties pursuant to a settlement agreement with a Settling Insurer  from any liability for the judgment or Claim.  Moreover, if a Non-Settling Insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against a Settling Insurer, such Claim may be asserted as a defense against the Trust or Debtor in any litigation of Insurance Claims (and the Trust or Debtor may assert the legal and equitable rights of such Settling Insurer in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such Non-Settling Insurer to the Trust, Debtor or other Participating Party shall be reduced dollar for dollar by the amount so determined.  The Bankruptcy Court shall retain non-exclusive jurisdiction to determine the amount, if any, of any judgment reduction pursuant to the terms of this Section 11.8.  In addition, any court of competent jurisdiction may determine the amount, if any, of any judgment reduction pursuant to the terms of this Section 11.8.

**11.9**    Notwithstanding any other provision of the Plan, Sections 11.7 and 11.8 of the Plan shall not (i) affect or be construed to restrict or limit the scope or application of the Settling Insurer Injunction or (ii) alter, impair, or diminish any of the protections afforded to Settling Insurers under the Plan and Confirmation Order, their settlement agreements with the Debtors or the Trustee, or the Orders approving such settlement agreements.

SECTION XII
MEANS FOR IMPLEMENTATION OF THE PLAN

**12.1    Debtors' Funding of Plan**.

On or before the Effective Date, Cash in the total amount of not less than $16.5 million in the aggregate shall be contributed by wire transfer to the Trust by or on behalf of the Debtors and Providence Washington.

**12.2    Participating Party or Settling Insurer Settlement Contribution**.

On or before the Effective Date, contributions to the Trust by or on behalf of a Participating Party or Settling Insurer shall be contributed by wire transfer to the Trust.

**12.3    Providence Washington Settlement Agreement**.

Pursuant to Sections 363(f), 1123(a)(5)(D) and 1123(b)(3) of the Bankruptcy Code, the provisions of the "Settlement Agreement, Release and Policy Buyback" between The Christian Brothers' Institute and Providence Washington is a compromise of claims between the parties thereto as well as a sale and buy back by Providence Washington of certain insurance rights and policies free and clear of any and all liens, claims and interests, all as set forth therein.  Nothing herein is intended to affect any prior orders of the Bankruptcy Court approving the Providence Washington Settlement Agreement or any rights, duties or remedies contemplated therein.  For the avoidance of any doubt, Providence Washington is a Settling Insurer.

**12.4    Debtors Waiver and Release of Estates' Causes of Action Against Participating Parties and Settling Insurers**.

In consideration of the contributions and other consideration to be provided by each Participating Party and Settling Insurer, the Debtors irrevocably and unconditionally, without limitation, shall release, acquit, and forever discharge such Participating Party and Settling Insurer from any and all Causes of Action of the Estates against any Participating Party or Settling Insurer, or the property thereof, such release to be effective upon the Effective Date.

**12.5    Additional Documentation; Non-Material Modifications**.

From and after the Effective Date, the Trustee, the Reorganized Debtors, and the Participating Parties shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Plan without further Order of the Bankruptcy Court. Additionally, the Trustee, the Reorganized Debtors, and the Participating Parties may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement contained in this Section XII, subject to Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of a Class 4 Claim without the prior written agreement of such holder. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented under this Section 12.5, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the

treatment of the Claims within such Class. An Order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section 12.5 shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

### 12.6    Non-Settling Insurers Unaffected.

For the avoidance of doubt, the rights and obligations of Non-Settling Insurers and Co-Defendants shall be unaffected by this Section XII.

### 12.7    Closing.

Closing will be conducted in the New York offices of Pachulski Stang Ziehl & Jones LLP, or at such other location designated by the Committee, as soon as reasonably practicable following the Effective Date for the purpose of the Reorganized Debtors, and the Participating Parties executing and delivering the Plan Documents and completing those actions necessary for the Reorganized Debtors and the Participating Parties to establish and fund the Trust and make other distributions required to be made upon, or promptly following, the Effective Date.  As soon as practicable after conditions set forth in Section 14.1  have been satisfied or waived in accordance with Section 14.2, the Reorganized Debtors shall file notice of the Closing and the occurrence of the Effective Date.

### 12.8    Obligations of the Reorganized Debtors and Participating Parties.

The Reorganized Debtors and the Participating Parties will:

    a)  In the exercise of their respective business judgment, review all Claims filed against the Estate except for Abuse Claims and, if advisable, object to such Claims;

    b)  After the Effective Date, not object to any Abuse Claims. Notwithstanding the foregoing, the Reorganized Debtors may provide the Abuse Claims Reviewer with information regarding Sexual Abuse Claims.

    c)  In the exercise of the Debtors' business judgment, investigate, prosecute, settle, or dismiss all Causes of Action that are not otherwise resolved under this Plan.  Unless otherwise provided in this Plan, the Reorganized Debtors will be entitled to receive recoveries from Causes of Action and Insurance Policies other than Insurance Policies and Insurance Recoveries assigned to the Trust;

    d)  Notwithstanding anything to the contrary in this Plan, honor the Debtors' obligations under the Insurance Policies issued by the Non-Settling Insurers and under applicable non-bankruptcy law, with the Reorganized Debtors' attorneys' fees, costs and expenses incurred in doing so, if any, to be paid by the Non-Settling Insurers and/or the Trust, as provided under the

Insurance Policies, this Plan, or the Trust Documents, as applicable;

e) Honor the Debtors' obligations arising under any settlement agreement between the Debtors and any Participating Party that has been approved by the Bankruptcy Court; and,

f) Perform all of their obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

### 12.9   Objections to Claims.

Objections to a Claim (except for Abuse Claims) as to which no objection is pending as of the Effective Date, must be filed by the Claims Objection Bar Date.  Any objections to Claims by the Reorganized Debtors will be filed and served not later than sixty (60) days after the later of (i) the Effective Date or (ii) the date such Claim is filed, provided that the Reorganized Debtors may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by Filing a motion with the Bankruptcy Court without any requirement to provide notice to any Person, based upon a reasonable exercise of the Reorganized Debtors' business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.  No party in interest other than the Trustee may object to an Abuse Claim.

### 12.10   Provisions Governing Distributions.

#### 12.10.1  Distribution Only to Holders of Allowed Claims

Except as otherwise provided in the Plan, distributions under this Plan and the Plan Documents will be made only to the holders of Allowed Claims and in the case of Abuse Claims, pursuant only to the Plan and the Trust Documents.  Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim will not receive any distribution otherwise provided to the Claimants under this Plan or the Plan Documents. If necessary in determining the amount of a Pro Rata distribution due to the holders of Allowed Claims in any class, the Reorganized Debtors or the Trustee, as applicable, will make the Pro Rata calculation as if all Unresolved Claims were Allowed Claims in the full amount Claimed or in the Estimated Amount.  When an Unresolved Claim in any class becomes an Allowed Claim, the Reorganized Debtors or the Trustee, as applicable, will make full or partial distributions, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and/or any required withholding of applicable federal and state taxes.

#### 12.10.2  Transmittal of Distributions

Except as otherwise provided in this Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to be made under this Plan, Confirmation Order or Trust Documents to Abuse Claimants will be made by the Trustee and distributions to all other Claimants will be made by the Reorganized Debtors.  Distributions to Abuse Claimants will be made (a) to the client trust account for attorneys of record of Abuse Claimants, (b) if the Abuse

Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim filed with the Claims Agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtors or Trustee, as applicable, by such Claimant in writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtors or Trustee, as applicable, to the mailing address set forth in the schedules filed by the Debtors in these Cases.  Distributions to other Claimants will be made by wire or first class United States mail, postage prepaid, (a) to the client trust account for attorneys of record of the Claimant, (b) if the Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim filed with the Claims Agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtors, as applicable, by such Claimant in writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtors, to the mailing address set forth in the schedules filed by the Debtors in these Cases. If a Claimant's distribution is not mailed or is returned to the Reorganized Debtors or Trustee because of the absence of a proper mailing address, the Reorganized Debtors or Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address.  The Trustee shall have no liability to an Abuse Claimant on account of distributions made to the client trust account of an Abuse Claimant's attorney.

### 12.10.3  Timing of Distributions

Unless otherwise agreed by the Reorganized Debtors or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day, with interest to the extent expressly contemplated by this Plan or any applicable agreement or instrument.

Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Trustee as undeliverable, or is deemed to be an undeliverable Distribution, provide the Trustee with a written notice asserting its claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Reorganized Debtors, the Trust, the Trustee or their property.  Any undeliverable Distributions that are not claimed under this Section will become available to distribute to other Claimants or be retained by the Reorganized Debtors in accordance with the Plan.  Nothing in the Plan requires the Reorganized Debtors, the Trust or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

### 12.10.4  If an instrument delivered as a Distribution to a Claimant is not negotiated within one hundred and twenty (120) days after such instrument was sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and it shall become cash available to the Trustee for any Trust purpose or the Reorganized Debtors, as the case may be.

### 12.10.5  Form of Distributions

Unless otherwise agreed by the Reorganized Debtors or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, all distributions will be made, at the option of the Reorganized Debtors or Trustee, by a check by first class mail, postage prepaid or wire transfer.

### 12.10.6  No Professional Fees or Expenses

No professional fees or expenses incurred by a Claimant will be paid by the Debtors, the Reorganized Debtors, or the Trustee with respect to any Claim except as specified in this Plan or the Trust Documents.

### 12.11  Reservation of Rights to Object to Claims Other Than Abuse Claims.

Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Plan, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtors shall be deemed to have a reservation of any and all rights, interests and objections of the Debtors, or the Estates to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured or unsecured (but not Abuse Claims), whether under the Bankruptcy Code, other applicable law or contract. The Debtors' failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to the Reorganized Debtors' rights to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

### 12.12  Service of Objections.

An objection to a Claim shall be deemed properly served on the holder of such Claim if the objector effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such holder in the Chapter 11 Cases.

### 12.13  Determination of Claims.

From and after the Effective Date, any Claim (except for Abuse Claims) as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases or deemed timely filed by Order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an Order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties without the need for Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit

recovery with respect to such Claim, filed by the Debtors, the Reorganized Debtors, or any other party in interest on or prior to any applicable deadline for Filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, interests or Causes of Action that the Debtors or the Reorganized Debtors may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157.  Notwithstanding the foregoing, no party in interest other than the Trustee may object to an Abuse Claim.

### 12.14   No Distributions Pending Allowance.

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Reorganized Debtors may, in their discretion, make a distribution on account of the portion of such Claim that is an Allowed Claim.

### 12.15   Claim Estimation.

In order to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Debtors (if prior to the Effective Date) and the Reorganized Debtors (on and after the Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court or the District Court, pursuant to § 502(c) of the Bankruptcy Code, estimating or limiting, on account of a Disputed Claim, the amount of (i) property that must be withheld from or reserved for distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine (i) whether such Claims are subject to estimation pursuant to § 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan.  Notwithstanding the foregoing, no party in interest except the Trustee may seek to estimate an Abuse Claim.

### 12.16   Timing of Distributions S/A/P Claims.

On the Effective Date, the Reorganized Debtors shall establish the S/A/P Claims Reserve for all Disputed S/A/P Claims and Allowed S/A/P Claims not paid prior to the Effective Date. As soon as practicable after (and to the extent) that a Disputed S/A/P Claim becomes an Allowed S/A/P Claim, the Reorganized Debtors shall make a payment from the S/A/P Claims Reserve to the holder of such Claim in the Allowed amount of such Claim. After (and to the extent) a Disputed S/A/P Claim is determined not to be an Allowed S/A/P Claim, the portion of the S/A/P Claims Reserve reserved for such Claim shall be released from the S/A/P Claims Reserve and distributed or retained by the Reorganized Debtors, as applicable, pursuant to the terms of the Plan.

**12.17   Setoffs**.

The Reorganized Debtors may, to the extent permitted under applicable law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, the Claims, rights and Causes of Action of any nature that the Reorganized Debtors may hold against the holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such Claims, rights and Causes of Action that the Reorganized Debtors possesses against such holder.

**12.18   No Interest on Claims**.

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a holder of a Claim and approved by an Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order or Plan Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**12.19   Withholding Taxes**.

The Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Reorganized Debtors may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

**12.20   Closing of the Cases**.

As soon as practicable after the Effective Date, when the Reorganized Debtors deem appropriate, the Reorganized Debtors will seek authority from the Bankruptcy Court to close the Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Cases shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtors, the Trustee, or any other party in interest to reopen the Cases for any matter over which the Bankruptcy Court or the U.S. District Court for the Southern District of New York has retained jurisdiction under this Plan.  Any order closing these Cases will provide that the Bankruptcy Court or the U.S. District Court for the Southern District of New York, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in these Cases, and the obligations created by this Plan and the Plan Documents; and (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents.

**12.21   No De Minimis Distributions**.

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $100 will be made by the Reorganized Debtors or the Trustee to any Holder of an Allowed Claim.  No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section.  Allowed Claims that are entitled to a Pro Rata distribution of less than $100 shall continue to accrue until such time as the Pro Rata distribution on account of such Claim will be $100 or more.

### 12.22   Manner of Cash Payments.

Cash payments to domestic Claimants will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Trustee or, at the Trustee's option, by wire transfer from a domestic bank.  Cash payments to foreign Claimants may be paid, at the Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

SECTION XIII
**LITIGATION**

### 13.1   Preservation of Causes of Action.

The Trustee, on behalf of the Trust, shall retain and exclusively enforce the Trust's Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in these Cases.  The Trustee, on behalf of the Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action, subject to the requirement of obtaining Bankruptcy Court approval.  To the extent the Committee is the named plaintiff in any Cause of Action vested in the Trust, the Trustee may be substituted as the named plaintiff without additional notice to the parties in such Cause of Action.

**13.1.1**  The Reorganized Debtors shall retain and exclusively enforce the Debtors' Causes of Action (but not the Trust's Causes of Action), whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in these Cases.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action, without obtaining Bankruptcy Court approval.

**13.1.2**  Except for Abuse Claimants, any person to whom the Debtors have incurred an obligation (whether on account of the provision of goods, services or otherwise), or who has received goods or services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, regardless of whether (i) such Person or entity has filed a proof of Claim against the Debtors in these Cases; (ii) such Person's or entity's proof of claim has been objected to; (iii) such Person's or entity's Claim was included in the Schedules; or (iv) such Person's or entity's scheduled Claims have been objected to or have been identified as disputed, contingent, or unliquidated.

SECTION XIV
**CONDITIONS PRECEDENT**

**14.1    Conditions to Effectiveness**.

The Effective Date will occur when each of the following conditions have been satisfied or waived in accordance with Section 14.2 of this Plan:

a)  The Bankruptcy Court shall have entered a Final Order or Final Orders approving all settlement agreements involving the Participating Parties (for agreements executed prior to the Confirmation Date) and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to each of those parties, and no stay of such Orders shall be in effect;

b)  the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Reorganized Debtors, the Committee, the Participating Parties and Providence Washington and no stay of such Order shall be in effect

c)  The Trustee and Reorganized Debtors have signed the Trust Agreement and

d)  The Debtors and Participating Parties have made the transfers to the Trust described in Section 9.2 of the Plan.

**14.2    Waiver of Conditions**. Any condition set forth in Section 14.1 of this Plan may be waived by the mutual written consent of the Proponents, the Participating Parties and Providence Washington.

**14.3    Non-Occurrence of Effective Date.**  Subject to further order of the Bankruptcy Court, in the event that the Effective Date does not occur within ninety (90) days of entry of a Final Order confirming the Plan, the Plan shall become null and void.  A statement shall be filed with the Court within three (3) Business Days after either the Effective Date or the occurrence of any event that renders the Plan null and void.

SECTION XV
**EFFECTS OF PLAN CONFIRMATION AND DISCHARGE**

**15.1    Discharge**.

Subject only to Sections 15.1, 15.1.1, 15.1.2, 15.2, 15.3 and 15.4 of the Plan, on the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtors and the Reorganized Debtors will be discharged from all liability for any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening,

occurrence, agreement, or obligation of the Debtors, or the Debtors' Representatives before the Confirmation Date, or that otherwise arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of these Cases, and including all Claims and Debts based upon or arising out of Sexual Abuse, Physical Abuse, and Fraud Claims and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such Claim is Allowed under this Plan; or (c) the holder of such Claim has accepted this Plan.  Nothing contained in this paragraph shall affect, impair or diminish the Debtors' indemnification obligations under the Providence Washington Settlement Agreement, which obligations are excepted from the Debtors' discharge.

**15.1.1   NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NOTHING CONTAINED IN THIS PLAN SHALL CONSTITUTE A RELEASE OF ANY ABUSE CLAIM AGAINST (A)  THE DEBTORS;  (B)  PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE; (C) THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF ITS PREDECESSORS;  (D)  THE CONGREGATIONAL OR PROVINCIAL LEADERSHIP TEAMS (AND ANY MEMBER THEREOF) OF THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF THEIR (I.E. THE CONGREGATIONAL OR PROVINCIAL LEADERSHIP TEAMS) PREDECESSORS: (E)  A SUCCESSOR OR PREDECESSOR OF THE DEBTORS TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE; (F)  THE CHRISTIAN BROTHERS SCHOOLS;  AND   (G)  THE HOLY SEE. .  FOR AVOIDANCE OF DOUBT, EXCEPT AS REQUIRED BY THE INSURANCE POLICIES OF NON SETTLING INSURERS, THE DEBTORS MAY ELECT NOT TO DEFEND ANY SEXUAL ABUSE LITIGATION WHICH IS AUTHORIZED TO BE PROSECUTED AGAINST THE DEBTORS PURSUANT TO THIS PLAN AND NO JUDGMENT OBTAINED AGAINST THE DEBTORS IN SUCH SEXUAL ABUSE LITIGATION CAN BE EXECUTED AGAINST THE REVESTED ASSETS OR FROM ANY ASSETS ACQUIRED BY THE REORGANIZED DEBTORS SUBSEQUENT TO THE EFFECTIVE DATE**.

**15.1.2   NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NOTHING CONTAINED IN THIS PLAN SHALL CONSTITUTE AN INJUNCTION AGAINST PROSECUTION OF A SEXUAL ABUSE CLAIM AGAINST  (A)  THE DEBTORS;  (B)  PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE; (C) THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF ITS PREDECESSORS;  (D)  THE CONGREGATIONAL OR PROVINCIAL LEADERSHIP TEAMS (AND ANY MEMBER THEREOF) OF THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF THEIR (I.E. THE CONGREGATIONAL OR PROVINCIAL LEADERSHIP TEAMS) PREDECESSORS: (E)  A SUCCESSOR OR PREDECESSOR OF THE DEBTORS TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE; (F)  THE CHRISTIAN BROTHERS**

**SCHOOLS; AND (G) THE HOLY SEE. FOR AVOIDANCE OF DOUBT, EXCEPT AS REQUIRED BY THE INSURANCE POLICIES OF NON SETTLING INSURERS, THE DEBTORS MAY ELECT NOT TO DEFEND ANY SEXUAL ABUSE LITIGATION WHICH IS AUTHORIZED TO BE PROSECUTED AGAINST THE DEBTORS PURSUANT TO THIS PLAN AND NO JUDGMENT OBTAINED AGAINST THE DEBTORS IN SUCH SEXUAL ABUSE LITIGATION CAN BE EXECUTED AGAINST THE REVESTED ASSETS OR FROM ANY ASSETS ACQUIRED BY THE REORGANIZED DEBTORS SUBSEQUENT TO THE EFFECTIVE DATE**.

**15.2**    SCOPE OF DISCHARGE.

SECTION 15.1 OF THIS PLAN DOES NOT APPLY TO (A) THE OBLIGATIONS OF ANY NON-SETTLING INSURERS FOR ANY CLAIMS; (B) THE OBLIGATIONS ARISING UNDER ANY SETTLEMENT AGREEMENT BETWEEN THE DEBTORS, ANY PARTICIPATING PARTY OR ANY SETTLING INSURER APPROVED BY THE BANKRUPTCY COURT (INCLUDING THE DEBTORS' INDEMNIFICATION OBLIGATIONS, IF ANY), WHICH ARE NOT AND WILL NOT BE DISCHARGED; (C) THE PERFORMANCE BY THE REORGANIZED DEBTORS OF ANY AND ALL OBLIGATIONS DUE TO THE NON-SETTLING INSURERS UNDER THEIR INSURANCE POLICIES WITH RESPECT TO ANY ABUSE CLAIM; (D) A PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTORS, A PARTICIPATING PARTY OR A SETTLING INSURER; (E) THE CONGREGATIONAL LEADERSHIP TEAMS (AND ANY MEMBER THEREOF) OF THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF ITS PREDECESSORS OR SUCCESSORS; (F) A SUCCESSOR OR PREDECESSOR OF THE DEBTORS TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE; (G) THE CHRISTIAN BROTHERS SCHOOLS AND (H) THE HOLY SEE.

**15.3**    EFFECT ON PROVINCE, CHRISTIAN BROTHERS COMMUNITIES OR PROVINCIAL LEADERSHIP TEAM.

ON THE EFFECTIVE DATE, NONE OF THE ABUSE CLAIMS AGAINST THE PROVINCE, CHRISTIAN BROTHERS COMMUNITIES WITHIN THE PROVINCE OR THE PROVINCIAL LEADERSHIP TEAM (OR ANY OF ITS PREDECESSORS OR SUCCESSORS) SHALL BE AFFECTED BY THE PLAN, THE CONFIRMATION ORDER OR THE TRUST DOCUMENTS; EXCEPT THAT ANY ABUSE CLAIMANT OBTAINING A JUDGMENT AGAINST THE PROVINCE, CHRISTIAN BROTHERS COMMUNITIES WITHIN THE PROVINCE OR THE PROVINCIAL LEADERSHIP TEAM (OR ANY OF ITS PREDECESSORS OR SUCCESSORS) MAY RECOVER ONLY FROM INSURANCE POLICIES OF A NON-SETTLING INSURER AND NOT FROM THE REVESTED ASSETS OR ANY ASSETS ACQUIRED BY THE REORGANIZED DEBTORS AFTER THE EFFECTIVE DATE.

**15.4**    POSTPETITION ABUSE CLAIMS.

EXCEPT TO THE EXTENT PROVIDED FOR IN A SETTLEMENT AGREEMENT WITH A PARTICIPATING PARTY OR A SETTLING INSURER, ABUSE CLAIMS ARISING OR OCCURRING AFTER THE PETITION DATE WILL NOT BE DISCHARGED, RELEASED OR IMPAIRED.  FOR THE AVOIDANCE OF ANY DOUBT, ABUSE CLAIMS ARISING OR OCCURRING AFTER THE PETITION DATE AGAINST THE DEBTORS, PROVINCE, CHRISTIAN BROTHERS COMMUNITIES WITHIN THE PROVINCE OR THE PROVINCIAL LEADERSHIP TEAM (OR ANY OF ITS PREDECESSORS OR SUCCESSORS) ARE NOT DISCHARGED, RELEASED, IMPAIRED OR THE SUBJECT OF THE CHANNELING INJUNCTION OR SETTLING INSURER INJUNCTION.

**15.5    Vesting of Assets**.

In accordance with §§ 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Revested Assets shall revest in the respective Reorganized Debtors on the Effective Date free and clear of all liens, Claims, and interests of Creditors, including successor liability Claims. On and after the Effective Date, the Reorganized Debtors may operate and manage their affairs and may use, acquire and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**15.6    Continued Existence of Reorganized Debtors.**

**The Debtors will, as the Reorganized Debtors, continue to exist after the Effective Date as separate entities in accordance with the applicable laws of the States of New York and Illinois, as applicable, with all the powers of a not-for-profit, non-stock member corporation having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.**

**15.7**    EXCULPATION AND LIMITATION OF LIABILITY.

**EXCEPT AS EXPRESSLY PROVIDED IN THIS PLAN, NONE OF THE EXCULPATED PARTIES WILL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY HOLDER OF A CLAIM, ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THESE CHAPTER 11 CASES, INCLUDING THE EXERCISE OF THEIR RESPECTIVE BUSINESS JUDGMENT AND THE PERFORMANCE OF THEIR RESPECTIVE FIDUCIARY OBLIGATIONS, THE PURSUIT OF CONFIRMATION OF THE PLAN,**

OR THE ADMINISTRATION OF THE PLAN OR THE TRUST, EXCEPT LIABILITY
FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE (PROVIDED
HOWEVER THE DEBTORS AND REORGANIZED DEBTORS WILL BE
DISCHARGED FROM ANY SUCH LIABILITY FOR SUCH ACTS OR OMISSIONS
OCCURRING PRIOR TO THE CONFIRMATION DATE) OR ANY CAUSES OF
ACTION ARISING FROM OR RELATED TO DENIALS OF COVERAGE OR
COVERAGE DEFENSES RAISED BY NON SETTLING INSURERS, AND IN ALL
RESPECTS, SUCH PARTIES WILL BE ENTITLED TO REASONABLY RELY UPON
THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND
RESPONSIBILITIES UNDER THE PLAN OR IN THE CONTEXT OF THE CASE.
WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE DEBTORS
AND ITS TRUSTEES, OFFICERS, MEMBER, EMPLOYEES, ATTORNEYS,
FINANCIAL ADVISORS, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO
AND GRANTED THE BENEFITS OF § 1125(E) OF THE BANKRUPTCY CODE. FOR
THE AVOIDANCE OF DOUBT, THIS SECTION AND THE DEFINITION OF
"EXCULPATED PARTIES" SHALL NOT, DIRECTLY OR INDIRECTLY, INURE TO
OR FOR THE BENEFIT OF (I) A PERSON OR PERSONS HAVING PERSONALLY
COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST
THE DEBTORS, A PARTICIPATING PARTY OR A SETTLING INSURER, (II) THE
CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF ITS PREDECESSORS;
(III) THE CONGREGATIONAL LEADERSHIP TEAMS (AND ANY MEMBER
THEREOF) OF THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF ITS
(I.E. THE CONGREGATIONAL LEADERSHIP TEAM'S) PREDECESSORS, (IV) A
SUCCESSOR OR PREDECESSOR OF THE DEBTORS TO THE EXTENT OF SUCH
SUCCESSOR'S  OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR
ACTS OF ABUSE, (V) THE CHRISTIAN BROTHERS SCHOOLS AND (VI) THE HOLY
SEE.

PARTICIPATING    PARTIES,    SETTLING    INSURERS,    THE
REORGANIZED DEBTORS, THE TRUST, THE TRUSTEE AND PROFESSIONALS
EMPLOYED BY THE FOREGOING SHALL NOT HAVE ANY LIABILITY TO ANY
GOVERNMENTAL ENTITY OR INSURER ON ACCOUNT OF PAYMENTS MADE TO
AN ABUSE CLAIMANT, INCLUDING BUT NOT LIMITED TO LIABILITY UNDER
THE MEDICARE SECONDARY PAYER ACT.

**15.8** EFFECTIVE DATE INJUNCTIONS.

ON THE EFFECTIVE DATE, THE INJUNCTIONS PROVIDED FOR IN THIS PLAN
SHALL BE DEEMED ISSUED, ENTERED, VALID AND ENFORCEABLE ACCORDING
TO THEIR TERMS.  THE INJUNCTIONS SHALL BE PERMANENT AND IRREVOCABLE
AND MAY ONLY BE MODIFIED BY THE BANKRUPTCY COURT.

**15.9** CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE
CLAIMS AGAINST PARTICIPATING PARTIES AND SETTLING INSURERS**.**

IN CONSIDERATION OF THE UNDERTAKINGS OF THE PARTICIPATING
PARTIES AND SETTLING INSURERS, PURSUANT TO THEIR RESPECTIVE

SETTLEMENTS WITH THE DEBTORS OR THE TRUSTEE, THE FUNDING OF THE TRUST, OTHER CONSIDERATION, AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PARTICIPATING PARTIES, SETTLING INSURERS AND THE DEBTORS, AND THE PROTECTIONS AFFORDED THE PARTICIPATING PARTIES AND SETTLING INSURERS, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE EXCEPT AS OTHERWISE PROVIDED IN THE PLAN:

a) ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST; AND

b) ALL PERSONS OR ENTITIES THAT HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIM (INCLUDING ALL DEBT HOLDERS, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, OTHER INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS OF ANY KIND OR NATURE WHATSOEVER)ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIM, INCLUDING:

(i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY PARTICIPATING PARTY, SETTLING INSURERS THEIR RESPECTIVE PREDECESSORS, SUCCESSORS, AND ASSIGNS, OR THEIR RESPECTIVE EMPLOYEES, OFFICERS, AND DIRECTORS, OR AGAINST THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER;

(ii) ENFORCING, ATTACHING, COLLECTING OR RECOVERING, BY ANY MANNER OR MEANS, FROM ANY PARTICIPATING PARTY OR SETTLING INSURER OR FROM THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER, WITH RESPECT TO ANY SUCH CHANNELED CLAIM, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY

**PARTICIPATING PARTY OR SETTLING INSURER;**

(iii)    **CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND AGAINST ANY PARTICIPATING PARTY, OR SETTLING INSURER OR THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER WITH RESPECT TO ANY SUCH CHANNELED CLAIM (EXCEPT AS PROVIDED IN THE PLAN; AND**

(iv)    **ASSERTING, IMPLEMENTING OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

(1)    **ANY OBLIGATION DUE ANY PARTICIPATING PARTY OR SETTLING INSURER;**

(2)    **ANY PARTICIPATING PARTY OR SETTLING INSURER; OR**

(3)    **THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER WITH RESPECT TO ANY SUCH CHANNELED CLAIM.**

**15.9.1  ANY INJUNCTION CONTAINED IN A BANKRUPTCY-COURT APPROVED AGREEMENT WITH A PARTICIPATING PARTY OR SETTLING INSURER IS INCORPORATED INTO THE PLAN BY REFERENCE, IS DEEMED FULLY SET FORTH IN THIS PLAN AND IS IN ADDITION TO THE CHANNELING INJUNCTION.  ANY DIFFERENCES BETWEEN THE CHANNELING INJUNCTION IN SECTION 15.9 AND THE INJUNCTION(S) DEEMED SET FORTH BY THIS SUBPARAGRAPH ARE NOT INTENDED TO AFFECT, DIMINISH OR IMPAIR THE INJUNCTION(S) INCORPORATED HEREIN AND CONTAINED IN SUCH AGREEMENT.**

**15.9.2  NOTWITHSTANDING ANY PROVISION OF THIS PLAN, THE FOREGOING "CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES OR SETTLING INSURERS" PROVIDES ABSOLUTELY NO PROTECTION TO (I) A PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTORS, A PARTICIPATING PARTY OR A SETTLING INSURER, (II) THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF ITS PREDECESSORS; (III) THE CONGREGATIONAL LEADERSHIP TEAMS (AND ANY MEMBER THEREOF) OF THE CONGREGATION OF CHRISTIAN BROTHERS OR ANY OF ITS (I.E. THE**

CONGREGATIONAL LEADERSHIP TEAMS) PREDECESSORS, (IV) A
SUCCESSOR OR PREDECESSOR OF THE DEBTORS TO THE EXTENT OF SUCH
SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT
OR ACTS OF ABUSE, (V) THE CHRISTIAN BROTHERS SCHOOLS, (VI) THE
HOLY SEE OR (VII) ANY PERSON OR ENTITY ON ACCOUNT OF CLAIMS
EXCEPTED FROM THE EXCULPATION UNDER SECTION 15.7.

      15.9.3  TO THE EXTENT NOT OTHERWISE ENJOINED IN SECTION
15.9, ASSERTION AND ENFORCEMENT OF CHANNELED CLAIMS, AND ANY
ATTEMPT TO ASSERT OR ENFORCE SUCH CLAIMS, BY ANY PERSON OR
ENTITY, AGAINST A PARTICIPATING PARTY OR SETTLING INSURER IS
HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED.

      15.9.4  NOTWITHSTANDING ANY PROVISION OF SECTION 15.9,
THE FOREGOING "CHANNELING INJUNCTION PREVENTING PROSECUTION
OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES AND SETTLING
INSURERS" IS NOT INTENDED TO AFFECT, DIMINISH OR IMPAIR THE
RIGHTS OF ANY SEXUAL ABUSE LITIGATION CLAIMANT TO COMMENCE
OR PROSECUTE AN ABUSE CLAIM AGAINST THE DEBTORS, THE PROVINCE;
CHRISTIAN BROTHERS COMMUNITIES WITHIN THE PROVINCE OR THE
PROVINCIAL LEADERSHIP TEAM (OR ANY OF ITS PREDECESSORS OR
SUCCESSORS) PROVIDED THAT SUCH COMMENCEMENT OR PROSECUTION
IS SUBJECT TO THE TERMS AND CONDITIONS OF THE DEBTORS'
DISCHARGE AND SECTION 15.3.

    **15.10**  SETTLING INSURER INJUNCTION.

    IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING
INSURERS, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE
DEBTORS OR THE TRUSTEE, THE FUNDING OF THE TRUST, OTHER
CONSIDERATION, AND TO FURTHER PRESERVE AND PROMOTE THE
AGREEMENTS BETWEEN AND AMONG THE SETTLING INSURERS AND THE
DEBTORS, AND THE PROTECTIONS AFFORDED THE SETTLING INSURERS, AND
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, AND
EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ANY AND ALL PERSONS OR
ENTITIES (INCLUDING, WITHOUT LIMITATION, ALL DEBT HOLDERS, ALL
EQUITY HOLDERS, GOVERNMENTAL, TAX, AND REGULATORY AUTHORITIES,
LENDERS, TRADE AND OTHER CREDITORS, TORT CLAIM HOLDERS, OTHER
INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS) ARE
PERMANENTLY ENJOINED AND BARRED FROM ASSERTING AGAINST A
SETTLING INSURER ANY CLAIM (INCLUDING, WITHOUT LIMITATION, ANY
INSURANCE COVERAGE CLAIM OR EXTRA-CONTRACTUAL CLAIM) OR
INTEREST OF ANY KIND OR NATURE WHATSOEVER ARISING FROM OR
RELATING IN ANY WAY TO (i) ANY ABUSE CLAIM OR (ii) ANY OF THE
SETTLING INSURER POLICIES OR (iii) ANY CLAIM AGAINST ANY SETTLING
INSURER FOR CONTRIBUTION, INDEMNITY, DEFENSE, SUBROGATION, OR

SIMILAR RELIEF THAT ARISES DIRECTLY OR INDIRECTLY FROM ANY CLAIM AGAINST EITHER OF THE DEBTORS.

NOTHING CONTAINED IN THIS SECTION IS INTENDED TO AFFECT, DIMINISH OR IMPAIR ANY INJUNCTIONS CONTAINED IN AN AGREEMENT BETWEEN THE DEBTOR OR THE TRUSTEE AND ANY SETTLING INSURER, INCLUDING BUT NOT LIMITED TO PROVIDENCE WASHINGTON.  SUCH INJUNCTIONS ARE INCORPORATED HEREIN BY REFERENCE AND ARE DEEMED FULLY SET FORTH HEREIN.

**15.11**  TERM OF INJUNCTIONS OR STAYS AND CONFIRMATION OF SETTLEMENTS WITH PARTICIPATING PARTIES AND SETTLING INSURERS.

ALL INJUNCTIONS AND/OR STAYS PROVIDED FOR IN THIS PLAN, THE INJUNCTIVE PROVISIONS OF SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND ALL INJUNCTIONS OR STAYS PROTECTING PARTICIPATING PARTIES AND ANY SETTLING INSURER THAT HAS PURCHASED ITS INSURANCE POLICY OR POLICIES IN A SECTION 363 SALE, ARE PERMANENT AND WILL REMAIN IN FULL FORCE AND EFFECT FOLLOWING THE EFFECTIVE DATE AND ARE NOT SUBJECT TO BEING VACATED OR MODIFIED. DEBTORS' SETTLEMENT AGREEMENTS, IF ANY, WITH THE SETTLING INSURERS, AND THE PARTICIPATING PARTIES PREVIOUSLY AUTHORIZED BY THE BANKRUPTCY COURT ARE HEREBY AFFIRMED AND ANY OBLIGATIONS OF DEBTORS WITH RESPECT TO SUCH SETTLEMENT AGREEMENTS ARE EXCEPTED FROM THE DEBTORS' DISCHARGE AND SHALL BE ASSUMED BY THE REORGANIZED DEBTORS AND TRUSTEE, AS APPLICABLE, ON THE EFFECTIVE DATE.

**15.12**  RELEASE OF AVOIDANCE CLAIMS AGAINST PARTICIPATING PARTIES AND SETTLING INSURERS.

ON THE EFFECTIVE DATE, ALL AVOIDANCE RIGHTS, INCLUDING THOSE ARISING UNDER SECTIONS 544, 547, 548, 549, 550, AND 553 OF THE BANKRUPTCY CODE, AGAINST EACH OF THE PARTICIPATING PARTIES AND SETTLING INSURERS AND THE DEBTORS AND REORGANIZED DEBTORS SHALL BE DEEMED SETTLED, COMPROMISED, AND RELEASED BY THIS PLAN. FOR AVOIDANCE OF DOUBT, THIS RELEASE DOES NOT INCLUDE A RELEASE OF THE AVOIDANCE RIGHTS ASSERTED IN THE ADVERSARY PROCEEDING ENTITLED *THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE CHRISTIAN BROTHERS' INSTITUTE AND THE CHRISTIAN BROTHERS OF IRELAND, INC., V. ALL HALLOWS INSTITUTE*, ADV. NO. 13-08229-RDD, FILED IN THE BANKRUPTCY COURT.

**15.13**  RELEASE OF CLAIMS AGAINST PARTICIPATING PARTY OR SETTING INSURER.

EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY REORGANIZED DEBTORS PURSUANT TO SECTION XVI OF THIS PLAN, OBLIGATIONS UNDER ANY SETTLEMENT AGREEMENT AND CLAIMS EXCEPTED FROM EXCULPATION AND DISCHARGE UNDER SECTIONS 15.4 AND 15.7,  ON THE EFFECTIVE DATE, DEBTORS, REORGANIZED DEBTORS AND THE ESTATES WAIVE, RELEASE AND DISCHARGE ANY AND ALL CLAIMS OR CAUSES OF ACTION OF EVERY KIND AND NATURE THAT DEBTORS, REORGANIZED DEBTORS, OR THE ESTATES HAVE OR MAY HAVE AGAINST A PARTICIPATING PARTY OR SETTLING INSURER, INCLUDING AVOIDANCE RIGHTS, AND ANY CLAIM THAT SUCH PARTICIPATING PARTY OR SETTLING INSURER OR THEIR ASSETS ARE A PART OF OR OWNED BY DEBTORS OR THE ESTATES.  NO SUCH CLAIM WILL SURVIVE THE EFFECTIVE DATE OR BE DEEMED TO BE ASSIGNED TO THE TRUST.  WITH RESPECT TO ANY RELEASES IN A BANKRUPTCY COURT-APPROVED AGREEMENT WITH A PARTICIPATING PARTY OR SETTLING INSURER, NOTHING CONTAINED IN THIS PLAN IS INTENDED TO AFFECT, DIMINISH OR IMPAIR SUCH RELEASES.

SECTION XVI
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**16.1    Assumed Employee and Retiree Benefit Plans**.

To the extent not previously assumed, all employee and retiree benefit plans to which the Debtors are a party will be deemed assumed by the Reorganized Debtors on the Effective Date.

**16.2    General; Assumed if Not Rejected**.

Subject to the requirements of Section 365, all executory contracts and unexpired leases of the Debtors that have not been rejected by order of the Bankruptcy Court or are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtors on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court.  All payments to cure defaults that may be required under Section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Debtors.  In the event of a dispute regarding the amount of any such payments, or the ability of the Debtors to provide adequate assurance of future performance, the Reorganized Debtors will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of the Final Order resolving such dispute.

**16.3    Claims for Contract Rejection**.

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within 30 days after the Effective Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for the filing of Claims arising from such rejection, proofs of Claim with respect thereto must be filed within 30 days

after the later to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date, the date such order becomes a Final Order, or such Claims will be forever barred.

SECTION XVII
**NON-MONETARY COMMITMENTS**

**17.1    In order to further promote healing and reconciliation, and in order to continue the Plan Proponents efforts to prevent sexual abuse from occurring in the Province in the future, the Debtors, the Province and Reorganized Debtors agree to the following beginning thirty (30) days after the Effective Date (unless a different date is provided below).**

**17.1.1** The Province and the Debtors represent that they have implemented the Edmund Rice Christian Brothers North America Instruments of Hope and Healing Program; Protection of Children and Vulnerable Adults Province Policy Statement and Procedures; Ethics in Ministry Policy and Procedures for Positive Relationships Between Members and Minors and Vulnerable Adults is dated as of February 2013 (the "Policies and Procedures"). Full compliance with the Policies and Procedures' ZERO TOLERANCE policy is mandatory. The Child Protection Consultant (as defined below) will evaluate and be authorized to make non-public recommendations with respect to the Policies and Procedures and any of the Debtors' and/or Province's policies regarding protection of children and vulnerable adults.

**17.1.2** As of the Effective Date, the Trust may retain, at its sole cost and expense, a third-party expert in the field of child protection that is collectively acceptable to the Province, the Debtors and the Trust (the "Child Protection Consultant") for the purpose of: evaluating and making non-public recommendations with respect to all current and child protection programs administered by the Debtors and/or the Province, including the current Policies and Procedures. Such non-public recommendations will be issued by the Child Protection Consultant within the later of sixty (60) days of the Effective Date or the Child Protection Consultant's retention; provided that the Child Protection Consultant shall have up to an additional sixty (60) days upon notice to parties in interest.

**17.1.3** For a period of not less than ten (10) years after the Effective Date, the Province shall post through a prominent "one-click" link on the Province website's home page (www.ercbna.org)[2] or its successor, a list of the names of all known Brothers,[3] who are identified in at least two (2) Sexual Abuse Claims filed as proofs of claim (including proofs of claim for future claims).  The Province will footnote that it has not tested the merits of any of the claims.  The Committee and the Debtors shall meet and confer to identify such Brothers. If there is a disagreement about whether a Claim is a Sexual Abuse Claim for the purposes of this undertaking, Judge Elizabeth Stong, the mediator in these Cases, shall make the final determination.  No determination of the character of a Claim shall be binding on any party except for the purposes of this undertaking.  Notwithstanding anything contained herein, the Province shall not be required to list any Brother on account of Abuse Claims asserted in

---

[2]  For the purposes of these undertakings, references to prominent links on a website homepage shall mean a clearly labeled link that does not require more than two "clicks" to access referenced materials, unless otherwise stated.
[3]  "Brothers" means current, former and deceased brothers, novices or other members of the Edmund Rice Christian Brothers North America, including temporarily professed brothers and perpetually professed brothers.

Canada after 1962.  The following individuals shall not be listed pursuant to this undertaking pending completion of the Province's  review of the Abuse Claims against them:  Brothers (or former Brothers) T.I. Murphy (deceased); William M. Colford; Karl Jan Walczak; John Walderman, Patrick O'Toole, Paul Messick, Tim Turner, and Jerod Fallon.  The foregoing names will not be listed on the non- monetary post required in Section 17.1.3 hereof.  If the Province determines that one of the foregoing Brothers is/is not the perpetrator of a substantiated Sexual Abuse Claim, the Province will notify the Trustee and the Province promptly will add that Brother's name to the non-monetary post if the Sexual Abuse Claim is substantiated.  After the Effective Date, the Province shall add any additional names to the list to the extent the criterion set forth above are satisfied. Notwithstanding the time limit set forth herein, the Province shall maintain the non-monetary post for any longer period of time if recommended by the U.S. Conference of Major Superiors of Men.

**17.1.4**  Within a reasonable time after the Effective Date, the Province's Team Leader shall send letters of apology to all Sexual Abuse Claimants or, if requested, to immediate family member(s); provided, however, that the Province's Team Leader shall have the discretion, but not the obligation, to send a letter of apology to any Sexual Abuse Claimant who asserts a claim based on sexual abuse that occurred in Canada after December 9, 1962. Letters of apology shall be substantially in the form attached hereto as Exhibit 17.1.4.

**17.1.5**  After the Effective Date, a member of the Province's Leadership Team shall meet with each Sexual Abuse Claimant who desires to meet with a member of the Province's Leadership Team.  The Sexual Abuse Claimant may be accompanied at the meeting by one person.  The meeting shall be subject to all privileges related to mediation proceedings and settlement offers.   The Province's Team Leader shall schedule meetings, at reasonable times and places, in each of the following locations (the "Meeting Locations"): St Johns, Newfoundland, Canada; New Rochelle, New York; Chicago, Illinois; Seattle, Washington and New Jersey (mutually agreeable location to be determined).  All meetings shall be concluded within one (1) year after the Effective Date.  The Province's Team Leader shall select a reasonable time and place for such meetings.  Sexual Abuse Claimants who filed proofs of claim shall be informed of the date, time and address for each Meeting Location within thirty (30) days after the Effective Date and shall have up to 30 days to schedule a meeting at any of the Meeting Locations.

**17.1.6**  In regard to communications to/with the media, the Province and the Debtors shall institute a policy requiring all members of the Province, (including but not limited to the Province's Team Leader, the Province's Leadership Team, the Debtors' trustees, officer and directors, and the Province's or the Debtors' official spokespersons) not refer either verbally or in writing to Sexual Abuse Claimants who filed proofs of claim or proofs of future claims as "alleged" claimants, "alleged" victims or "alleged" survivors and will require the same to refer to Sexual Abuse Claimants as "survivors" or "survivors of sexual abuse."  The communications may state that the Province has not tested the merits of any of the Abuse Claims.

**17.1.7**  The Debtors and Province have represented that in February 2013, each Brother received revised Province Ethics Policies that included mandatory reporting laws for each US state and Canadian Province.  The revised Policies require every Brother who has

knowledge to promptly report "[A]ll allegations of sexual abuse that may have been committed by a Member to civil authorities (with full cooperation from the Province) in the jurisdiction in which the alleged incident occurred if the alleged victim is a minor at the time the allegation is being made."  To remain in Ministry each Brother was required to sign a form stating that he has read, understands and will be in compliance with all policies.  The Debtors and Province also have represented that their compliance with their child safety programs is audited by Praesidium, Inc. every three (3) years and that the audit is not made available to the general public.

 17.1.8  Based on the foregoing representations, the Debtors and Province will provide the Trustee a copy of the next two (2) post-Effective Date audit(s) of their child safety programs.  The Trustee may publish the audits if the audit finds that the Debtors and/or Province are not in compliance with the child safety programs.

 17.1.9  The Debtors shall ask each of the Christian Brothers Schools[4] to prominently display a plaque that states: "The abuse of the spiritual, emotional, physical and moral well-being of the children and young men [and women (if applicable)] of [name of school] shall not be tolerated." The Debtors will ask that each plaque be no less than 8.5 inches by 11 inches and placed next to the door of the principal's office without obstruction by plants, furniture, or any other items.

 17.1.10  Upon written notification to counsel for the Debtors, any Person who has a confidentiality obligation pursuant to a prepetition settlement with the Debtors or the Province relating to Abuse is released from such obligation as to the Debtors and the Participating Parties.  Nothing contained herein releases the Debtors and/or Province of their confidentiality obligations under such settlements.  Consistent with existing policies, the Province and the Debtors shall not include confidentiality provisions in any settlement agreement related to sexual abuse entered into by the Province and/or the Debtors except at the written request of the other Person.

 17.1.11  The Province and/or the Debtors shall continue to require and fund annual mandatory reporting training for all of its Brothers who are in active ministry.

 17.1.12  The Debtors and/or Province shall file a timely "no objection" to the pending motion by the Committee for the release of documents in the possession of counsel representing Abuse Claimants in Canada and which were produced to counsel through discovery.  The Debtors and/or the Province shall perform this undertaking although an order confirming the Plan may not yet have been entered.

 17.1.13  If any non-Debtor Co-defendant in abuse litigation agrees to produce its own documents as part of a settlement of abuse Litigation, the Debtors and/or Province shall not object to any such production.

---

[4] For the purposes of these undertakings, the "Christian Brothers Schools" means any school that educates minors in which Brothers of the Province are the only trustees.  Those schools are All Hallows High School, Brother Rice High School (MI), Brother Rice High School (IL), St. Laurence High School, Iona Preparatory School, Iona Grammar School, Palma School, Catholic Memorial High School and Damien Memorial High School.

**17.1.14** Pursuant to Rule 706 of the Federal Rules of Evidence, on request of the Trustee, the Bankruptcy Court shall appoint an expert witness to inspect all of the Debtors' and\or Province's books, records, documents, files and archives (subject to canonical privileges, if any, recognized by a court in the United States) for the sole purpose of obtaining direct or indirect evidence of liability insurance of the Debtors, the Province or the Congregation providing insurance coverage for Sexual Abuse Claims.  The Bankruptcy Court shall appoint an expert witness nominated by the Committee or the Trust.  As set forth in F.R.E. 706, the witness shall advise the Trust and the Debtors of the witness' findings; provided, however, that any evidence of such insurance shall be redacted to exclude any information that is not directly or indirectly related to the existence of such insurance.  The expert witness's fees and expenses shall be borne by Trust and not by the Debtors or the Province.

**17.1.15** The Province shall publish on the Province's website home page, or its successor, as standalone documents, these non-monetary stipulations (as a stand-alone document) for a period of five (5) years after the Effective Date.

**17.1.16** The Bankruptcy Court shall retain jurisdiction to adjudicate disputes that arise with respect to these non-monetary undertakings.  The Bankruptcy Court may appoint a special master or arbitrator to adjudicate any such disputes or implement these undertakings.

**17.1.17** On the six (6) month and one (1) year anniversary of the Effective Date, the Reorganized Debtors shall file a report with the Bankruptcy Court regarding their compliance with the undertakings in this Section.  If the Cases are closed before either anniversary, the Reorganized Debtors shall serve the report on the Trustee.

**17.1.18** The Trust shall have standing and shall be authorized, but not directed, to seek enforcement of any of the terms of these non-monetary undertakings.

SECTION XVIII
**MISCELLANEOUS PROVISIONS.**

**18.1    Retention of Jurisdiction**.

Notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date:

**18.1.1** Except as otherwise set forth in this Plan or in the Confirmation Order, the Bankruptcy Court will retain jurisdiction over all matters arising under, in furtherance of, or in connection with this Plan, including the following:

a)  The determination of objections to Disputed Claims; the determination of requests for payment of Claims entitled to priority under Section 507 of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

b) The resolution of controversies and disputes regarding interpretation and implementation of this Plan and the Plan Documents;

c) The granting of relief in aid of this Plan and the Plan Documents including the entry of appropriate orders (which may include removal of actions in non-Bankruptcy Court forums to the Bankruptcy Court, contempt or other sanctions) to protect the Reorganized Debtors, the Participating Parties, the Settling Insurers, and the Released Parties from actions prohibited under this Plan or the Plan Documents;

d) Amendments to and modifications of this Plan;

e) Subject to the limitations and exclusions described above, the determination of any and all applications, adversary proceedings, and contested or litigated matters pending on the Effective Date;

f) The approval of a settlement agreement whereby a Person or Entity, including a Non-Settling Insurer, may become a Participating Party or Settling Insurer and whereby the Bankruptcy Court may appoint a future claims representative and provide for treatment of future claims; and

g) The closing of these Cases.

**18.2    Remand of Removed Actions and Relief From Automatic Stay/Discharge**.

On the thirtieth (30th) day after the Effective Date and without further order of the Bankruptcy Court or the District Court, (a) all actions removed by the Debtors or any other Co-Defendant during the Cases are remanded to the Court from which they were removed and (b) subject to Sections 15.1, 15.1.1, 15.2, 15.3 and 15.4 of the Plan, such actions are not subject to the automatic stay or the injunction in Bankruptcy Code Section 524(a)(2). Nothing contained herein is intended to affect, diminish or impair those provisions of this Plan which prohibit execution of any judgment against the Reorganized Debtors' Revested Assets or assets the Reorganized Debtors acquire after the Effective Date. Notwithstanding the foregoing, any plaintiff in a removed action may object to remand of such action by filing an objection with the Bankruptcy Court within fifteen (15) days after the Effective Date. Any removed action subject to an objection to remand, shall not be remanded except upon order of the Bankruptcy Court. The Trustee shall file a notice of remand on the docket for each remanded action.

**18.3    Modification of Plan**.

The Proponents reserve the right, in accordance with the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Proponents may, upon order, amend or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any

inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  The following acts shall not be modifications of the Plan, and instead, are acts that may be done to effectuate the terms of the Plan:

      (a)     The addition of Persons or Entities to the lists of Participating Parties or Settling Insurers in accordance with Section 10.10 or 10.11 of the Plan, respectively; or

      (b)     The sale of any of the Properties to a party other than the Plan Proponents.

### 18.4    Severability.

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted, except if such term or provision is inconsistent with the intent of any of the Plan Proponents, in which case the Plan may be unilaterally withdrawn by such Plan Proponent.  Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.  In the event of a successful collateral attack on any provision of this Plan (i.e., an attack other than through a direct appeal of the Confirmation Order), the remaining provisions of this Plan will remain binding on the Debtors, the Reorganized Debtors, the Participating Parties, the Settling Insurers, the Trustee, the Committee, all Claimants, all Creditors, and all other parties in interest.

### 18.5    Headings.

The headings of the Sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

### 18.6    Notices.

All notices or requests to the Reorganized Debtors in connection with this Plan shall be in writing and served either by (i) United States mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed given when received by the following parties:

If to the Debtors or Reorganized Debtors:

With a copy to:

        TARTER KRINSKY & DROGIN LLP
        1350 Broadway, 11th Floor
        New York, New York 1001
        Attention:     Anthony Dougherty, Esq.
                      Scott S. Markowitz, Esq.


If to the Trustee:

        THE CHRISTIAN BROTHERS INSTITUTE, ET AL.
        C/O OMNI ACQUISITION CORP.
        5955 DESOTO AVE., STE. 100
        Woodland Hills, California 91367


With a copy to:

        Pachulski Stang Ziehl & Jones LLP
        10100 Santa Monica Boulevard, 11th Floor
        Los Angeles, CA 90067-4100
        Attention:     James I. Stang

        Pachulski Stang Ziehl & Jones LLP
        780 Third Avenue, 36th Floor
        New York, NY 10017
        Attention:     Ilan D. Scharf

    **18.7**    **Notices to Claimants**.  All notices and requests to a Person or Entity holding any Claim will be sent to them at the last known address listed for such Person or Entity with the Bankruptcy Court or with the Debtors' Claims Agent, or to the last known address of their attorney of record. The holder of a Claim may designate in writing any other address, which designation will be effective upon actual receipt by the Reorganized Debtors and the Trustee. Any Person or Entity entitled to receive notice under this Plan will have the obligation to provide the Reorganized Debtors and the Trustee with such Person's or Entity's current address for notice purposes. The Reorganized Debtors and Trustee will have no obligation to attempt to locate a more current address in the event any notice proves to be undeliverable to the most recent address which has been provided to the Reorganized Debtors and the Trustee.

    **18.8**    **Post-Confirmation Court Approval**.  Any action requiring Bankruptcy Court, U.S. District Court or state court approval after the Effective Date will require the Person or Entity seeking such approval to file an application, motion, or other request with the Bankruptcy Court, U.S. District Court, or state court, as applicable, and obtain a Final Order approving such action before the requested action may be taken. The Person or Entity filing such application, motion, or other request shall serve such application, motion, or other request, together with a notice setting forth the time in which objections must be filed with the court, on the Reorganized Debtors, the Committee, and the Trustee by first-class mail, electronic mail, ECF, overnight

courier, facsimile, or hand delivery.  Unless the court orders otherwise, all notices shall provide the recipients at least 21 days in which to file an objection to the application, motion, or other request.  If no objection is timely filed, the court may authorize the proposed action without further notice or a hearing.  If an objection is timely filed, the court will determine whether to conduct a hearing, or to require the submission of further documentation, prior to ruling on the application, motion, or other request.

**18.9    Election Pursuant to Section 1129(b) of the Bankruptcy Code**.  If necessary, the Proponents hereby request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except Section (a)(8) thereof, are met with regard to the Plan.  In determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code have been met, any Class that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class.

**18.10    Consummation of the Plan**.  The Proponents reserve the right to request that the Confirmation Order include a finding by the Bankruptcy Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order.

**18.11    Exemption from Transfer Taxes**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, whether occurring prior or subsequent to the Confirmation Date, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan (i.e. the Properties), shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.  This includes the sale of any of the Properties by the Trust.  The Plan may be modified after the Effective Date to incorporate the terms of such sale.

**18.12    Waivers**.  Except as otherwise provided in the Plan or in the Confirmation Order, any term of the Plan may be waived by the party benefited by the term to be waived.

**18.13    Setoffs, Recoupments, and Defenses**.  With the exception of the Sections of the Plan concerning the Abuse Claims, nothing contained in the Plan shall constitute a waiver or release by the Debtors, Reorganized Debtors, Participating Parties, or Trustee of any rights of setoff or recoupment, or of any defense, they may have with respect to any Claim (including rights under Section 502(d) of the Bankruptcy Code).  Except as otherwise provided in the Plan or in the Confirmation Order or in agreements previously approved by a Final Order, the Debtors, Reorganized Debtors, Participating Parties, or Trustee may, but will not be required to, set off against any Claim or any distributions with respect to such Claim, any and all of the Claims, rights and causes of action of any nature that the Debtors, the Reorganized Debtors, Participating Parties, or Trustee, as applicable, may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of any distribution hereunder or any other action or omission of the Debtors, Reorganized Debtors, Participating Parties, or Trustee, nor any provision of the Plan,

shall constitute a waiver or release by the Debtors, the Reorganized Debtors, Participating Parties, or Trustee, as applicable, of any such Claims, rights and causes of action that the Debtors, the Reorganized Debtors, Participating Parties, or Trustee, as applicable, may possess against such holder.

### 18.14   Compromise of Controversies.

#### 18.14.1 Bankruptcy Court Approval of Settlements

In consideration for the classification, distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination under the standards of Bankruptcy Rule 9019 that such compromises and settlements are in the best interests of the Debtors and the Estates. The Debtors and Participating Parties expressly reserve the right to compromise and settle other Claims and Debtor and Participating Party Actions up to and including the Effective Date.

#### 18.14.2  Settlement with Participating Parties and Settling Insurers.

Specifically included within the Bankruptcy Court's approval of compromises and settlements of Claims and controversies is the Bankruptcy Court's approval of the agreements with Participating Parties and Settling Insurers. If a conflict exists between the Plan and such agreements, the agreements control such conflict. Such agreements contain the protections and benefits afforded the Participating Party and Settling Insurer, as well as the rights and obligations of the parties thereto, to the extent of any conflict with the Plan.  Such agreements are binding on the Trust.

### 18.15   Withdrawal or Revocation of the Plan.

The Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date but the consent of all Proponents is required.  If one Proponent revokes or withdraws the Plan, the other Proponent(s) may proceed as if the remaining Proponent(s) was the sole Proponent when the Plan originally was filed.  If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such event nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Person or Entity, or to prejudice in any other manner the rights of a Proponent, whether one or more, or any other entity in further proceedings involving a Proponent or Proponents and specifically shall not modify or affect the rights of any party under any prior orders of the Bankruptcy Court.

### 18.16   Default.

Except as otherwise provided in the Plan or in the Confirmation Order, in the event the Reorganized Debtors, a Participating Party, a Settling Insurer, or the Trustee shall default in the performance of any of their respective obligations under the Plan or under any of the Plan Documents and shall not have cured such a default within any applicable cure period (or, if no

cure period is specified in the Plan or Plan Documents or in any instrument issued to or retained by a Claimant under the Plan, then within 30 days after receipt of written notice of default), then the entity to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim.

### 18.17    Governing Law.

Subject to Section 11.7.11 of this Plan, except to the extent that federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan or under the Plan Documents shall be governed by and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflicts of laws.

### 18.18    Reservation of Rights.

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and the Effective Date does not occur, the rights of all parties in interest in the Cases are and will be reserved in full.  Any concessions or settlement reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Cases shall be bound or deemed prejudiced by any such concession or settlement.

### 18.19    Controlling Documents.

To the extent any provision of a settlement agreement with a Participating Party or Settling Insurer is inconsistent with this Plan, such settlement agreement, as applicable, shall control.

### 18.20    Successors and Assigns.

The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all Claimants and all other parties in interest affected thereby and their respective successors, heirs, legal representatives and assigns.

### 18.21    Direction to a Party.

On and after the Effective Date, the Trust or the Reorganized Debtors, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### 18.22    Certain Actions.

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtors under the Plan, including (a) the adoption, execution, delivery, and

implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtors or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtors.

### 18.23   Rounding of Fractional Numbers.

All fractional numbers, including payments or distributions under the Plan and Trust Documents shall be rounded (up or down) to the nearest whole number.

### 18.24   Dissolution of the Committee.

On the Effective Date, the Committee shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective Orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all (i) applications for Professional Claims and (ii) requests for compensation and reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code for making a substantial contribution in the Chapter 11 Cases.

### 18.25   Successors and Assigns.

Unless otherwise specified in the Plan, the rights, benefits, and obligations of any entity referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

### 18.26   Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### 18.27   Exhibits.

All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

-- Rest of Page Intentionally Left Blank --

SECTION XIX
**RECOMMENDATIONS AND CONCLUSION**

The Proponents strongly believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Creditors holding Claims with significantly greater recoveries than any available alternatives.

Dated: New York, New York
        January 9, 2014

**THE CHRISTIAN BROTHERS'**
**INSTITUTE & THE CHRISTIAN**
**BROTHERS OF IRELAND, INC.**
*Debtors and Debtors-in-Possession*


By:  /s/  Kevin Griffith
Brother Kevin Griffith
Vice President

TARTER KRINSKY & DROGIN LLP

/s/  Scott S. Markowitz
Anthony Dougherty, Esq.
Scott S. Markowitz, Esq.
1350 Broadway, 11th Floor
New York, New York 10018

Attorneys for The Christian Brothers' Institute and
The Christian Brothers of Ireland, Inc.


PACHULSKI STANG ZIEHL & JONES LLP


/s/  James I. Stang
James I. Stang, Esq.
Ilan D. Scharf, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

Attorneys for the Official Committee of Unsecured Creditors