**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>THE CHRISTIAN BROTHERS' INSTITUTE, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 11-22820 (RDD)<br><br>(Jointly Administered) |

### ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY THE CHRISTIAN BROTHERS' INSTITUTE AND THE CHRISTIAN BROTHERS OF IRELAND INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

A hearing was held before this Court on January 9, 2014 (the "**Confirmation Hearing**"), to consider confirmation of the *First Amended Joint Plan of Reorganization Proposed by The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc. and the Official Committee of Unsecured Creditors* (the "**Plan**") filed by the Plan Proponents [Docket No. 620].[1]  The Court has reviewed the Plan and all exhibits thereto, the Disclosure Statement and all schedules and exhibits thereto, and other pleadings, documents and representations submitted in support of confirmation of the Plan.  The Court has examined the record compiled in these Chapter 11 Cases, and has considered, among other things:  (i) the *Declaration of Katie Nownes Regarding the Methodology for the Tabulation of and Results of Voting With Respect to the Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, Dated January 3, 2014* (the "**Voting Declaration**") [Docket No. 645], (ii) the Plan and all Exhibits thereto [Docket No. 620], (iii) the Disclosure Statement [Docket No. 621], (iv) the *Memorandum of Law in Support of Confirmation of the Debtors' and the Committee's*

---

[1]  Unless defined otherwise herein, capitalized terms used in this Order shall have the meanings and definitions set forth in the Plan.

*First Amended Joint Plan of Reorganization* [Docket No. 646], (v) the *Affidavit of Kevin Griffith*

*in Support of Confirmation of the First Amended Joint Plan of Reorganization Dated December*

*6, 2013* [Docket No. 644] (the "**Griffith Affidavit**"), (vi) the *Declaration of Eric Schwarz in*

*Support of Appointment of Omni Management Acquisition Corp. as Trustee of The Christian*

*Brothers' Institute and the Christian Brothers of Ireland, Inc. Trust* [Docket No. 643], and (vii)

the offers of proof, evidence admitted and the arguments and representations of counsel at the

Confirmation Hearing.  And the Court having reviewed the various objections (collectively, the

"**Confirmation Objections**") to the Plan, including: (i) the *Objection of Pacific Indemnity*

*Company to Confirmation of First Amended Joint Chapter 11 Plan of Reorganization Proposed*

*by The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc. and the Official*

*Committee of Unsecured Creditors* [Docket No. 630], (ii) the *Joinder of Interstate Fire &*

*Casualty Company to Objections of Pacific Indemnity Company to Confirmation of First*

*Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 632], (iii)  the *Statement of*

*Canandaigua National Bank and Trust Regarding Confirmation of the First Amended Joint*

*Chapter 11 Plan of Reorganization Proposed by The Christian Brothers' Institute and The*

*Christian Brothers of Ireland, Inc. and the Official Committee of Unsecured Creditors* [Docket

No. 634], (iv) the *Limited Objection to Debtors' Proposed Assumption Pursuant to First*

*Amended Plan and Reservation of Rights of Aetna Inc. and Certain Affiliated Entities* [Docket

No. 635], (v) the *Objection of the Corporation of The Catholic Archbishop of Seattle, Party-In-*

*Interest* [Docket No. 637] (the "**Archdiocese Objection**"), (vi) the *Joinder of Maryland*

*Casualty Company to Objection of Pacific Indemnity Company to Confirmation of First*

*Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 638], and (vii) the *Joinder of*

*Hanover Insurance Company and Massachusetts Bay Insurance Company to Objection of*

*Pacific Bay Insurance Company to Confirmation of First Amended Joint Chapter 11 Plan of*

*Reorganization* [Docket No. 640]. And all of the Confirmation Objections having been

withdrawn or otherwise resolved on the terms of the Plan and his Order with the exception of the

Archdiocese Objection; and the Archdiocese Objection having been denied for the reasons stated

by the Court on the record of the Confirmation Hearing. And based upon the foregoing,

including the record of the Confirmation Hearing, and after due deliberation and sufficient cause

appearing therefor:

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND

DECREED, AS FOLLOWS:

### Findings of Fact and Conclusions of Law

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein

and in the record of the Confirmation Hearing constitute this Court's findings of fact and

conclusions of law pursuant to Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy

Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions

of law, they are adopted as such.  To the extent any of the following conclusions of law

constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these Chapter 11

Cases and confirmation of the Plan pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).

Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O)

and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are

eligible to be debtors under section 109 of the Bankruptcy Code.  Venue is proper before the

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

        C.      <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the

Debtors' Chapter 11 Cases and related proceedings maintained by the Clerk of the Court,

including, without limitation, all pleadings and other documents filed, all orders entered, and the

transcripts of, and all evidence and arguments made, proffered or adduced at, the hearings held

before the Court during the pendency of these Chapter 11 Cases.

        D.      <u>Solicitation and Notice</u>.  On December 10, 2013, the Court entered that

certain *Order (A) Approving First Amended Disclosure Statement in Support of First Amended*

*Joint Plan of Reorganization, (B) Establishing Procedures for Solicitation and Tabulation of*

*Votes to Accept or Reject Plan, and (c) Estimating Sexual Abuse Claims at $1.00 for Voting*

*Purposes Only* [Docket No. 622] (the "**Solicitation Procedures Order**").  The Solicitation

Procedures Order, among other things, approved the Disclosure Statement as containing

"adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable

investors typical of the Debtors' creditors to make an informed judgment whether to accept or

reject the Plan.  Pursuant to the Solicitation Procedures Order, the Court required the Balloting

Agent (as defined in the Solicitation Procedures Order), on behalf of the Plan Proponents, to

distribute Solicitation Packages (as defined in the Solicitation Procedures Order) to:  (i) counsel

to the Debtors, (ii) counsel to the Committee, (iii) the United States Trustee, (iv) all persons or

entities that filed proofs of claim on or before the date of the Notice of Disclosure Statement

Approval and Confirmation Hearing, except to the extent that a claim was paid pursuant to, or

expunged by, prior order of the Bankruptcy Court, (v) all persons or entities listed in the

Debtors' schedules of assets and liabilities or any amendment(s) thereof (the "**Schedules**"), as

holding liquidated, noncontingent, and undisputed claims, in an amount greater than zero, (vi) all

parties to executory contracts listed in the Schedules, (vii) the Internal Revenue Service, (viii) the

U.S. Department of Health and Human Services, (ix) the United States Attorney's office for the

Southern District of New York, (x) any entity that has filed with the Court a notice of transfer of

a claim under Bankruptcy Rule 3001(e) prior to the date of the Notice of Disclosure Statement

Approval, (xi) any other known holders of claims against the Debtors, and (xii) relevant state and

local taxing authorities.  The Solicitation Packages consisted of:  (1) the Solicitation Procedures

Order; (2) the Notice of Disclosure Statement Approval and Confirmation Hearing; (3) the

Disclosure Statement together with all exhibits thereto (including the Plan); and (4) a Ballot,

where appropriate.

The Balloting Agent and his professionals followed the procedures set forth in the

Solicitation Procedures Order for soliciting acceptances of the Plan, as evidenced by the Voting

Declaration and the affidavits of service for the Solicitation Packages filed of record with the

Court [Docket Nos. 627, 629 and 642].  The Plan Proponents did not solicit acceptances or

rejection of the Plan from any Claim Holder before the transmission of the Disclosure Statement.

Therefore, the Plan Proponents have complied with section 1125 of the Bankruptcy Code.

E.    Voting.  The Solicitation Procedures Order fixed January 3, 2014 as the

Voting Deadline.  The Balloting Agent has tabulated the Ballots accepting or rejecting the Plan

in the Voting Declaration.  As set forth in the Voting Declaration, the Plan Proponents have

satisfied the ballot tabulation procedures set forth in the Solicitation Procedures Order and

properly tabulated the Ballots received in connection with the Plan.

As set forth in the Voting Declaration, the Plan has been accepted, within the meaning of section 1126(c) of the Bankruptcy Code, by each voting Class of impaired Claims entitled to vote on the Plan and that voted on the Plan:  Class 4 (Sexual Abuse Claims) voted to accept the Plan; Class 8 (General Unsecured Claims) voted to accept the Plan;  Classes 1 (Other Priority Claims), 2 (Secured Claims), 3 (General Unsecured Convenience Claims) and 7 (Maintenance Claims) were deemed to have accepted the Plan.  No votes were submitted by Class 5 (Fraud Claims) or Class 6 (Physical Abuse Claims).  Classes 9 (Penalty Claims) and 10 (Abuse Related Contingent Contribution/Reimbursement/Indemnity Claims) were deemed to have rejected the Plan.

F.    <u>Burden of Proof</u>.  The Plan Proponents have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

**<u>Compliance with the Requirements of Section 1129 of the Bankruptcy Code</u>**

G.    <u>Plan Compliance – Section 1129(a)(1)</u>.  The Plan complies with all applicable provisions of the Bankruptcy Code.  The Plan designates ten (10) separate Classes of Claims.  The Plan adequately and properly classifies all Claims required to be classified and thus satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.  Under the Plan, six (6) Classes of Claims are impaired and four (4) Classes of Claims are not impaired. The Plan adequately specifies the treatment of each impaired Class of Claims and thus satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.  The Plan provides the same treatment for each Claim in a particular Class, unless the Holder of a particular Claim agrees to less favorable treatment of such Claim.  The Plan thus satisfies the requirements of section

1123(a)(4) of the Bankruptcy Code.  No election for application of section 1111(b)(2) of the

Bankruptcy Code by any Class of secured creditors was made under Bankruptcy Rule 3014.

Section XII of the Plan provides adequate means for implementation of the Plan.  The Plan thus

satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.  Section 1123(a)(6) of

the Bankruptcy Code is not applicable because the Debtors are not-for-profit corporations that do

not issue securities and there are not holders of voting or nonvoting securities of the Debtors.

Section 1123(a)(8) does not apply because the Debtors are not individuals.  The Plan contains

other provisions for implementation that are reasonable and consistent with sections 1123(a)(7)

and 1123(b) of the Bankruptcy Code.

       H.    <u>Proponent Compliance – Section 1129(a)(2)</u>.  The Plan Proponents have

complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  The

Balloting Agent, on behalf of the Plan Proponents, solicited acceptances of the Plan in

accordance with the requirements of the Solicitation Procedures Order, the Bankruptcy Code,

and the Bankruptcy Rules.  The Ballots of Holders of Claims entitled to vote on the Plan were

properly solicited and tabulated, as described in the Voting Declaration.  The Plan Proponents

have further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules

governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other

matters considered by the Court in these Chapter 11 Cases.  The record in these Chapter 11

Cases further discloses that the Plan Proponents have attempted in good faith to comply with the

Orders of the Court entered during the pendency of the cases and that the Plan Proponents have

not violated any such Orders.

I.     Good Faith – Section 1129(a)(3).   The Plan has been proposed in good faith by the Plan Proponents and not by any means forbidden by law.   No person has filed a valid or sustainable objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law.   Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may determine compliance with section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues beyond the Griffith Affidavit.   The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation Hearing.   The Plan has been accepted by the Holders of Claims in Classes 4 and 8 entitled to vote on the Plan, and no Holders of Claims in Classes 5 or 6 voted on the Plan.   Such acceptance and lack of votes to reject the Plan by any voting class evidences the informed judgment of Creditors that the Plan is in their best interests.   The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a distribution of such value to Creditors.   The Plan was negotiated in good faith and at arm's-length between and among representatives of the Plan Proponents and certain other key creditors and parties in interest during these Chapter 11 Cases.   Therefore, the Plan has been proposed in good faith, as such term is used in section 1129(a)(3) of the Bankruptcy Code.

J.     Plan Payments – Section 1129(a)(4).   All amounts to be paid by the Debtors or their Estates for services or expenses in these Chapter 11 Cases have either been fully disclosed and approved as reasonable or, pursuant to the terms of the Plan, will be disclosed and subject to the approval of the Bankruptcy Court following Confirmation of the Plan.   All expenses that the Trust incurs after the Effective Date (including the fees and expenses of

professionals retained by Trust after the Effective Date) may be paid by the Trustee from the

Trust Assets pursuant to the terms of the Plan and the Trust Agreement.  Payment of pre-

Effective Date Professional Fee Claims shall be governed by the terms of the Plan and shall be

paid only upon application to the Bankruptcy Court.  Professional Fee Claims of Professional

Persons employed by the Committee that are incurred prior to the Effective Date in connection

with the implementation and consummation of the Plan may be paid by the Trust in the Trustee's

sole discretion and after notice and a hearing.  Accordingly, the Plan satisfies the requirements of

section 1129(a)(4) of the Bankruptcy Code.

   K.  Appointment of Trustee and Board of Trustees – Section 1129(a)(5).  The

Plan provides for the appointment of Omni Management Acquisition Corp. ("**OMAC**"), or any

validly selected successor, as the Trustee of the Trust, to be retained as of the Effective Date, to

oversee the Trust pursuant to the terms of the Plan.  Based on the record of the Confirmation

Hearing, it appears that OMAC does not hold or represent an interest adverse to the Trust and

that the appointment of OMAC as the Trustee is consistent with the interests of Creditors and

with public policy.  The Reorganized Debtors will continue to be managed by their current Board

of Trustees, which consist of the following individuals: (i) Brother High O'Neil; (ii) Brother

Kevin Griffith; (iii) Brother Barry Lynch; (iv) Brother Daniel Casey; (v) Brother Anthony Mark

Murphy; and (vi) Brother Raymond Vercruyse.  All of these individuals have been involved in

management of the Debtors' affairs for many years, including during the pendency of the

Debtors' Chapter 11 Cases.  Accordingly, the Plan satisfies the requirements of section

1129(a)(5) of the Bankruptcy Code.

L.      <u>Rates – Section 1129(a)(6)</u>.  There are no rates applicable to the Debtors over which any governmental regulatory commission will have jurisdiction after confirmation of the Plan.

M.      <u>Best Interests – Section 1129(a)(7)</u>.  As set forth in the Disclosure Statement, each holder of an Allowed Claim will receive under the Plan property of a value not less than the amount such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.  A conversion of these Chapter 11 Cases to chapter 7 would likely be accompanied by a decrease in the amount of recovery that Creditors would receive on account of their claims as a result of (a) the failure to implement the settlements embodied and described in the Plan and (b) the commissions and additional administrative fees and expenses that would be incurred during a chapter 7 case.  Thus the Plan provides a superior recovery to Creditors than conversion of these Chapter 11 Cases, and accordingly, the Plan is in the best interests of creditors under section 1129(a)(7) of the Bankruptcy Code.

N.      <u>Acceptance / Cramdown – Sections 1129(a)(8) and 1129(b)</u>.  All Holders of Claims impaired under the Plan have been given adequate opportunity to vote to accept or reject the Plan.  The Plan has been accepted by the Holders of Claims in Classes 4 and 8.  Holders of Claims in Classes 1, 2, 3 and 7 are unimpaired and are deemed to accept the Plan.  No Holder of a Claim in Classes 5 or 6 voted on the Plan.  However, inasmuch as Classes 9 and 10 are deemed to have rejected the Plan by operation of law, and no Claimant in Classes 5 or 6 submitted a vote, the Plan Proponents may not have satisfied the requirements of section 1129(a)(8) of the Bankruptcy Code requiring "acceptance" by all impaired classes.

Nonetheless, the Plan may be confirmed in these Chapter 11 Cases notwithstanding the failure of Holders of Claims in Classes 5 or 6 to submit any Votes on the Plan and the deemed rejection of Classes 9 and 10, because the Plan Proponents satisfy the "cram down" requirements of section 1129(b) of the Bankruptcy Code.  Section 1129(b) requires that a plan must not discriminate unfairly and must be fair and equitable as to each class of claims or interests that is impaired under, and has not accepted, the plan.  As set forth below, the Plan satisfies these requirements:

    i.    Class 5 consists of Fraud Claims.  The Plan does not discriminate unfairly against the Holders of Fraud Claims because the Debtors are insolvent and such Holders of Fraud Claims would not receive more under a chapter 7 liquidation than under the Plan.  The Plan is also fair and equitable as to Class 5, consistent with section 1129(b)(2)(B)(ii) of the Bankruptcy Code, because no Claims of Creditors that are junior to Fraud Claims will receive or retain under the Plan on account of such junior Claims.  As such, the treatment of Fraud Claims under the Plan is not discriminatory and is fair and equitable.   Thus, the Plan may be confirmed notwithstanding the failure of Holders of Fraud Claims to vote on the Plan.

    ii.    Class 6 consists of Physical Abuse Claims.  The Plan does not discriminate unfairly against the Holders of Physical Abuse Claims because the Debtors are insolvent and such Holders of Physical Abuse Claims would not receive more under a chapter 7 liquidation than under

the Plan.  The Plan is also fair and equitable as to Class 6, consistent with section 1129(b)(2)(B)(ii) of the Bankruptcy Code, because no Claims of Creditors that are junior to Physical Abuse Claims will receive or retain under the Plan on account of such junior Claims.  As such, the treatment of Physical Abuse Claims under the Plan is not discriminatory and is fair and equitable.   Thus, the Plan may be confirmed notwithstanding the failure of Holders of Physical Abuse Claims to vote on the Plan.

iii.   Class 9 consists of Penalty Claims.  The Plan does not discriminate unfairly against the Holders of Penalty Claims because the Debtors are insolvent and such Holders of Penalty Claims would not receive more under a chapter 7 liquidation than under the Plan since such claims would be subordinated under chapter 7 of the Bankruptcy Code.  The Plan is also fair and equitable as to Class 9, consistent with section 1129(b)(2)(B)(ii) of the Bankruptcy Code, because no Claims of Creditors that are junior to Penalty Claims will receive or retain under the Plan on account of such junior Claims.  No distribution to Holders of Penalty Claims is necessary to confirm the Plan, because (a) the Debtors are clearly insolvent, (b) Penalty Claims would be subordinated in a chapter 7 case, and (c) there are no Holders of Claims junior to Penalty Claims receiving a distribution.

iv.   Class 10 consists of Abuse Related Contingent Contribution / Reimbursement / Indemnity Claims.  In accordance with Section 502(e)(1) of the Bankruptcy Code, each Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim held by any Person or

Entity against the Debtors shall be disallowed and will receive no

distribution under the Plan.  Because Abuse Related Contingent

Contribution / Reimbursement / Indemnity Claims are disallowed under

the Plan and the Bankruptcy Code, the treatment of such Claims under the

Plan is fair and equitable and is not discriminatory.  As such, no

distribution to Holders of such Claims is necessary to confirm the Plan.

O.      <u>Administrative Expenses/Priority Claims-Section 1129(a)(9)</u>.  The Plan

provides that each holder of an Allowed Administrative Claim against the Debtors shall receive,

in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the

Allowed amount of such Administrative Claim, either (a) on or as soon as practicable following

the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in

writing by the Administrative Claimant.  Provided, however, that any Administrative Claim

incurred postpetition by the Debtors in the ordinary course of its operations or arising pursuant to

one or more postpetition agreements or transactions entered into by the Debtors with Bankruptcy

Court approval, shall be paid or performed in accordance with the terms and conditions of the

particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the

Debtors (if before the Effective Date) or the Reorganized Debtors (on and after the Effective

Date), on the one hand, and the holder of such Administrative Claim, on the other.

With respect to Professional Fee Claims, the Plan provides that Professional

Persons requesting compensation or reimbursement of expenses pursuant to sections 327, 328,

330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective

Date must file and serve an application for final allowance of compensation and reimbursement

of expenses pursuant to paragraph 18 of this Order, and such Professional Fee Claims will be paid upon allowance by the Court or as otherwise agreed by the Professional Persons with respect to the timing.

With respect to Priority Tax Claims, the Plan provides that for each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtors shall (i) pay such Claim in Cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtors (if before the Effective Date) or the Reorganized Debtors (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtors or the Reorganized Debtors than the treatment set forth in clause (i) of this sentence.

P.    Impaired Class Acceptances – Section 1129(a)(10).  Six (6) Classes of Claims are impaired under the Plan, and, as reflected in the Voting Declaration, the Plan has been accepted by at least one impaired Class without including the vote of any insider.

Q.    Feasibility – Section 1129(a)(11).  The Plan complies with section 1129(a)(11) of the Bankruptcy Code because under the Plan, the Trust or the Reorganized Debtors will convert the Debtors' assets to Cash and distribute such Cash pursuant to the terms of the Plan.  Pursuant and subject to the Plan, as of the Effective Date, among other things:

i.    The Debtors shall deliver $13.442 million of cash to the Trust;

ii.    Providence Washington Insurance Company ("**Providence Washington**") shall transfer $3.2 million to the Trust;

iii.      On the Effective Date, and without any further action by any party, the Debtors, the Reorganized Debtors, and each of the Participating Parties will be deemed to have assigned to the Trust, the Debtors', the Reorganized Debtors', and the Participating Parties' rights, if any, to all Insurance Claims and Insurance Recoveries against the Non-Settling Insurers;

iv.      The Debtors or the Reorganized Debtors, as the case may be, shall deliver to the Trust any sums received by them on account of settlements of the Insurance Claims received since the Petition Date (other than the $3.2 to be paid by Providence Washington directly to the Trust);

v.      The Debtors shall be deemed to assign to the Trust all Avoidance Rights (not otherwise released, time barred, enjoined or discharged under the Plan); and

vi.      The Trustee, on behalf of the Trust will retain and enforce the Debtors' Causes of Action (including the All Hallows Proceeding (as defined below)) pursuant and subject to Paragraph 15 below and Section XIII of the Plan.

In addition, at the Trustee's election, after the Effective Date, the Debtors or Reorganized Debtors shall either (a) deliver quit-claim deeds to the Trust for any rights the Debtors may have with respect to certain properties described in Section 9.2.5 of the Plan or (b) the Reorganized Debtors shall market and sell such properties at the Trustee's sole and exclusive discretion and deliver the net proceeds from such sales to the Trust.

The Debtors' Maintenance Claims are unimpaired and the liability for such

Claims will be assumed by the Community Support Corporation pursuant to the terms of the

Plan.

Based on the foregoing and the terms of the Plan, confirmation is not likely to be

followed by the need for further financial reorganization of the Debtors or the Trust.

R.      Fees Payable Under 28 U.S.C. § 1930 – Section 1129(a)(12).  Section IV

of the Plan provides for the payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6),

until the entry of a final decree or an order converting or dismissing these Chapter 11 Cases.

S.      Retiree Benefits – Section 1129(a)(13).  The Debtors are not obligated to

provide "retiree benefits" within the meaning of section 1114(a) of the Bankruptcy Code.

Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11

Cases.

T.      No Domestic Support Obligations – Section 1129(a)(14).  The Debtors are

not required by a judicial or administrative order, or by statute, to pay domestic support

obligations.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to these

Chapter 11 Cases.

U.      Distribution in Case of Individual Debtor – Section 1129(a)(15).  The

Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is

inapplicable to these Chapter 11 Cases.

V.      No Applicable Nonbankruptcy Law Regarding Transfers – Section

1129(a)(16).  All transfers of property under the Plan are being made in accordance with any

applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation
that is not a moneyed, business or commercial corporation or trust.

W.    <u>Only One Plan – Section 1129(c)</u>.  The Plan is the only plan filed in these
Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable to
these Chapter 11 Cases.

X.    <u>Principal Purpose of the Plan – Section 1129(d)</u>.  The principal purpose of
the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the
Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy
Code.

Y.    <u>Good Faith Solicitation – Section 1125(e)</u>.  Based on the record before the
Court in these Chapter 11 Cases, (i) the Plan Proponents are deemed to have solicited
acceptances of the Plan in good faith and in compliance with the applicable provisions of the
Bankruptcy Code, including without limitation, sections 1125(c) and (e) of the Bankruptcy Code,
and any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure
in connection with such solicitation and (ii) the Plan Proponents, and all of their respective
members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates,
and representatives shall be deemed to have participated in good faith and in compliance with the
applicable provisions of the Bankruptcy Code in the solicitation of the Plan and are entitled to
the protections afforded by section 1125(e) of the Bankruptcy Code and the Limitation of
Liability set forth in Section  XV of the Plan.

Z.     <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing,

the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy

Code.

AA.     <u>Good Faith</u>.  The Plan Proponents and all of their respective members,

officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and

representatives will be acting in good faith if they proceed to (i) consummate the Plan and (ii)

take the actions authorized and directed by this Order.

BB.     <u>Releases</u>.  The releases and injunctions provided pursuant to Section XV

of the Plan are a critical component of the Plan and the settlements embodied therein and each of

the released parties thereunder has made or will make a substantial contribution to the Plan and

the Estates.  Resolution of these Chapter 11 Cases would not have been possible without such

releases and injunctions, and the released parties would not have made any contribution to the

Plan without obtaining such releases and injunctions.  As such, these Chapter 11 Cases present

unique circumstances where release of non-debtors is appropriate.  Thus, the releases and

injunctions in Section XV of the Plan are proper and appropriate under the circumstances.

CC.     <u>Scope of Discharge</u>.  The limitations on the discharge given to the Debtors

under the Plan are a critical component of the Plan and the settlements embodied therein, and are

appropriate under the circumstances.

DD.     <u>Assignment of Insurance Rights</u>.  The assignment by the Debtors, the

Reorganized Debtors, and each of the Participating Parties to the Trust of rights, if any, of the

Debtors, the Reorganized Debtors, and the Participating Parties to all Insurance Claims and

Insurance Recoveries against the Non-Settling Insurers is necessary and appropriate under the circumstances and as a matter of law.

## ORDER CONFIRMING PLAN

Based upon the record of the Confirmation Hearing, all the proceedings held before this Court in these Chapter 11 Cases, and the foregoing findings of fact and conclusions of law, **IT IS HEREBY ORDERED THAT**:

2.    Confirmation.  The Modified First Amended Joint Chapter 11 Plan of Reorganization dated January 9, 2014 is confirmed.  A copy of the confirmed Plan, including exhibits thereto, is attached hereto as **Exhibit A** and filed at Docket No. 651.  Any objections to confirmation of the Plan, including the Confirmation Objections, unless previously withdrawn, shall be and hereby are overruled.  All withdrawn objections, if any, are hereby withdrawn with prejudice.  The Plan Proponents are authorized to (a) take such actions as may be necessary or appropriate to carry out the Plan and (b) execute such documents and instruments as may be required to implement the Plan including, without limitation, the Trust Agreement.

3.    Discharge.  Subject only to Sections 15.1, 15.1.1, 15.1.2, 15.2, 15.3 and 15.4 of the Plan, on the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtors and the Reorganized Debtors will be discharged from all liability for any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtors, or the Debtors' Representatives before the Confirmation Date, or that otherwise arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of these Cases, and including all Claims and Debts based upon or arising

out of Sexual Abuse, Physical Abuse, and Fraud Claims and from any liability of the kind

specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a

proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such

Claim is Allowed under this Plan; or (c) the holder of such Claim has accepted this Plan.

Nothing contained in this paragraph shall affect, impair or diminish the Debtors' indemnification

obligations under the Providence Washington Settlement Agreement, which obligations are

excepted from the Debtors' discharge.

        4.     <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all

issues raised by the objections, or which might have been raised, and the objections thereto have

been fully and fairly litigated.  All objections, responses, statements, and comments in opposition

have been resolved or fully and fairly litigated.  All formal and informal objections, responses,

statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in

their entirety prior to the Confirmation Hearing or otherwise by way of stipulation and order with

the Plan Proponents, or resolved on the record during the Confirmation Hearing are overruled for

the reasons stated on the record.

        5.     <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to

specifically describe or include any particular provision of the Plan in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of this Court that the

Plan be approved and confirmed in its entirety.  Each provision of the Plan shall be deemed

authorized and approved by this Order and shall have the same binding effect of every other

provision of the Plan, whether or not mentioned in this Order.  In the event of any

inconsistencies between the Plan and this Order, this Order shall govern.

6.      <u>Plan Classification Controlling</u>.  The classification of Claims for purposes

of distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The

classifications set forth on the ballots tendered to or returned by the Holders of Claims in

connection with voting on the Plan (a) were set forth on the ballots solely for the purposes of

voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be

deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for

distribution purposes, (c) may not be relied upon by any creditors as representing the actual

classification of such Claims under the Plan for distribution purposes, and (d) shall not be

binding on the Plan Proponents, the Trust or the Trustee for purposes other than voting on the

Plan.

7.      <u>Distributions Under the Plan</u>.  All distributions under the Plan shall be

made in accordance with Section XII and any other relevant provisions of the Plan.

8.      <u>Assumption of Remaining Executory Contracts and Unexpired Leases</u>.

Subject to the requirements of section 365 of the Bankruptcy Code and in accordance with

Section XVI of the Plan, all executory contracts and unexpired leases of the Debtors that have

not been rejected by order of the Bankruptcy Court or are not the subject of a motion to reject

pending on the Confirmation Date will be deemed assumed by the Reorganized Debtors on the

Effective Date.

9.      <u>Insurance Policies</u>.  On the Effective Date, and without any further action

by any party, the Debtors, the Reorganized Debtors, and each of the Participating Parties will be

deemed to have assigned to the Trust, the Debtors', the Reorganized Debtors', and the

Participating Parties' rights, if any, to all Insurance Claims and Insurance Recoveries against the

Non-Settling Insurers.  The foregoing transfer shall be effective to the maximum extent

permissible under applicable law and the terms of the Insurance Policies and shall not be

construed:  (a) as an assignment of the Insurance Policies or (b) to entitle any person or entity to

Insurance Coverage other than those persons or entities entitled to such coverage under the terms

of the Insurance Policies.   Such transfer is valid and does not defeat or impair the Insurance

Coverage.

        10.    <u>Appointment of Trustee</u>.  OMAC shall be appointed as the Trustee of the

Trust from and after the Effective Date.  As the Trustee and solely in its capacity as the Trustee,

OMAC will be an officer of the Bankruptcy Court, with the immunities customarily enjoyed by

bankruptcy trustees.  The Bankruptcy Court will have sole jurisdiction over claims and causes of

action against OMAC and its members, officers, directors, employees, professionals, agents,

heirs and assigns (solely in OMAC's capacity as the Trustee) arising out of the performance of

its duties as the Trustee, and OMAC (in its capacity as the Trustee) may not be sued, or have

claims asserted against it, in any other forum without leave of this Court. *The Christian Brothers*

*Institute and Christian Brothers of Ireland, Inc. Trust Agreement* attached as schedule 2.120 of

the Plan is hereby approved and the Trustee is authorized to execute such trust agreement.  The

Trustee and any professionals retained by the Trustee may be compensated by the Trust in

connection with any services provided to or on account of the Trust prior to the Effective Date.

Nothing in this Order, the Plan or any Plan Documents shall limit any party's rights, if any, to

commence any action against the Trustee in any court of competent jurisdiction regarding rights

or obligations assigned to the Trustee pursuant to the Plan and this Order.

        11.    <u>Binding Effect of Plan</u>.  Pursuant to section 1141 of the Bankruptcy Code,

upon the Effective Date, the provisions of the Plan shall bind the Plan Proponents, the

Participating Parties, the Settling Insurers, the Trustee, any entity acquiring property under the

Plan, and any Creditor, whether or not such Creditor has filed a proof of Claim in these Chapter

11 Cases, whether or not the Claim of such Creditor is impaired under the Plan, and whether or

not such Creditor has accepted or rejected the Plan.   In addition, the Providence Washington

Settlement Agreement shall be binding on the Trust.

       12.    <u>Vesting of Estate Assets</u>.  Except as otherwise provided herein or in the

Plan, and effective as of the Effective Date of the Plan, in accordance with sections 1141(b) and

1141(c) of the Bankruptcy Code, all property of the Debtors' estates and all property dealt with

by the Plan is hereby vested in the Trust or the Reorganized Debtors free and clear of all Liens

and Claims of Creditors of the Debtors.

       13.    <u>Applicability of Section 1146 of the Bankruptcy Code</u>.  In accordance

with Section 18.11 of the Plan, pursuant to Section 1146(a) of the Bankruptcy Code, the delivery

of any deed or other instrument of transfer under, in furtherance of, or in connection with this

Plan, whether occurring prior or subsequent to the Confirmation Date, including any deeds, bills

of sale or assignments executed in connection with any disposition of assets contemplated by the

Plan (*i.e.* the Properties), shall not be subject to any stamp tax, real estate transfer tax, excise tax,

sales tax, use tax or other similar tax.  The foregoing includes sales by the Trust or the

Reorganized Debtors of any of the Properties described in section 9.2.5 of the Plan (including

without limitation the properties located at (a) 125 Kings Highway, S. Rochester, N.Y.; and (b)

1850 Broadway/Route 9W, Esopus, N.Y. (lower parcel)).

       14.    <u>Cancellation of Notes, Instruments, and Debentures</u>.  On the Effective

Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures,

certificates and other documents evidencing Claims in the Debtors shall be cancelled and

deemed terminated and surrendered (regardless of whether such notes, instruments, debentures,

certificates or other documents are in fact surrendered for cancellation to the appropriate

indenture trustee or other such Person).

The Holders of or parties to such canceled notes, and other agreements and

instruments shall have no rights against the Debtors, their Estate or the Trust arising from or

relating to such notes, and other agreements and instruments or the cancellation thereof, except

for the rights provided to the Holders of Claims pursuant to the Plan and this Order.

15.    <u>Disputed Claims</u>.  The provisions of Section XII of the Plan with respect

to procedures for resolving Disputed Claims are found to be fair and reasonable and are

approved.

16.    <u>Causes of Action / Objections</u>.  Pursuant to Section XIII of the Plan, and

except as otherwise provided in the Plan, all Causes of Action (including without limitation, the

adversary proceeding captioned *The Official Committee of Unsecured Creditors of The Christian*

*Brothers' Institute and The Christian Brothers of Ireland, Inc. v. All Hallows Institute*, Adv. No.

13-08229-rdd (Bankr. S.D.N.Y.) (the "<u>All Hallows Proceeding</u>")) are retained and preserved

pursuant to section 1123(b) of the Bankruptcy Code.  The Trustee, on behalf of the Trust, shall

retain and exclusively enforce the Trust's Causes of Action (including the All Hallows

Proceeding), whether arising before or after the Petition Date, in any court or other tribunal,

including, without limitation, a bankruptcy court adversary proceeding filed in these Cases.  The

Trustee, on behalf of the Trust, shall have the exclusive right, authority, and discretion to

institute, prosecute, abandon, settle, or compromise any and all such Causes of Action (including

the All Hallows Proceeding), subject to the requirement of obtaining Bankruptcy Court approval.

To the extent the Committee is the named plaintiff in any Cause of Action (including the All

Hallows Proceeding) vested in the Trust, the Trustee shall be deemed substituted as the named plaintiff without additional notice to the parties in such Cause of Action.

The Reorganized Debtors shall retain and exclusively enforce the Debtors' Causes of Action (but not the Trust's Causes of Action), whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in these Cases. The Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action, without obtaining Bankruptcy Court approval.

Except for Abuse Claimants, any person to whom the Debtors have incurred an obligation (whether on account of the provision of goods, services or otherwise), or who has received goods or services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, regardless of whether (i) such Person or entity has filed a proof of Claim against the Debtors in these Cases; (ii) such Person's or entity's proof of claim has been objected to; (iii) such Person's or entity's Claim was included in the Schedules; or (iv) such Person's or entity's scheduled Claims have been objected to or have been identified as disputed, contingent, or unliquidated.

17.    <u>Withholding and Reporting Requirements</u>.  Each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such

distribution.  The Trustee and the Trust have the right, but not the obligation, to not make a

distribution until such Holder has made arrangements satisfactory to the Trustee in his

reasonable discretion for payment of any such tax obligation.  The Trustee shall have no

reporting obligation to any entity pursuant to sections 10.6 through and including 10.9 of the

Plan with respect to any Claimant that is, was or may have been a Medicare Beneficiary.  The

Trustee, any Participating Party and any Settling Insurer shall have no obligation to report any

actions undertaken by the Trust or contributions to the Trust under Medicare, Medicare

Secondary Payer Act, Medicaid (or any similar program or insurance in any state), and/or the

SCHIP Extension Act of 2007 or any other like program, statute or regulation except as

specifically provided in the Plan.

18.    <u>Termination of Committee</u>.  On the Effective Date, the Committee shall

cease to exist and its members, designated representatives and/or agents (including, without

limitation, attorneys, financial advisors, accountants and other professionals) shall, subject to

those matters set forth below, be released and discharged from any further authority, duties,

responsibilities and obligations relating to, arising from, or in connection with the Committee.

19.    <u>Deadline for Filing Professional Fee Claims</u>.  Professionals requesting

compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and

1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and

serve an application for final allowance of compensation and reimbursement of expenses no later

than forty-five (45) days after the Effective Date.  All such applications for final allowance of

compensation and reimbursement of expenses will be subject to the authorization and approval

of this Court.  Such final fee applications shall also be served on all parties entitled to notice

thereof no later than forty-five (45) days after the Effective Date.

20.    Notice of Effective Date.  The Trustee shall send via email or first class

mail a copy of this Order and a notice of the Effective Date to all Professionals retained by the

Debtors and the Committee within five (5) business days after the occurrence of the Effective

Date.

21.    Requisite Authority.  By reason of entry of this Order, prior to, on or after

the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise

require approval of the members, directors, managers, or partners of the Debtors under the Plan,

shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as

appropriate), pursuant to the applicable general corporation, limited liability, or partnership law

of the state in which the Debtors or the Trust is chartered, organized or incorporated, without any

requirement of further action by the owners, stockholders, shareholders, members, directors,

managers, or partners of the Debtors.

22.    Retention of Jurisdiction. Notwithstanding the entry of this Order and the

occurrence of the Effective Date, this Court shall retain and have exclusive jurisdiction after the

Effective Date over any matter arising under the Bankruptcy Code, arising in or relating to these

Chapter 11 Cases or the Plan, including, without limitation, (a) all categories specifically set

forth in section 18.1 of the Plan and Section  XV of the Plan (which provisions are incorporated

herein by reference), in each case to the greatest extent permitted by applicable law, (b) any

request to supplement the Lists of Participating Parties or Settling Insurers pursuant to sections

10.10 and 10.11 of the Plan, and/or (c) appoint a future claims representative pursuant to section

10.12 of the Plan.  The rights of the Trustee and any Non-Settling Insurer regarding the

jurisdiction or venue of any dispute regarding Insurance Claims, Insurance Recoveries, or

Insurance Policies shall not be affected by the Plan or this Order.

23.    <u>United States Trustee Fees</u>.  All fees due and payable pursuant to 28

U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as

practicable after the Effective Date. After the Effective Date, the Reorganized Debtors shall pay

quarterly fees to the U.S. Trustee, in Cash, until the Cases are closed, and a Final Decree is

entered. In addition, the Reorganized Debtors shall file post-Confirmation Date reports in

conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a

request for payment of its quarterly fees, which will be deemed Administrative Claims against

the Debtors and Debtors Estates.

24.    <u>Limitation on Liability, Releases and Injunctions</u>.  The Limitation on

Liability (Section 15.7), Releases (Sections 15.12 and 15.13), and Injunctions (Section 15.9.

15.10, 15.1), are approved.  Except as provided in the Plan, the releases provided for in the Plan,

do not impair or affect any objection that the Debtors, the Reorganized Debtors, the Trustee or

the Trust may have to the amount or allowance of any proof of Claim filed by any released party

or any request for payment of an Administrative Expense requested by a released party.

25.    <u>Exculpation</u>.  Pursuant to section 1125(e) of the Bankruptcy Code, except

as expressly provided in the Plan, none of the Exculpated Parties will have or incur any liability

to, or be subject to any right of action by, any Holder of a Claim, any other party in interest, or

any of their respective agents, employees, representatives, financial advisors, attorneys, or

affiliates, or any of their successors or assigns, for any act or omission in connection with,

relating to, or arising out of these Chapter 11 Cases, including the exercise of their respective

business judgment and the performance of their respective fiduciary obligations, the pursuit of

confirmation of the Plan, or the administration of the Plan or the Trust, except liability for their

willful misconduct or gross negligence (provided however the Debtors and Reorganized Debtors

will be discharged from any such liability for such acts or omissions occurring prior to the

confirmation date) or any causes of action arising from or related to denials of coverage or

coverage defenses raised by Non-Settling Insurers, and in all respects, such parties will be

entitled to reasonably rely upon the advice of counsel with respect to their duties and

responsibilities under the Plan or in the context of the Chapter 11 Cases.  Without limiting the

generality of the foregoing, the Debtors and their trustees, officers, member, employees,

attorneys, financial advisors, and other professionals shall be entitled to and granted the benefits

of § 1125(e) of the bankruptcy code. For the avoidance of doubt, this paragraph and the

definition of "Exculpated Parties" shall not, directly or indirectly, inure to or for the benefit of (i)

a person or persons having personally committed an act or acts of abuse, (ii), the Congregation

Of Christian Brothers or any of its predecessors; (iii) the Congregational Leadership Teams (and

any member thereof) of the Congregation of Christian Brothers or any of its (*i.e.* the

Congregational Leadership Team's) predecessors, (iv) a successor or predecessor of the Debtors

to the extent of such successor's  or predecessor's independent liability for an act or acts of

abuse, (v) the Christian Brothers Schools, or (vi) the Holy See.  Participating Parties, Settling

Insurers, the Reorganized Debtors, the Trust, the Trustee and Professionals employed by the

foregoing shall not have any liability to any governmental entity or Insurer on account of

payments made to an Abuse Claimant, including but not limited to liability under the Medicare

Secondary Payer Act.

26.    Releases.  Pursuant to Section 15.13 of the Plan, except for obligations

arising under any executory contract assumed by Reorganized Debtors pursuant to Section XVI

of the Plan, obligations under any Settlement Agreement and claims excepted from exculpation

and discharge under sections 15.4 and 15.7 of the Plan, on the Effective Date, the Debtors,

Reorganized Debtors and the Estates waive, release and discharge any and all Claims or Causes

of Action of every kind and nature that Debtors, Reorganized Debtors, or the Estates have or

may have against a Participating Party or Settling Insurer, including Avoidance Rights, and any

Claim that such Participating Party or Settling Insurer or their assets are a part of or owned by

Debtors or the Estates.  No such Claim will survive the Effective Date or be deemed to be

assigned to the Trust.  With respect to any releases in a Bankruptcy Court-approved agreement

with a Participating Party or Settling Insurer, nothing contained in the Plan is intended to affect,

diminish or impair such releases.

27.    Settling Insurer Injunction.  Pursuant to Section 15.10 of the Plan, in

consideration of the undertakings of the Settling Insurers, pursuant to their respective settlements

with the Debtors or the Trustee, the funding of the Trust, other consideration, and to further

preserve and promote the agreements between and among the Settling Insurers and the Debtors,

and the protections afforded the Settling Insurers, and pursuant to sections 105 and 363 of the

Bankruptcy Code, and except as otherwise provided in the Plan, any and all Persons or Entities

(including, without limitation, all debt holders, all equity holders, governmental, tax, and

regulatory authorities, lenders, trade and other creditors, tort claim holders, other insurers, and all

others holding Claims or interests) are permanently enjoined and barred from asserting against a

Settling Insurer any Claim (including, without limitation, any insurance coverage claim or extra-

contractual claim) or interest of any kind or nature whatsoever arising from or relating in any

way to (i) any Abuse Claim or (ii) any of the Settling Insurer Policies or (iii) any Claim against

any Settling Insurer for contribution, indemnity, defense, subrogation, or similar relief that arises

directly or indirectly from any claim against either of the Debtors.  Nothing contained in this

paragraph is intended to affect, diminish or impair any injunctions contained in any agreement

between the Debtors or the Trustee and any Settling Insurer, including but not limited to

Providence Washington.  Nothing contained in this paragraph is intended to affect, diminish or

impair any injunctions contained in any agreement between the Debtors or the Trustee and any

party pursuant to Sections 10.10, 10.11 or 10.12 of the Plan.

      28.    <u>Channeling Injunction</u>.  Pursuant to Section 15.9 of the Plan, in

consideration of the undertakings of the Participating Parties and Settling Insurers, pursuant to

their respective settlements with the Debtors or the Trustee, the funding of the Trust, other

consideration, and to further preserve and promote the agreements between and among the

Participating Parties, Settling Insurers and the Debtors, and the protections afforded the

Participating Parties and Settling Insurers, and pursuant to sections 105 and 363 of the

Bankruptcy Code except as otherwise provided in the Plan:

      a.    Any and all Channeled Claims are channeled into the Trust; and

      b.    All Persons or Entities that have held or asserted, hold or assert, or

may in the future hold or assert, any Channeled Claim (including all debt holders, governmental,

tax and regulatory authorities, lenders, trade and other creditors, abuse claimants, other insurers,

and all others holding claims or interests of any kind or nature whatsoever) are hereby

permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly,

for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim,

including:

    i.    Commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any Participating Party, or any Settling Insurer, or any of their respective predecessors, successors, and assigns, or their respective employees, officers, and directors, or against the property of any Participating Party or Settling Insurer;

    ii.    Enforcing, attaching, collecting or recovering, by any manner or means, from any Participating Party or Settling Insurer or from the property of any Participating Party or Settling Insurer, with respect to any such Channeled Claim, any judgment, award, decree, or order against any Participating Party or Settling Insurer;

    iii.    Creating, perfecting or enforcing any lien of any kind against any Participating Party, or Settling Insurer or the property of any Participating Party or Settling Insurer with respect to any such Channeled Claim (except as provided in the Plan; and

    iv.    Asserting, implementing or effectuating any Channeled Claim of any kind against:

    c.    Any obligation due any Participating Party or Settling Insurer;

    d.    Any Participating Party or Settling Insurer; or

e.      The property of any Participating Party or Settling Insurer with

respect to any such Channeled Claim.

29.     Immediate Effectiveness; Successors and Assigns.  Immediately upon the

entry of this Order, the terms of the Plan, all exhibits thereto and all other relevant and necessary

documents, shall be, and hereby are, deemed effective and binding upon the Plan Proponents,

any and all Holders of Claims, and any other interested parties and all respective heirs, executors,

administrators, successors or assigns, if any, of any of the foregoing parties.

30.     Existing Injunctions and Stays Remain in Effect Until Effective Date.

Unless otherwise provided, all injunctions or stays provided for in these Chapter 11 Cases

pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on

the date of this Order, shall remain in full force and effect until the Effective Date.  This Order

will permanently enjoin the commencement or prosecution by any Person or Entity, whether

directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages,

demands, debts, rights, causes of action or liabilities released pursuant to the Plan.

31.     No Effect on Canandaigua National Bank Loan.  The Plan does not alter

Canandaigua National Bank and Trust's rights regarding payment under the notes, mortgages and

other security instruments between the Debtors and Canandaigua National Bank and Trust,

including the right to receive post-petition interest.

32.     Payments to Aetna Inc. and Affiliated Entities.  The Debtors or the

Reorganized Debtors, as applicable, shall make all payments to Aetna, Inc. and certain affiliated

entities ("**Aetna**") that are due and payable under those prepetition agreements with Aetna ("**Aetna**

**Agreements**") and, following assumption of the Aetna Agreements, Aetna shall retain the right to

seek any overpayment or assert any other claim against the Debtors and Reorganized Debtors, as

applicable, that may arise under the Aetna Agreements relating to pre-assumption events; provided,

however, that nothing herein shall create a right for Aetna to seek an affirmative recovery from the

Trust.

Dated:  White Plains, New York
        January 13, 2014                        /s/Robert D. Drain
                                        UNITED STATES BANKRUPTCY JUDGE